# EXHIBIT D

Case 1:11-cv-00736-LEK-CFH Document 54 Filed 06/29/11 Page 2 of 15
Case 1:03-cv-00502-NAM-DRH Document 54 Filed 10/20/03 Page 2 of 15

COPIES SENT
10/20/03 Date
By



03-CV-502

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ARBOR HILL CONCERNED CITIZENS
NEIGHBORHOOD ASSOCIATION,
ALBANY COUNTY BRANCH OF THE NATIONAL
ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE, AARON MAIR; MARYAM
MAIR; and MILDRED CHANG,

                    Plaintiffs,

v.

COUNTY OF ALBANY and ALBANY COUNTY
BOARD OF ELECTIONS,

                    Defendants.

---

**APPEARANCES:**

DerOHANNESIAN & DerOHANNESIAN
*Counsel for Plaintiffs*
39 Pearl Street, 1st Floor
Albany, New York 12207

LAWYERS' COMMITTEE FOR CIVIL
  RIGHTS UNDER LAW
*Counsel for Plaintiffs*
1401 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005

MICHAEL C. LYNCH, ESQ.
Albany County Attorney
*Counsel for Defendants*
County Office Building
112 State Street, Room 900
Albany, New York 12207

THOMAS MARCELLE, ESQ.
Counsel for the Albany County Republican
 Committee and the Republican Caucus of the
 Albany County Legislature
636 Delaware Avenue
Delmar, New York 12054

**OF COUNSEL:**

Paul DerOhannesian II, Esq.

Cara Fineman, Esq.

NORMAN A. MORDUE, District Judge

**MEMORANDUM-DECISION AND ORDER**

I. **INTRODUCTION**

Plaintiffs commenced this action on April 22, 2003, alleging that a legislative redistricting plan adopted by defendant Albany County following the 2000 Census violated § 2 of the Voting Rights Act of 1965, ("VRA") as amended, 42 U.S.C. § 1973. Plaintiffs' motion for a preliminary injunction enjoining defendants from conducting elections for the Albany County Legislature until a new redistricting plan is adopted was referred to the Hon. David R. Homer, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(C). After finding that plaintiffs had demonstrated the subject redistricting plan was likely to be held violative of the VRA, Magistrate Judge Homer recommended that plaintiffs' motion for a preliminary injunction be granted. Defendants filed timely objections. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engaged in a *de novo* review of the Magistrate Judge's Report-Recommendation. On August 22, 2003, this Court adopted the Report-Recommendation in its entirety, granted plaintiffs' application for a preliminary injunction and directed Magistrate Judge Homer:

> To consult with counsel for the parties and establish a scheduling order for submission of a revised redistricting plan and to conduct hearings, including evidentiary hearings if necessary and/or a trial on the question of the whether any such revised plan meets the requirements of the [VRA] and to submit to the undersigned proposed findings of fact and recommendations for the disposition of this matter, including pendency of the preliminary injunction issued herewith.

Between September 8-10, 2003, Magistrate Judge Homer conducted an evidentiary hearing concerning the propriety of the new redistricting plan proposed by the County and a public

hearing regarding the appropriate procedures to be followed, if any, in conducting 2003 County legislative elections. On consent of the parties, the Albany County Republican Committee and the Republican Caucus of the Albany County Legislature intervened in and submitted a proposal for conducting a delayed 2003 primary and special election for Albany County Legislators. The Magistrate Judge filed a second Report-Recommendation in this matter on September 17, 2003. Therein he recommended that the County's remedial redistricting plan be approved and that requests by the parties for directives from the Court for conducting 2003 legislative seat elections be denied. Plaintiffs and defendants filed timely objections. The interveners also submitted objections to the Report-Recommendation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the factual history in this case is assumed based on this Court's previous Memorandum-Decision and Order. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, et al.,* --- F. Supp.2d ----, 2003 WL 22017516 (N.D.N.Y. August 22, 2003). In his Report-Recommendation, Magistrate Judge Homer summarized the most recent factual developments as follows:

> Following entry of the preliminary inunction, Albany County ("County") adopted a revised redistricting plan, identified both as "Plan 3B" and as "Local Law E" (hereinafter "County's remedial plan"). Ex. D-2.[1] That plan amended the County's redistricting plan which was the subject of the injunction. Ex. D-1. The County's remedial plan created four majority/minority districts, altering the boundaries of ten of the thirty-nine districts in the prior redistricting plan. The County included in its calculations of the minority populations in the majority/minority districts not only blacks but Hispanics and those of mixed race who included either

---

[1] References to "Ex.___" relate to exhibits received in evidence during the hearings conducted by Magistrate Judge Homer.

