UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE POPE, et al., | : |
| Plaintiffs, | : |
| vs. | : No. 11-cv-0736 (LEK) (DRH) |
| COUNTY OF ALBANY, et al., | : |
| Defendants. | : |

**DECLARATION OF AARON MAIR**

1. I, Aaron Mair, hereby declare the following:

2. I am a black man over the age of eighteen residing in the City of Albany, New York. I am an executive director and President of the Board of Arbor Hill Environmental Justice Corporation ("AHEJ") and a member of the Albany Branch of the National Association for the Advancement of Colored People (NAACP). I give this declaration based upon personal knowledge.

3. I have lived in Albany County (the "County") since 1985. I have been a registered voter and have voted in the County since l986.

4. The County is comprised of 19 cities, towns and villages, the largest of which is the City of Albany (the "City").

5. The County's minority population has grown over time, in large part because of significant growth in the minority population of the City.

6. The County redistricts itself following each decennial national census.

7.  In 1991, I and other minority voters brought suit against the County, alleging that the 1990 legislative districts and the 1980 legislative districts violated Section 2 of the Voting Rights Act (VRA).

8.  Pursuant to the 1991 consent judgment and decree, three majority-minority districts were created, and three minority legislators ultimately were elected from those districts. Attached as Exhibit 1 is a true and correct copy of the 1991 consent decree.

9.  In 2003, after receiving the 2000 U.S. Census data, the Legislature adopted Local Law J to redistrict the County.

10. In 2003, I and other minority voters brought suit against the County, alleging that the Local Law J legislative districts violated Section 2 of the VRA (the "2003 Redistricting Litigation").

11. On August 19, 2004, the County entered into a consent decree and judgment. Attached as Exhibit 2 is a true and correct copy of the 2004 consent decree and judgment.

12. In 2004, pursuant to that consent decree and judgment, four majority-minority districts were created, from which minority legislators generally have been elected.

13. Absentee ballot abuses marred the March 2004 special election ordered to remedy the 2003 violation, requiring a new special election for Plaintiff Wanda Willingham's district, where she was the minority candidate.  As a result of those abuses, the County faced a VRA Section 11 lawsuit, which it resolved through a consent decree agreeing to reforms with regard to the unlawful absentee ballot activities.  Attached as Exhibit 3 is a true and correct copy of the 2007 consent decree and judgment.

14. In January 2011, after the receipt of the 2010 U.S. Census data, the County Legislature met to announce the appointment of a seven member reapportionment commission

(the "Redistricting Commission") to evaluate the existing County legislative districts and propose a redistricting plan for equity and representation in relation to County population (the "County Plan").

15. During the public comment period regarding the formation of the Redistricting Commission, I informed the County Legislature that little or no public notice went out to solicit a body of members to make up the Redistricting Commission, which could have been constituted by any member of the County community. During this meeting, County Legislator Wanda Willingham and several other legislators also expressed concern about the manner of notice and the fact that they did not have adequate opportunity to submit other names for consideration to the Commission.

16. From February through May of 2011, the Redistricting Commission held ten public hearings. I attended only three of these hearings because of poor public notice. The locations of the public hearings were not announced in the Times Union, the Albany area's local daily newspaper, or were scheduled at inconvenient times or locations. Attached as Exhibit 4 is a true and correct copy of a blog entry by "Albany Citizen One," a community activist who reported on the difficulty of "chasing down" the public redistricting hearing locations.

17. For example, the public hearing held on April 23, 2011, was scheduled on the day before the Easter Holiday, a Holy Saturday, at 1:00 pm. On this particular Saturday, the main streets were closed, making it very difficult to reach the location of the meeting. I would have attended more of these meetings had their details been better communicated, and had they been scheduled at more convenient times and locations.

18. Moreover, the Commission did not hold any of its public hearings in minority communities.

19. The first time the 2010 U.S. Census data was released to the public was at the April 5, 2011 public hearing of the Redistricting Committee, located sixteen miles south of the City of Albany in the Town of Coeymans, New York. Attached as Exhibit 5 is a true and correct copy of the minutes from this meeting.

