UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                   :
ANNE POPE, et al.,                                                 :
                                                                   :
        Plaintiffs,                                              :
   v.                                                          :   No. 11-CV-0736 (LEK) (DRH)
                                                                   :
COUNTY OF ALBANY, et al.,                                          :
                                                                   :
        Defendants.                                              :
                                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' MEMORANDUM ON POLITICAL COHESION

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan
mkarlan@gibsondunn.com
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035
Bar Roll No. 511874

DEROHANNESIAN & DEROHANNESIAN
Paul DerOhannesian II
derolaw@verizon.net
677 Broadway, Suite 202
Albany, New York 12207-2985
Telephone: 518.465.6420
Fax: 518.427.0614
Bar Roll No. 104792

Attorneys for Plaintiffs

August 5, 2011

In preparing its redistricting plan based on the 2010 U.S. Census, the County of Albany ("County") treated blacks and Hispanics as a community of interest, and claims that it tried to create five majority-minority districts ("MMDs") based on that community of interest, but could only create four. On July 15, 2011, Plaintiffs filed expert declarations with illustrative plans demonstrating that five MMDs with more than 60% blacks and Hispanics can easily be created. Confronted with this expert testimony, the County has been forced to disavow its own use of the minority populations of both blacks and Hispanics in drawing MMDs and to adopt, in litigation, the contrary position that Hispanics should be excluded when assessing potential MMDs. As discussed below, the County's litigation position is not only directly at odds with what the County actually did when preparing its redistricting plan in 2011, but also contrary to the County's prior admissions in Consent Decrees, the findings of Magistrate Judge Homer and District Judge Mordue, and the overwhelming weight of evidence.

## I. For The Past 30 Years, Blacks And Hispanics In Albany County Have Been Consistently Treated As Politically Cohesive

For the past 30 years, blacks and Hispanics in Albany County have been consistently treated as politically cohesive.

*First*, as part of a Consent Decree entered in November 1991, the County "stipulated that the black and Hispanic groups in the County were cohesive and should be considered as one group for purposes of the Voting Rights Act." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 2003 WL 21524820, at *9 (N.D.N.Y. July 7, 2003) ("*Arbor Hill I*"). *See also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 281 F. Supp. 2d 436, 448 (N.D.N.Y. 2003) ("*Arbor Hill II*").

*Second*, in connection with the prior *Arbor Hill* litigation, District Judge Mordue determined in August 2003 that the "evidence of political cohesion between blacks and

1

Hispanics [in Albany County] is amply supported by the record." *Arbor Hill II*, 281 F. Supp. 2d at 448.  As a result, the County ultimately adopted a redistricting plan that created four MMDs based on the populations of *both* blacks and Hispanics.

*Third*, Defendants' witnesses have admitted that, in preparing the County's redistricting plan *in 2011*, the County drew MMDs based on a minority population count that included *both* blacks and Hispanics.  John Merrill, the County's Redistricting Coordinator for the 2011 redistricting, testified that he consulted with Thomas Marcelle on what constitutes a minority, and that, based on his discussions with Mr. Marcelle, he understood "minority" for purposes of drawing MMDs to include *both* blacks and Hispanics.  Mr. Merrill's written notes on the redistricting process also reflect the definition of "minority" that he adopted in drawing MMDs:

> At the suggestion of Chairman Morse, I asked Tom Marcelle, the Minority Counsel, to meet with me and explain the problems encountered in the last redistricting, so that we might not repeat the same mistakes which lead to the many challenges of those efforts.  Our meeting was very productive and he agreed to provide me with a copy of the court's decision in the last redistricting lawsuit.  A reading of Judge Homer's decision on the court's definition of what constitutes a minority.  <u>(Not Hispanic or Latino Black and African Americans, Not Hispanic or Latino people of Two or More Races, and those who identified solely as Hispanic or Latino.)</u>

Affidavit of John E. Merrill, Ex. D, ¶ 12 (Docket No. 42) (emphasis supplied).

At a County hearing on May 9, 2011, Mr. Marcelle confirmed that the MMDs prepared in 2011 were based on a minority population count that included *both* blacks and Hispanics:

> And as you know, when you create a majority-minority district, based on Judge Homer's opinion, it should be, there is a community of interest, not only among the African-American community, but a court finding that was argued last year— or, 10 years ago—by the plaintiffs in the lawsuit against Albany County that the Hispanic population has a aligned interest, and that was a court finding.  <u>So we created four majority-minority districts based on the neighborhoods, and the, both the African-American mixed race and Hispanic populations</u>.

Plaintiffs' Ex. G (emphasis supplied).

