UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANNE POPE, *et al*.,

                    Plaintiffs,

          -against-                                          1:11-CV-00736 (LEK/DRH)

COUNTY OF ALBANY, *et al*.,

                    Defendants.

_____

### MEMORANDUM-DECISION and ORDER

## I.     INTRODUCTION

          Presently before the Court is Plaintiffs' Motion for preliminary and permanent injunctive

relief ("PI Motion") (Dkt. No. 12), filed on July 15, 2011.  Defendants filed a Response in

opposition to this motion on July 29, 2011.  Dkt. No. 40 ("PI Opposition").  On August 3, 2011,

Plaintiffs also filed a Motion for a Temporary Restraining Order ("TRO"), to which Defendants

responded on August 5, 2011.  Dkt. Nos. 56, 66.  The Court denied the TRO on August 10, 2011.

Plaintiffs also submitted a Memorandum of law on the majority-minority rule on August 3, 2011,

and a Memorandum of law on political cohesion on August 5, 2011.  Dkt. Nos. 57, 67.  Plaintiffs

seek to enjoin Defendants from holding elections for seats in the Legislature of Defendant Albany

County ("the County"), on the grounds that Defendants' redistricting plan, signed into law on June

6, 2011 ("Local Law C"), dilutes the voting strength of the minority community in violation of

Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 ("VRA").  The Court

denies Plaintiffs' Motion for a preliminary injunction.

## II. BACKGROUND

          Plaintiffs allege that Local Law C violates the VRA because it creates an insufficient number

of districts containing a majority of minorities in the population, or "majority/minority districts" ("MMDs"). <u>See</u> Compl. (Dkt. No. 1) at 13-14. The County's Legislature consists of individual members elected from each of the County's thirty-nine districts. Pls.' Mem. of law in support of preliminary injunction ("PML for PI Mot.") (Dkt. No. 30) at 3. The County redistricts itself every ten years following the United States Census. <u>Id.</u> Elections to the Legislature are held every four years, with the next primary election for the Legislature scheduled to be held on September 13, 2011. <u>Id.</u>

On two prior occasions following the 1990 and 2000 United States Censuses, Plaintiffs have successfully sued in this District to create more MMDs. In 1991, when the reapportionment law only provided for one MMD, minority residents sued and the litigation was resolved through entry of a consent decree mandating three MMDs ("1991 Consent Decree"). <u>N.A.A.C.P. v. Albany County</u>, No. 91-CV-1288 (N.D.N.Y. filed Nov. 7, 1991). In 2003, when the County's reapportionment law did not create a fourth MMD in response to the 2000 Census, minority residents again sued and United States District Judge Norman A. Mordue, adopting the Report-Recommendation of United States Magistrate Judge David R. Homer, enjoined the scheduled 2003 election of County legislators pending adoption of a new redistricting plan that would create a fourth MMD. <u>Arbor Hill Concerned Citizens Neighborhood Assn' v. County of Albany</u>, 281 F. Supp. 2d 436 (N.D.N.Y. 2003), <u>adopting</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, No. 03-CV-502, 2003 WL 21524820 (N.D.N.Y. July 7, 2003) ("<u>Arbor Hill</u> Report-Rec."). Now, following the 2010 Census, Plaintiffs request that the Court void Local Law C and enjoin the 2011 elections on the grounds that Defendants' failure to create a fifth MMD dilutes minority voting power under the VRA.

2

## III. DISCUSSION

Generally, the "district court may grant a preliminary injunction where the moving party establishes: (1) that it is likely to suffer irreparable injury if the injunction is not granted, and (2) either (a) a likelihood of success on the merits of its claim, or (b) the existence of serious questions going to the merits of its claim and a balance of the hardships tipping decidedly in its favor." Freeman v. McKnight, No. 07-CV-01123, 2007 WL 3254431, at *1 (N.D.N.Y. Nov. 2, 2007) (citing Moore v. Consolidated Edison Co. of New York, Inc., 409 F.3d 506, 510-511 (2d Cir. 2005)).

"Such relief . . . is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. " Moore, 409 F.3d at 510-11. Moreover, in some cases, a significantly higher standard applies. Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996). Where the moving party seeks to "affect government action taken in the public interest pursuant to a statutory or regulatory scheme," as is the case here, "the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Sussman v. Crawford, 488 F.3d 136, 140 (2d Cir. 2007); see also Arbor Hill, 281 F. Supp. at 442 (citing No Spray Coalition, Inc. v. City of N.Y., 252 F.3d 148, 150 (2d Cir. 2001)).