3

black or Hispanic as one of their races. The four districts, 2-5, are generally located in the eastern portion of the City of Albany ("City"). Ex. D-3. These four districts include the following populations:

| District | Total Population | Total (%) Minorities | Total Voting Age Population | Total Voting Age Minorities (%) |
|---|---|---|---|---|
| 2 | 7,380 | 65.89 | 5,208 | 58.53 |
| 3 | 7,441 | 65.09 | 5,412 | 57.54 |
| 4 | 7,365 | 67.50 | 4,930 | 60.79 |
| 5 | 7,347 | 67.07 | 5,113 | 59.71 |

Exs. D-5(a)-(b); P-2. Plaintiffs also proposed a remedial redistricting plan. Exs. P-(a)-c) (plaintiffs' remedial plan"). That plan also included four majority/minority districts in Districts 2-5, also in the Eastern portion of the City. *Id.* Plaintiff's remedial plan would alter the boundaries of thirty-eight of the thirty-nine districts from the County's prior redistricting plan. Plaintiffs' remedial plan includes the following populations:

| District | Total Population | Total (%) Minorities | Total Voting Age Population | Total Voting Age Minorities (%) |
|---|---|---|---|---|
| 2 | 7,245 | 71.87 | 5,036 | 65.39 |
| 3 | 7,252 | 71.81 | 5,292 | 64.87 |
| 4 | 7,253 | 68.70 | 5,180 | 60.60 |
| 5 | 7,259 | 75.40 | 4,936 | 68.64 |

### III. THE REPORT-RECOMMENDATION

After setting forth the appropriate standard for review of the remedial plan submitted by the County as a result of this Court's issuance of a preliminary injunction, the Magistrate Judge concluded that the County's new plan was compliant with the Constitution and Voting Rights Act. Based thereupon, the Magistrate Judge recommended that this Court approve of

the remedial plan submitted by the County despite the fact that plaintiffs had also submitted a redistricting plan which also satisfied the standards of the VRA and was, in some respects, less objectionable concerning the rights of voting minorities. The Magistrate Judge opined that the Court's role was to examine the County's remedial plan for compliance with the Constitution and VRA, not to decide which of the parties' plans was the best or most effective at maximizing minority voting opportunity. Magistrate Judge Homer also recommended leaving any and all decisions and directives regarding whether and how to hold 2003 elections for Albany County Legislators to state and county officials charged with authorizing and administering elections.

Having conducted a *de novo* review of the record, the Court agrees with the determinations of the Magistrate Judge that the County's remedial redistricting plan should be approved and that this Court should play no part in authorizing, directing or administering a special or postponed election of County legislators in lieu of the regularly scheduled quadrennial election previously enjoined by this Court's August 22, 2003, order.

## IV. DISCUSSION

### A. Standard of Review

"Redistricting is a legislative task that federal courts 'should make every effort not to pre-empt.'" *Goosby v. Town Bd. of Hempstead,* 981 F. Supp. 751, 755 (E.D.N.Y. 1997), *aff'd on other grounds* 180 F.3d 476 (2d Cir. 1999) (quoting *Wise v. Lipscomb,* 437 U.S. 535, 539 (1978)).

> Where a court has struck down a voting system, it must give the appropriate elected body an opportunity to propose a remedial plan. If it submits such a plan, the court must accord the proposal substantial deference. It does not matter whether the court considers the proposal the "best" plan, and it may not reject the

5

> plan to adopt what it considers to be a better one. Rather, the court's role is only to consider whether the plan proposed by the elected body is legally acceptable, i.e., whether it comports with the requirements of the [VRA] and the Constitution.

*Id.* (citing *Wise*, 437 U.S. at 540; *Upham v. Seamon,* 456 U.S. 37, 42-43 (1982)).

A minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district." *Thornburg v. Gingles,* 478 U.S. 30, 50 (1986). In the process of drawing majority/minority districts in order to comply with federal law, the state or county must decide "how substantial those majorities must be in order to satisfy the [VRA.]" *United Jewish Orgs. of Williamsburgh, Inc. v. Carey,* 430 U.S. 144, 162 (1977). "At a minimum and by definition, a 'black majority district' must be more than 50% black. But whatever the specific percentage, the State will inevitably arrive at it as a necessary means to ensure the opportunity for the election of a black representative and to obtain approval of its reapportionment plan." *Id.* Most courts have held that it is appropriate to consider the percentage of voting age population ("VAP") in the district rather than the total minority population, in recognition of the "higher non-voting age population percentages, lower voter registration and lower voter turnout found in minority communities." *Puerto Rican Legal Defense and Educ. Fund, Inc. v. Gantt,* 796 F.Supp. 681, 689 (E.D.N.Y. 1992) (citing *Hastert v. State Bd. of Elections,* 777 F.Supp. 634, 647 n. 20 (N.D. Ill.1991) (citing *Ketchum v. Byrne,* 740 F.2d 1398, 1413-15 (7th Cir.1984), *cert. denied,* 471 U.S. 1135 (1985)).

Consistent with its jurisprudence in other areas involving the VRA, the Supreme Court has declined to adopt a "bright-line formula" for determining whether the VAP percentage of a minority group in a district is so low that a court should suspect dilution of minority voting

strength. *See Puerto Rican Legal Defense and Educ. Fund, Inc.*, 796 F.Supp. at 689. However, in assessing the exact minority percentages required to achieve a viable districting plan, the Supreme Court has stated "[w]e think it was reasonable for the Attorney General to conclude in this case that a substantial [total] nonwhite population majority **in the vicinity of 65%** would be required to achieve a nonwhite majority of eligible voters." *United Jewish Orgs. of Williamsburgh, Inc.* 430 U.S. at 164 (emphasis added). Courts have generally held that "supermajorities" - more than simple majorities (51 percent) - are required to create "safe" majority/minority districts. *See Puerto Rican Legal Defense and Educ. Fund, Inc.*, 796 F.Supp. at 689 (citing *Hastert v. State Bd. of Elections*, 777 F.Supp. at 647 (court held that 60 percent VAP generally regarded as threshold for creating a "safe" minority district, but approved plan in which VAP of proposed African-American district fell slightly below that threshold); *Solomon v. Liberty County, Fla.*, 865 F.2d 1566, 1574 (11th Cir.1988) (51% VAP in African-American district was effective under *Gingles* "totality of the circumstances" approach), on rehearing en banc, 899 F.2d 1012 (11th Cir.1990) (same result as original panel), *cert. denied,* 498 U.S. 1023 (1991)). "The principle which motivates each of these cases is, as the Supreme Court continually stresses, that resort to absolutes is inappropriate in evaluating minority voting strengths." *Id.*

B.   Plaintiffs' Objections

Plaintiffs first contend that Magistrate Judge Homer erred when he afforded the County due deference in its passage of Local Law "E." To wit, plaintiffs allege that the legislative process which produced the remedial redistricting plan was "suspect." The evidence cited by plaintiffs in support of this contention consists of: 1) the testimony of minority Legislator Lucille McKnight, the only minority legislator in the County who voted

7

against Local Law "E;" and 2) an admission by the County's redistricting expert, Phillip Chonigman, on cross-examination, that he paid to place an ad in the Albany County democratic party's "picnic journal" in June 2002, "only days before he was awarded the contract to design Albany County's redistricting plan," and that his company made a donation to the Democratic Committee for Albany County in September 2002. Plaintiffs also contend that Chonigman's bid for the redistricting plan work was "suspiciously" low.

Plaintiffs contentions in regard to the deference due the County's remedial plan plainly lack merit. Although plaintiffs aver that no public hearing was held in connection with passage of Local Law "E" as required by local municipal law based on the testimony of Ms. McKnight, who testified that no such hearing occurred in her district, plaintiffs are clearly mistaken. In response to this "eleventh hour" procedural objection by plaintiffs, the County has submitted a transcript of the public hearing which occurred on September 3, 2003, in the Albany County Office Building during which a local resident raised objections to the remedial redistricting plan on the ground that it was unfair to the rights of minorities. Moreover, evidence that Phillip Chonigman may or not have political ties to the Democratic Party, or indeed that "politics" is factoring into **any** aspect of this litigation, is irrelevant to and has no bearing on the inquiry before the Court - to wit, does the remedial plan satisfy the Constitution and the requirements of the VRA?