20. Upon information and belief, it was not until the May 9, 2011 public hearing that the public had an opportunity to see any official plans with data or statistics from the Redistricting Commission, in spite of the urgency to consider potential VRA violations.

21. On more than one occasion, I heard citizens at the public hearings complaining to the Commission that they were unhappy with the Commission's process in developing the County Plan, and this is reflected in a media account covering one of the Redistricting Commissions' meetings. Attached as Exhibit 6 is a Times Union article by Carol Demare, *New Lines Draw Critics* (May 10, 2011).

22. On April 23, 2011, Anne Pope, a member of the minority community, reminded the Commission about the need to create a fifth majority-minority legislative district and expressed concern that the redistricting process was becoming unduly rushed, putting minority communities at a disadvantage. Attached as Exhibit 7 is a true and correct copy of the minutes from this meeting.

23. At the public hearing of the Redistricting Commission held on May 9, 2011, I raised concerns about the County Plan and the fact that the Commission failed to consider the concentrated growth of the minority population within the eastern portion of the City. Attached as Exhibit 8 is a true and correct copy of a New York Times article mapping out the 2010 Census results in the City of Albany.

24.     I pointed out that based on the 2010 census, the current legislative lines showed that five County legislative districts had minority populations in excess of 50%, and three legislative districts were in excess of 30% minority population. Because the districts were adjacent, adjoining, and concentrated in the City's eastern end, I concluded that between five and six majority-minority districts out of the 39 legislative districts could be developed from the populations clustered within the City of Albany. Attached as Exhibit 9 is a true and correct copy of the distribution of racial/ethnic populations overlaid with Local Law C majority-minority district lines in black.

25.     I further pointed out that the County's configuration of their new Legislative District 1 was drawn by "cracking," "packing," and "fracturing" of the black and Hispanic populations so that it combined an area that should actually be two potential minority districts in the City's south end.

26.     Moreover, I demonstrated that I was able to create five majority-minority districts within a 1% population deviation as opposed to the County Plan for four majority-minority districts with an absolute population deviation of 7.8% to 9.46%. Attached as Exhibit 10 is a true and correct copy of the Population Summary Report for the City of Albany under the County Plan, which would later become Local Law C. Smaller population deviations are an indicator of building districts with equal populations. Attached as Exhibit 11 is a true and correct copy of the Population Summary Report for the City of Albany under the AHEJ Plan.

27.     From as early as April 23, 2011 through May 9, 2011, all requests regarding the creation of a fifth majority-minority district were ignored while the requests to maintain or alter districts within the Majority community were accommodated.

28. At the April 18, 2011 public hearing of the Redistricting Commission, residents from the Town of Coeymans complained that they had lost quite a bit of their population and requested that that be rectified in the County Plan. Commissioner Thomas Cotrofeld responded that "every attempt will be made to do that." Attached as Exhibit 12 is a true and correct copy of the minutes from this meeting.

29. The Voorheesville community also expressed strong concern over their community being split in half and requested to be placed as much as possible into one district. The County Plan was revised to accommodate the concerns of this white majority community. On May 17, 2011, a Times Union article reported that the Redistricting Commission would be accommodating the community of Voorheesville's request. Shawn Morse, Chairman of the Redistricting Commission, stated that a special accommodation to the Voorheesville community was made because "[i]t was a computer-generated district." Attached as Exhibit 13 is a true and correct copy of the Times Union article by Carol Demare, *Hearing Tuesday on Vote Maps* (May 17, 2011).

30. The Albany County Redistricting Commission demanded that the minority community prove that it could draft a plan with five majority-minority districts. On May 17, 2011, I presented an alternative redistricting plan which I called the Arbor Hill Environmental Justice Plan ("AHEJ Plan") at a public hearing of the Redistricting Commission. Attached as Exhibit 14 is a true and correct copy of the AHEJ Plan.