## II. The Overwhelming Weight Of Evidence Continues To Demonstrate That Blacks And Hispanics Are Politically Cohesive

The County's Redistricting Coordinator, Mr. Merrill, testified that he endeavored to create five MMDs based on the minority population count of *both* Blacks and Hispanics, but was unable to do so. On July 15, 2011, Plaintiffs submitted expert testimony and illustrative plans demonstrating that five MMDs with more than 60% blacks and Hispanics can easily be created. The County has proffered no expert to contradict Plaintiffs' expert testimony. Instead, the County has been forced to argue that Hispanics should be excluded from the minority population count. Notwithstanding its own use of the minority population count of *both* blacks and Hispanics in drawing the MMDs under the Local Law C redistricting plan, the County claims that any challenge to Local Law C should exclude Hispanics because of the lack of "statistical evidence" relating to Hispanics. This exact same argument was advanced and rejected in the *Arbor Hill* litigation.

As both Magistrate Judge Homer and District Judge Mordue explained, where there is insufficient raw data from which to undertake a statistical analysis, a court may properly look to other evidence, including the County's historical treatment of blacks and Hispanics, and anecdotal evidence from residents in the County:

> Given the geographical compactness of the black and Hispanic populations in the County and in the area of existing District 4, defendants' 1991 admission of such cohesiveness and the anecdotal evidence of political and social cohesiveness, the conclusion is compelled that plaintiffs have satisfied their burden of demonstrating the political cohesiveness of the black and Hispanic populations in the County and in the area of existing District 4.

*Arbor Hill I*, 2003 WL 21524820, at *8-9. *See also Arbor Hill II*, 281 F. Supp. 2d at 448-49 ("The Court agrees with the Magistrate Judge that the anecdotal evidence submitted by plaintiffs

was sufficient to demonstrate a reasonable degree of political cohesiveness between blacks and Hispanics.").

The evidence continues to demonstrate that blacks and Hispanics in Albany County live in the same neighborhoods, have the same problems, share the same concerns, and are politically cohesive:

- Blacks and Hispanics in Albany County are concentrated in the same neighborhoods. *See* Declaration of William Cooper, ¶ 6 (Docket No. 54); Declaration of Janis Gonzalez, ¶ 9 (Docket No. 17); Declaration of Samuel Coleman, ¶ 5 (Docket No. 22); Declaration of Carlos Gonzalez, ¶ 13 (Docket No. 23); Declaration of Sandra Webb-Williams, ¶ 3 (Docket No. 39).

- The highest mortality, disease, hospitalization, and teen birth rates in Albany County are in the neighborhoods where blacks and Hispanics are concentrated. *See* Declaration of Ingrid M. Allard, ¶¶ 5, 10-25 & Ex.1 at 62 (Docket No. 16).

- The high school graduation rate of blacks and Hispanics is far lower than the high school graduation rate of whites. *See* Declaration of Noelene Smith, ¶ 3 (Docket No. 21) ("For the Albany City School District, the high school graduation rate for blacks is 46%. For Hispanics, the rate is 44%. For whites, on the other hand, the graduation rate is 74%."). Moreover, "[p]resently and in the past, students of color are sent to alternative schools, where dropout rates increase significantly." Declaration of Barry Walston, ¶ 9 (Docket No. 15). *See also* Smith Decl. ¶ 7. In addition, there have been numerous school closings in minority neighborhoods, forcing minority students to be transported to schools that are farther away and resulting in decreased attendance. *See* Declaration of Samuel Coleman, ¶ 11 (Docket No. 22).

- Blacks and Hispanics face similar economic challenges, and minority businesses owned or represented by blacks and Hispanics are routinely passed over in favor of businesses owned by whites. *See* Declaration of Joseph Gomez, ¶¶ 2-8 (Docket No. 18). Indeed, notwithstanding the adoption of an affirmative action policy nearly 20 years ago in 1993, there has been "no real effort to hire minorities" by the County. *See* Declaration of Lucille McKnight, ¶¶ 16-17 (Docket No. 20); Declaration of Carolyn McLaughlin, ¶ 8 (Docket No. 38).

- The unemployment rate for the working age population of blacks and Hispanics in Albany County is approximately double the unemployment rate for whites. *See* Cooper Decl. ¶ 16(b) (Docket No. 54). The high unemployment rate is a common concern of blacks and Hispanics in Albany County. *See* Webb-Williams Decl. ¶ 5 (Docket No. 39).

- Blacks and Hispanics represent a disproportionately small part of the municipal workforce for the City of Albany, where the majority of the blacks and Hispanics in Albany County are concentrated. *See* McLaughlin Decl. ¶¶ 6-7 (Docket No.

38).  Of the City's 1,338 employees, there are only 220 blacks and 30 Hispanics.  *See* Declaration of Kathy Sheehan, Ex. 1 (Docket No. 19-1).

- Of the Albany Fire Department's 259 employees, there are only 12 blacks and 4 Hispanics.  Sheehan Decl. Ex. 1 (Docket 19-1); McLaughlin Decl. ¶¶ 6-12 (Docket No. 38).  Notwithstanding a Consent Decree, the Albany Fire Department has never met the targeted percentage of minority hiring.  *See* Declaration of Corey Ellis, ¶ 5 (Docket No. 27).