Plaintiffs have not sustained their burden to demonstrate that a preliminary injunction should issue, and, accordingly, the Court denies the relief sought. Although "[t]he abridgement or dilution of the right to vote is an irreparable harm," Arbor Hill Report-Rec., 2003 WL 21524820, at *3, Plaintiffs have failed to meet their burden of showing a likelihood of success on the merits at this stage of the litigation. In Thornburg v. Gingles, the seminal case interpreting Section 2 of the VRA, the Supreme Court identified three preconditions that must exist for a plaintiff to succeed on

3

a vote dilution claim: (1) "[T]he minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) "the minority group must be able to show that it is politically cohesive"; and (3) "the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate."  478 U.S. 30, 50-51 (1986).

Each of the three Gingles preconditions must be proven by a preponderance of the evidence. Arbor Hill Report-Rec., 2003 WL 21524820, at *4 (citing Reed v. Town of Babylon, 914 F. Supp. 843, 863 (E.D.N.Y. 1996)).  Further, even if a plaintiff proves the existence of the three preconditions, in order to prevail on a vote dilution claim they must still prove that, based on a totality of the circumstances, the minority group does not have equal access to the political process.  Id. at *14.  This determination "focuses on nine factors that are relevant to vote dilution claims, which overlap in certain respects with themselves and with the three Gingles preconditions."  Id.

At this juncture, the Court finds that Plaintiffs have not demonstrated a likelihood of success on the merits with respect to the three Gingles preconditions.  Because of this finding, the Court need not address whether Plaintiffs have established, based on a totality of the circumstances, that blacks and Hispanics do not have equal access to the political process in Albany County.

**A. Sufficiently Large and Geographically Compact Majority Minority District**

Plaintiffs argue that "the increased population of blacks alone supports five MMDs" that have non-Hispanic minority voting-age populations ("VAPs") of between 50.44 percent and 52.67 percent.  PML for PI Mot. at 12 (emphasis in original).  In support of this contention, Plaintiffs filed an additional Memorandum with the Court citing to Bartlett v. Strickland, 129 S. Ct. 1231, 1246 (2009) (Kennedy, J.), an opinion adopted by only three justices on the Supreme Court stating that "a

4

party asserting § 2 liability must show by a preponderance of the evidence that the minority population in the potential election district is greater than 50%." Pls.' Memorandum on majority-minority rule ("PML on Majority/Minority Rule") (Dkt. No. 57). The Court is not bound by this portion of Bartlett, insofar as it was not followed by a majority of the Supreme Court, and that decision dealt only with "crossover districts" that do not otherwise satisfy the Gingles requirement that a district be sufficiently large and compact. See Bartlett, 129 S. Ct. at 1243-45.

Furthermore, the Court is unpersuaded that a barebones 50.44 percent black VAP majority is sufficient to warrant a preliminary injunction ordering the creation of a fifth MMD in this case, particularly where Plaintiff's own expert, Dr. Paul Liu, testified that a 55 percent minority population is required for a particular district to be considered a "dominant" black district. Transcript of examination of Dr. Baodong Paul Liu on Wednesday, August 3, 2001 ("Liu Hearing Tr.") at 3; see also Arbor Hill Report-Rec., 2003 WL 21524820, at *5 ("A minority group is sufficiently large if it comprises more than 51% of the population of a voting district.") The Court finds that Plaintiffs have not proven a fifth MMD exists because of the increase in the black population alone.

Thus, to establish that a fifth MMD that is sufficiently large and geographically compact exists in Albany County, Plaintiffs must prove that blacks and Hispanics are politically cohesive and should be counted together for Section 2 purposes. Plaintiffs themselves advance this argument, pointing to the combined numbers of blacks and Hispanics in a geographically compact area – the eastern part of the City of Albany. Plaintiffs state that these numbers would support five MMDs with VAPs between 60.46 percent and 62.69 percent, sufficiently large numbers to warrant the creation of a fifth MMD. PML for PI Mot. at 11-13. However, for the reasons discussed below,

Plaintiffs have not yet established a likelihood of success of the merits on the issue of whether blacks and Hispanics in Albany County are politically cohesive.