Plaintiffs also contend that Magistrate Judge Homer erred because he failed to require the use of minority populations of at least 65% and VAP percentages of at least 60% in

majority/minority districts created by the County in its remedial plan.[2] Plaintiffs argue essentially that although the County's plan provides for four majority/minority districts with minority concentrations of at least 65%, which in turn ensures a VAP in each district of between 57.54% and 60.79%, the Court erred in not requiring the use of "super supermajority/minority" districts containing between 68% and 75% total minorities which would have provided a VAP of 60% **or more** in each district. The Seventh and Eighth Circuits have adopted the 65% total minority population/60% VAP figures as "guidelines," see *African American Voting Rights Legal Defense Fund v. Villa,* 54 F.3d 1345, 1348 n. 4 (8th Cir. 1995) and *Ketchum v. Byrne,* 740 F.2d 1398, 1414, n. 17 (7th Cir. 1984); but notably there is no Supreme Court or Second Circuit authority requiring use of these percentages to achieve equal access for minority voters. Plaintiffs argue that a court of this District recognized the 65% total minority population figure as a "rule of thumb," see *Fund for Accurate and Informed Representation, Inc. v. Weprin,* 796 F. Supp. 662, 672 (N.D.N.Y. 1992), but this language was clearly dicta. As a further matter, *Weprin* involved the complete opposite of the inquiry involved here - that is, whether legislative districts were unlawfully "packed" with

---

[2] Plaintiffs also object to the Court's inclusion of Hispanics in the calculation of minorities in each district, a contention properly dismissed as "at best disingenuous" by the Magistrate Judge. Plaintiffs successfully argued at the preliminary injunction stage of this litigation that the County's failure to include Hispanics as minorities for the purpose of calculating majority/minority districts in the original redistricting plan was persuasive evidence that the voting rights of minorities were likely to be adversely affected by the plan. Plaintiffs submitted affidavits and other evidence in support of their claim that the rights and interests of blacks and Hispanics in Albany County were "politically cohesive" for the purpose of the VRA. Having taken advantage of the fast-growing population of Hispanics in Albany County in establishing their right to a fourth majority/minority district, plaintiffs are now attempting to disclaim this statistic to further the political power of black voters whose population in the City has also grown, but at a rate slower than for Hispanics.

minority voters, not whether they were sufficient to constitute effective majority/minority districts. The Court agrees with the determination of the Magistrate Judge that based on the history of three majority/minority districts in Albany County created as a result of the 1991 Consent Decree after similar litigation between the parties - each with a total minority population of at least 63% and each where minority candidates have successfully been elected - the County's remedial plan with four majority/minority districts containing a minimum of 65% minorities is sufficient to ensure minorities can elect candidates of choice.

Plaintiffs also object to the Magistrate Judge's conclusion that the County's remedial plan does not unreasonably fracture minority neighborhoods and "communities of interest." The Court agrees with the determination of Magistrate Judge Homer that plaintiffs' arguments in this regard are overstated. It is true that both this Court and the Magistrate Judge criticized the County's original redistricting plan because it joined a portion of the City of Albany with a geographically, socially and economically distinct portion of the Town of Colonie to create a majority/**white** district. That reproach is now quashed by the fact that the district which straddles the City and West Albany in the Town of Colonie is now a majority/minority district. The number of white voters living in West Albany is hardly sufficient to threaten the "effectiveness" of this newly created majority/minority district. Plaintiffs allegations that neighborhoods have been "illogically" joined does not demonstrate any linkage between the alleged fragmentation of minority communities in Albany County and unequal access to the political process for minority voters.

The Court agrees with the assessment by the Magistrate Judge that the County's plan is not perfect and that plaintiffs' proposed plan may be in some respects "mo[re] rational and mo[re] effective." However, the County's plan meets the requirements of the Constitution

10

and the VRA and therefore it is entitled to both this Court's deference and approval.