31. The AHEJ Plan creates five majority-minority districts *and* respects natural community, neighborhood, and municipal boundaries. The AHEJ Plan considered compact socio-economic neighborhood and community boundaries using 2010 Census Summary Tape File-3 series data, and Summary Tape File-l series data. I also used the official Council of

Albany Neighborhood Map boundaries, and City of Albany Local Development Corporation official records on neighborhood association boundaries. I further took into account the local community churches and where their parishioners are drawn from. Lastly, I looked at the community school district boundaries as a further tool to define community compactness and commonality of interest. In short, I looked at the 2010 Census population, social economic variables by block group, community-defined neighborhood boundaries, official City of Albany defined neighborhood boundaries, communities of worship boundaries, school district boundaries, and municipal boundaries.

32. Despite all of this, none of the minority communities' needs or concerns were addressed when the draft of Local Law C was presented and voted on. Attached as Exhibit 15 is a true and correct copy of the Times Union article by Carol Demare, *Fifth Minority District Excluded From New Plan* (May 24, 2011).

33. The County Plan, which was approved by the County Legislature on May 23, 2011 and signed into Local Law C by the County Executive on June 6, 2011, includes only four majority-minority districts; it also divides communities and neighborhoods. For example, Local Law C divides neighborhood associations—the building blocks of any community, including Albany County's minority community—in the City, whereas the AHEJ Plan keeps neighborhood associations intact within districts.

34. Local Law C also creates two districts that cross municipal boundaries, from the City of Albany into surrounding municipalities in the County, in three different locations. Under Local Law C, Districts 9, and 10, and 11 cross the Albany City line into the Town of Bethlehem and at Russell Road South for the District 11; at Krum Kill, Bender/Slingerlands Boulevard southwest into the Town of Bethlehem for District 10; and New Scotland Ave/State Highway

Route 85 South and Westerly for District 9. None of the districts under the AHEJ Plan cross municipal boundaries.

35. The AHEJ Plan is consistent with the methodology and principles applied to develop the plaintiffs' proposed alternative plan in the 2003 Redistricting Litigation.

36. On behalf of neighborhoods and residents in North Albany, Arbor Hill, West Hill, and the South End of Albany, AHEJ has litigated local Albany County government subdivisions over zoning, eminent domain proceedings and enforcement federal regulations regarding protecting poor residents from the hazards of lead poisoning. Attached as Exhibit 16 is a true and correct copy of the stipulation of settlement in *Mair v. City of Albany*, Civ. No. 02-cv-1016 (N.D.N.Y Apr. 25, 2005). Attached as Exhibit 17 is a true and correct copy of a Times Union article by Brian Nearing, *Lead Paint Settlement Reached* (Apr. 28, 2005).

37. Lead poisoning prevention practices, standards, laws and requirements are the responsibility of the County Health Department, and the safe housing code enforcement (for the protection of human health) within the City is the responsibility of the City Fire Department.

38. In spite of state law, which requires landlords and the County Health Department to clean toxic apartments only after tests show a child has been poisoned, there appears to be no County Legislator advocating for laws, regulations, and standards that provide for better coordination between the City of Albany, the Fire Department housing code enforcement, the County Social Services, the County Health Department, and the Legislature's Health Committee. Attached as Exhibit 18 is a true and correct copy of a Times Union article by Brian Nearing, *Siblings Get $2.5 Million from Lawsuit* (Oct. 17, 2007).

39. Upon information and belief, no minority individual held any elected office in Albany County government until 1963.

40. Upon information and belief, only once has a minority candidate ever been nominated by a major political party to run for countywide office.

41. Upon information and belief, since the County's incorporation in 1788, only twice has a minority candidate been elected to countywide office in Albany County; one individual was elected County Coroner in 2004, and another as District Attorney in 2004.

42. Upon information and belief, while the County has 23 unelected departments, only one minority individual has ever headed any one of the County departments.

43. In 1995, a black applicant to the City's fire department sued the City for discrimination when he was not hired, even though he achieved the same score on the civil service exam as the white applicants who were ultimately hired.


Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 15, 2011

_____
Aaron Mair