- Of the Albany Police Department's 529 employees, there are only 80 blacks and 10 Hispanics.  Sheehan Decl. Ex. 1 (Docket 19-1).  Blacks and Hispanics share the same concerns about the treatment of minorities by the Albany police.  Webb-Williams Decl. ¶ 6 (Docket No. 39); Declaration of Alice Green, ¶¶ 7-14 (Docket No. 13).  For example, despite efforts by a committee of community representatives to develop an anti-racial profiling policy for use by the Albany police, the policy has never been supported by the police department.  *See* Green Decl. ¶ 9.

- Blacks and Hispanics in Albany County face a poverty rate approximately four times greater than the poverty rate among whites in the County, with at least four times as many Hispanic children and five times as many black children living below the poverty line as compared to white children.  *See* Cooper Decl. ¶ 16(d) (Docket No. 54).

- Albany County legislators have been unresponsive to concerns facing their minority constituents, including blacks and Hispanics.  *See* Webb-Williams Decl. ¶ 7 (Docket No. 39); Coleman Decl. ¶ 4 (Docket No. 22).  The County has rejected, for example, the establishment of a Minority Affairs Committee.  *See* Declaration of Wanda Willingham, ¶ 22 (Docket No. 26).  This has led to the creation of citizen groups to respond to minority needs, for example, in employment.  Gomez Decl. ¶ 2-3 (Docket No. 18).

- In the 223 years since Albany County was incorporated, a small handful of blacks have been elected to County-wide offices or appointed to lead County departments.  *See* Declaration of Aaron Mair, ¶¶ 49-43 (Docket No. 28); Webb-Williams Decl. ¶ 9 (noting that to her knowledge there has never been a minority representative of her neighborhood at any level of local government).

- There are no Hispanics elected to the Albany City Common Council or the County Legislature.  *See* J. Gonzalez Decl. ¶ 14.  Only a few blacks have ever been elected as County-wide officials or appointed to lead County departments.  Declaration of Aaron Mair ("Mair Decl.") (Docket No. 28) ¶ 39-43.  *See also* Webb-Williams Decl. ¶ 9 (Docket No. 39).

- Blacks and Hispanics in Albany County typically support the same candidates.  Moreover, blacks in Albany County have supported Hispanic candidates, and vice versa.  *See* J. Gonzalez Decl. ¶ 16 (Docket No. 17); C. Gonzalez Decl. ¶ 14 (Docket No. 23); Webb-Williams Decl. ¶ 11 (Docket No. 39).  For example, Carlos Gonzalez, a Hispanic, prevailed in a contested race for a seat on the

      Democratic Committee in the Third Ward, a primarily black area.  *See* C. Gonzalez Decl. ¶ 10 (Docket No. 23).

- In addition to joining together to further each other's political interests, blacks and Hispanics in Albany County have joined together to further each other's social interests, including through community organizations, religious organizations, youth sports, and civic organizations.  *See* J. Gonzalez Decl. ¶¶ 10-13 (Docket No. 17); Gomez Decl. ¶¶ 2-6 (Docket No. 18).  The presence and success of community centers, after-school programs, and after-school jobs for youth, are common concerns for blacks and Hispanics in Albany County.  *See* Webb-Williams Decl. ¶ 5 (Docket No. 39).

All of these facts are undisputed.  Indeed, the County has produced no expert or lay testimony to rebut the testimony of Plaintiffs' declarants or its own repeated treatment of blacks and Hispanics as politically cohesive (including as recently as in 2011 in connection with the preparation of the Local Law C redistricting plan), and no evidence indicating that blacks and Hispanics are not politically cohesive.  *See Arbor Hill I*, 2003 WL 21524820, at *9 (finding that anecdotal evidence from residents in the community showed that "the two populations are politically cohesive," and noting that "Defendants have not rebutted or refuted this evidence nor offered any contradictory evidence").

\* \* \*

    Because the undisputed expert testimony shows that five MMDs with more than 60% voting-age blacks and Hispanics can be created,[1] and because the overwhelming weight of evidence continues to demonstrate that blacks and Hispanics in Albany County are politically cohesive, Plaintiffs respectfully request that the Court grant their requests for a temporary restraining order and preliminary injunction.

---

[1] As discussed in Plaintiffs' Memorandum on the Majority-Minority Rule (Docket No. 57), the Supreme Court made clear in 2009 that "the majority-minority rule relies on an objective, numerical test:  Do minorities make up more than 50 percent of the voting-age population in the relevant geographic area?"  *Bartlett v. Strickland*, 129 S. Ct. 1231, 1245 (2009)

6

Dated:  August 5, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Mitchell A. Karlan
 Mitchell A. Karlan

mkarlan@gibsondunn.com
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035
Bar Roll No. 511874677

DEROHANNESIAN & DEROHANNESIAN

Paul DerOhannesian II
derolaw@verizon.net
677 Broadway, Suite 202
Albany, New York 12207-2985
Telephone: 518.465.6420
Fax: 518.427.0614
Bar Roll No. 104792

Attorneys for Plaintiffs