### B. Political Cohesion Between Black and Hispanic Voters

Plaintiffs have failed to meet their burden as to the second <u>Gingles</u> precondition in establishing that blacks and Hispanics are politically cohesive. Dr. Liu testified that there is insufficient data available to obtain a reliable estimate of Hispanics' voting patterns in Albany County. Liu Hearing Tr. at 2; PML on Cohesion at 1, 3-6. Plaintiffs have presented socioeconomic data and testimony from a number of residents providing anecdotal evidence that the two groups support the same candidates and have worked together to further each other's political and social interests. <u>See</u> PML for PI Mot. at 13-14 (citing Joseph Gomez Decl. (Dkt. No. 18) ¶ 8; Janis Gonzalez Decl. (Dkt. No. 17) at ¶¶ 10-13; Carlos Gonzalez Decl. (Dkt. No. 23) ¶ 10)); Pls.' Memorandum on political cohesion ("PML on Cohesion") (Dkt. No. 67). <u>See also</u> PML for PI Mot. at 22 (citing Cooper Decl. at ¶ 16 (Dkt. No. 24, later amended in Dkt. No. 54)). Plaintiffs cite the 1991 Consent Decree, in which Defendants stipulated that blacks and Hispanics in the County should be considered as one group for purposes of redistricting under Section 2 of the VRA. Judge Homer heavily relied on this Consent Decree in determining that blacks and Hispanics were politically cohesive in 2003. PML on Cohesion at 1; <u>Arbor Hill</u> Report-Rec., 2003 WL 21524820, at *9. Plaintiffs nonetheless contend that this twenty-year-old Consent Decree, together with socioeconomic evidence, and anecdotal evidence from current minority residents in Albany County, constitute sufficient evidence of political cohesion between blacks and Hispanics.

These arguments fail. Diverse minority groups such as blacks and Hispanics may under certain circumstances be combined to satisfy the <u>Gingles</u> precondition of political cohesiveness.

Arbor Hill, 281 F. Supp. 2d at 445 (citing Bridgeport Coalition for Fair Representation v. City of Bridgeport, 26 F.3d 271, 276 (2d Cir. 1994)).  However, the Court cannot assume that blacks and Hispanics in Albany County are politically cohesive because courts have found them to be cohesive in other jurisdictions.  Instead, the Court must make a local determination that blacks and Hispanics are politically cohesive in Albany County.  Growe v. Emison, 507 U.S. 25, 41-42 (1993) (finding law review article on national voting patterns insufficient to establish bloc voting without any further proof that it occurred in specific local area).  Nor can the Court conclude that blacks and Hispanics in Albany County are currently politically cohesive because a court concluded they were politically cohesive more than eight years ago.  While Judge Mordue adopted Judge Homer's finding of political cohesiveness in the absence of any statistical evidence to support such a finding in 2003, Judge Homer relied heavily on the County's admission in the Consent Decree of 1991.  See Arbor Hill Report-Rec. at *9.  As nearly twenty years have elapsed since the adoption of the Consent Decree, it carries little probative value in the determination of whether the black and Hispanic communities in Albany County are politically cohesive at present.  See also FED. R. EVID. 401; Arbor Hill Report-Rec. at *9 ("The most probative evidence of cohesiveness . . . is statistical evidence of voting patterns in elections held in the district at issue.") (citing Goosby v. Town Bd. of the Town of Hempstead, 180 F.3d 476 (2d Cir. 1999)).

Regarding Plaintiffs' anecdotal evidence, the Court notes that "anecdotal testimony regarding individual instances where [H]ispanic voters supported and worked for black candidates is insufficient to demonstrate the requisite level of political cohesion in the absence of statistical or other evidence of voting patterns." Arbor Hill Report-Rec., 2003 WL 21524820, at *8 (citing Concerned Citizens of Hardee County v. Hardee County Bd. of Comm'rs, 906 F.2d 524, 526 (11th

7

Cir. 1990)).  The Court finds no other cases applying the VRA in this Circuit or in other circuits

where anecdotal evidence alone has been deemed sufficient to establish political cohesion.  See

Concerned Citizens of Hardee County, 906 F.2d at 527; Rodriguez v. Pataki, 308 F. Supp. 2d 346,

372 (S.D.N.Y. 2004) ("Proof of cohesion in actual elections is required."); Reed, 914 F. Supp. at

863 ("Although lay testimony may evidence political cohesiveness or racial bloc voting, statistical

evidence . . . presented through expert testimony is typically also offered.") (citing Monroe v. City

of Woodville, Miss., 897 F.2d 763, 764 (5th Cir. 1990)).  Cf. Growe v. Emison, 507 U.S. 25 (1993)

(finding Gingles preconditions not met where "the record contains simply no statistical evidence of

minority political cohesion . . . [a]nd even anecdotal evidence is lacking.").