B.    <u>2003 Election</u>

All parties, as well as the interveners, object to the determination of the Magistrate Judge to leave decisions and directives concerning election of county legislators from the newly adopted redistricting plan to those state and County officials charged with authorizing and administering those elections. The County contends and all parties agree that it has no authority to conduct an interim special election for legislators outside of a regularly scheduled election. The County requests that the Court order as another court of this District did in the 1991 Consent Decree that a special election be held for County legislators in November 2004. The interveners strongly object to this proposal and request that this Court order certification by municipalities of County legislator vacancies, nomination and slating of candidates, petitions, objections, primaries and a delayed special election to occur prior to the end of December 2003, pursuant to a highly condensed and optimistic, if altogether unrealistic, schedule of proceedings. Plaintiffs contend that it would be highly prejudicial to delay County legislator elections until November 2004 because the irreparable harm identified as the basis for this Court's issuance of a preliminary injunction would only be compounded by such a delay.

The Court addresses these objections *seriatim*. The County's request that this Court simply follow the course of the 1991 Consent Decree is flawed for a number of reasons. First, the 1991 case was negotiated by the parties and **settled** by way of the Consent Decree which has not occurred here. Thus it is clear that the parties **agreed** to conduct a special election for legislators as part of the next regularly scheduled election cycle. Second, it is not clear that even if there was a settlement in this case and an agreement by the parties to

11

conduct a special election that the Court would have the power to order it to occur. If the County does not have the power to authorize a special election why would this Court have such authority? The County created the present circumstances by adopting a redistricting plan which flagrantly violated the rights of minority voters. This Court will not relieve the County of responsibility for this gross error of judgment by ordering postponement of the 2003 legislative election. The Court agrees with Magistrate Judge Homer that an injunction ordering a special election would "undermine principles of federalism and comity."

Indeed these principles are exactly those that would prevent this Court from implementing any or all of the interveners' proposal for ordering a special election. Once this Court authorized such an election to occur, who would administer it? If legal disputes arose as they inevitably would given the extreme time constraints and limitations proposed by the interveners, who would resolve them? Assuming this Court had the power to delegate administration of any of the procedures outlined in the interveners' proposal to state and local officials and courts, on what authority would they do so? Of course the above is to say nothing of the cost and potential chaos which this Court would discharge on the municipalities in Albany County in ordering such an unprecedented special election to occur. This Court's obligation was to review the original objectionable redistricting plan, identify a violation of the Voting Rights Act, if any, and direct its remediation. This the Court has done. That voters in Albany County may not have the opportunity to elect new legislators based on the remedial redistricting plan approved herein by the Court while a regrettable occurrence, is neither the fault of this Court nor the concern of federal courts in general. Principles of federalism clearly require that federal courts defer all matters concerning whether, when and how to conduct elections to the state and local officials duly authorized to

make such determinations.

Indeed, it appears that the failure to elect new legislators is already a possibility envisioned in both the Albany County Charter and New York Election and Public Officers Laws. Reading the provisions cited by the County together, it appears that should new legislators not be elected this year, the current legislators would holdover and each office will be slated to be filled a the next general election in November 2004. *See* N.Y. Election Law § 4-106; N.Y. Pub. Officers Law §§ 42.1- 42.3; *see also* Albany County Charter § 205. Plaintiffs' complaints of prejudice due to potential postponement of the election for one year are overstated to the extent that if no election occurs in 2003, then the current County legislators will holdover. Although the 2000 Census revealed population shifts within Albany County, the then existing County districting plan by which the current legislators were elected was lawful and unchallenged. Holdover by these duly elected officials for one year - should it occur pursuant to local and state law - seems a reasonable solution to an otherwise intractable state of affairs.

## V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the Report-Recommendation of Magistrate Judge Homer is hereby adopted in its entirety based upon the reasons set forth by the Magistrate Judge in his Report-Recommendation and after *de novo* review upon those additional reasons set forth herein and it is therefore

ORDERED that the preliminary injunction previously issued by this Court on August 22, 2003, is hereby lifted; and it is further

ORDERED that requests by the parties for further orders or directives for conducting

a special election for Albany County legislators in lieu of the November 2003 election previously enjoined by this Court are DENIED.

IT IS SO ORDERED.

Dated: October 20, 2003
Syracuse, New York

*Norman A. Mordue*
Norman A. Mordue
United States District Court Judge