    The Court cannot conclude, in the absence of any statistical voting evidence, that a twenty-

year-old Consent Decree, evidence of socioeconomic similarities, and mere anecdotal evidence of

cooperation between blacks and Hispanics in the community are in and of themselves sufficient to

prove that the two groups are politically cohesive.  While Defendants have provided little in the way

of independent evidence to rebut Plaintiffs' claims of cohesiveness, the burden remains with

Plaintiffs to establish political cohesiveness by a preponderance of the evidence.  Reed, 914 F.

Supp. at 863.  Accordingly, the Court finds that at this juncture Plaintiffs have failed to establish a

likelihood of success on the merits sufficient to warrant preliminary injunctive relief.

### C. Majority Bloc Voting that Usually Defeats the Preferred Minority Candidate

    Plaintiffs have also failed to demonstrate a likelihood of success on the merits with respect

to the third Gingles precondition, namely, that the white majority votes sufficiently as a bloc to

enable it usually to defeat the minority's preferred candidate.  Plaintiffs primarily rely on the

testimony of Dr. Liu to establish this precondition.  PML for PI Mot. at 15.  In his report, Dr. Liu

performed a statistical analysis using the ecological inference method that included fourteen elections, and he eventually included sixteen elections in his analysis.  Declaration of Dr. Baodong (Paul) Liu ("Liu Report") at 2; Liu Hearing Tr.) at 8.  Dr. Liu is clearly qualified as an expert on racial bloc voting, and the ecological inference method that he uses appears to be scientifically reliable.

However, Defendants established on cross-examination that Dr. Liu did not include several countywide and citywide elections in his data set, and Dr. Liu himself admitted that some of these races would have been relevant to his analysis.  Liu Hearing Tr. at 16-17, 21-22, 26.  Specifically, for at least six citywide or countywide races in the last 10 years, Dr. Liu either admitted that they were not included in his 2003 or 2011 statistical analyses or said that he did not know if they were included.  Id.  These races include the 2003 race for County Coroner, the 2004 and 2008 countywide races for District Attorney, a 2004 election for City Court Judge, a 2005 race for a Democratic state committee position on the Common Council, and the 2009 election for Mayor of Albany.  Id. Further, Dr. Liu conceded on cross-examination that a more robust data set would provide a more accurate assessment of racial voting patterns in Albany County.  Id. at 29.  Therefore, Plaintiffs have not yet proven a likelihood of success on the merits on the issue of white majority bloc voting on the basis of Dr. Liu's testimony.

In addition to relying on Dr. Liu's report, Plaintiffs rest on the 2003 Arbor Hill decision, which found that the historical evidence "strongly supports the conclusion that the white majority in [Albany] County and in the area . . . votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate."  Arbor Hill Report-Rec., 2003 WL 21523820, at *31 (quoting Gingles, 478 U.S. at 51).  While the Arbor Hill decision correctly concluded that whites voted as a

9

bloc before and during 2003, there has clearly been a change in the voting patterns of white residents of the County in the last eight years.  Id.; Liu Hearing Tr. at 16-17, 21-22, 26.  When the 2003 Arbor Hill litigation took place, no minority candidate had ever been nominated to run for countywide office, much less won such an race.  Id. at 31-32.  As Plaintiffs themselves concede, two black candidates have won countywide races to the offices of County Coroner and District Attorney since 2003.  PML for PI Mot. at 15.  Further, Defendants point out that President Barack Obama carried Albany County in his 2008 presidential election, and that black candidates, such as City Court Judge Helena Heath-Roland, have prevailed in citywide races in Albany.  Liu Hearing Tr. at 10-12, 20.

The recent electoral successes of some minority candidates in Albany County suggest that longstanding bloc voting among whites that usually defeats the preferred minority candidate is in the process of changing.  Significant progress has been made in achieving equality among racial and ethnic groups in Albany County elections.  However, greater progress is necessary to afford Plaintiffs a full opportunity to participate in our local political processes.  As Dr. Liu confirmed during his testimony, even when a minority candidate wins an election, it is still possible for bloc voting and racially polarized voting to occur.  Liu Hearing Tr. at 38.  However, Plaintiffs have not yet made a showing that bloc voting by whites in Albany County still exists.  The Court therefore finds that Plaintiffs have not established a likelihood of success on the merits with respect to the third Gingles precondition.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for a preliminary injunction (Dkt. No. 12) is **DENIED**;

and it is further

      **ORDERED**, that the Clerk serve a copy of this Order on all parties.

      **IT IS SO ORDERED**.


DATED:        August 18, 2010
               Albany, New York

               Lawrence E. Kahn
               U.S. District Judge

11