**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
                                 :

ANNE POPE, et al.,                     :
                                 :

               Plaintiffs,      :
                                 :

      -against-            :   No. 11-cv-0736 (LEK) (CFH)
                                 :

COUNTY OF ALBANY, et al.,     :

              Defendants.     :
                                 :
----------------------------------------------------------x

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**
**– AND –**

**<u>PLAINTIFFS' COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Local Rule 7.1(a)(3), Plaintiffs Anne Pope, Wanda Willingham, Geraldine Bell, Samuel Coleman, and Lee Pinckney (collectively, the "Plaintiffs"), respectfully submit the following Response to Defendants' Statement of Facts and Counter-Statement of Undisputed Material Facts.

1.       Plaintiffs admit this assertion.

2.       Plaintiffs admit that an ideal district in Albany County (the "County") based on the 2010 Census would include 7,800 people. *See* Declaration of William S. Cooper, dated July 14, 2011 ("Cooper PI Decl.") ¶ 22, submitted as Exhibit 33 to the Declaration of Mitchell A. Karlan, dated April 30, 2013 ("Karlan Decl.").

3.       Plaintiffs deny this assertion. The evidence shows that the County did not consider the concerns of the County's minority voters, and that Local Law C maintained the status quo of four MMDs despite community concerns. Deposition of Lucille McKnight, taken

Mar. 22, 2012 ("McKnight Dep. Tr.") at 33:12–41:14, 44:19–21 (discussing her communications with various members of the minority community, e.g., Anne Pope, Debra Brown Johnson, Aaron Mair, and Wanda Willingham regarding Local Law C's failure to create a fifth MMD), Karlan Decl., Ex. 19; *id.* at 45:10–45:11; Deposition of John Merrill, taken Apr. 25, 2012 ("Merrill Dep. Tr.") at 125:22–126:22 (discussing Anne Pope's concerns that "mistakes that were made ten years ago are not repeated this year . . . [that] there wasn't enough majority-minority representation in the districts that were first drawn" at the April 23, 2011 public hearing on Local Law C), Karlan Decl., Ex. 21; *id.* at 154:19–155:15 (confirming that "the creation of a fifth majority-minority district" was an issue that was "brought up at public hearings several times"); Deposition of Shawn M. Morse, taken Feb. 3, 2012 ("Morse Dep. Tr.") at 93:18–94:19, Karlan Decl., Ex. 48; *see* Secretary Thomas Scarff's notes regarding select 2011 Redistricting Committee public hearings ("Scarff Notes") at 12, Karlan Decl., Ex. 6; Transcript of Public Hearing on Local Law C, May 17, 2011 ("May 17, 2011 Hr'g") at 6–7, 8–10, 14–40, 80, Karlan Decl., Ex. 20.  Further, Plaintiffs' concerns regarding voter disqualification in the 2003 litigation were based on the ability of the minority community to elect candidates of its choosing.  The past few elections, in which minority voters were able to elect minority candidates in each of the MMDs, show that the implementation of the MMDs has been effective.  *See, e.g.*, Declaration of Carlos Gonzalez, dated July 14, 2011 ("C. Gonzalez Decl.") ¶ 9, Karlan Decl., Ex. 49.  The MMDs in Plaintiffs' Illustrative Plans should prove just as effective, as the percentage of each MMD that is non-Hispanic Black VAP in the Illustrative Plans is roughly equal to the percentage of each MMD that was non-Hispanic DOJ Black under Local Law 2.  *See* Rebuttal Report of William S. Cooper in Response to the Report of Ronald Keith Gaddie, dated Apr. 16, 2012 ("Cooper Rebuttal Rep.") at ¶ 16, Table 4 Karlan Decl., Ex. 29.

4.      Plaintiffs deny this assertion, as the plaintiffs in the *Arbor Hill* litigation considered the minority population to include both Blacks and Hispanics.  *See* Complaint, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, No. 03-CV-502 (N.D.N.Y. Apr. 2, 2003) ("2003 Complaint") ¶ 94 ("The minority population (Hispanic/black and black alone) vote as a bloc."), Karlan Decl., Ex. 2; Declaration of William S. Cooper, dated April 30, 2003, attached Exhibit B to 2003 Complaint (providing expert opinion on both the non-Hispanic black and Hispanic/Latino populations simultaneously), Karlan Decl., Ex. 3.  Indeed, one of the plaintiffs in the 2003 *Arbor Hill* litigation was Hispanic.  *See* 2003 Complaint ¶ 14 (identifying Maryam Mair, a plaintiff, as Hispanic).  In 1991, the County conceded that the relevant minority population included both the Black and Hispanic communities, including them both in the remedial plan's MMDs.  *See* Consent Judgment and Decree, *NAACP v. Albany Cnty.*, No. 91-CV-1288 (N.D.N.Y. Nov. 13, 1991), Dkt. No. 1-2 ("1991 Consent Decree") ¶ 24, Karlan Decl., Ex. 1.  Based on this, the Court in the 2003 *Arbor Hill* litigation affirmed that the Black and Hispanic communities should be considered together.  289 F. Supp. 2d 269, 272–73  (N.D.N.Y. 2003) ("*Arbor Hill III*") (approving the County's revised four-MMD redistricting plan, which "included in its calculations of the minority populations in the majority/minority districts not only blacks but Hispanics and those of mixed race who included either black or Hispanic as one of their races").  Moreover, Defendants inaccurately portray the plaintiffs' statements in the 2003 litigation, as the filing Defendants quote from was filed during the final remedial stage of the litigation, after the County had already been found in violation of Section 2 of the Voting Rights Act.  As such, the plaintiffs were advocating for the most effective court-ordered four MMDs possible, and were thus urging the Court to use the Black population alone when calculating the size of the minority population within each MMD in order to maximize the voting power of the

minority community.  In that same filing, Plaintiffs specifically requested that the court consider

the percentages of the County's voting age minority population contained therein, which

included <u>both</u> black and Hispanic population figures.  *See* Plaintiffs' Objections to Magistrate

Judge Homer's Report and Recommendation Regarding the Remedial Redistricting Plan, *Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, No. 03-CV-502 (N.D.N.Y. Oct.

1, 2003) ("Plaintiffs' 2003 Objections"), at 11 n.2, Karlan Decl., Ex. 50.

       5.        Plaintiffs admit this assertion.  Plaintiffs' expert Dr. Baodong Liu testified that

there was insufficient data on Hispanic voting in the County to infer reliable information about

Hispanic voting patterns.  Deposition of Dr. Baodong Liu, taken Apr. 20, 2012 ("Liu Apr. 20,

2012 Dep. Tr.") at 118:11–16, Karlan Decl., Ex. 26.  Liu testified that the "fact that Hispanics

are limited in terms of its absolute number and the distribution of Hispanics across precincts,"

meant statisticians would be unable to develop a reliable estimate of Hispanic voting patterns

based on the data available.  *Id*. at 117:19–118:10.  However, declarations submitted on behalf of

the Plaintiffs have established that Blacks and Hispanics are cohesive in the County.  They live

in the same communities and face many of the same socio-economic problems.  Cooper PI Decl.

¶¶ 14–18; Supplemental Declaration of William S. Cooper, dated Dec. 20, 2011 ("Cooper Supp.

Decl.") ¶¶ 6–12, 16–18, Karlan Decl., Ex. 23.

       6.        Plaintiffs deny this assertion.  The Commission adopted the redistricting plan on

May 6, 2011, and forwarded it to the Legislature as Local Law C on May 9, 2011.  *See* John

Merrill, Notes on the Redistricting Process ("Merrill's Notes") ¶¶ 24, 26, Karlan Decl., Ex. 51;

Local Law No. "C" for 2011 ("Introduced: 5/9/11"), Karlan Decl., Ex. 52.  Subsequent to this

approval by the Commission, additional changes were made to the boundaries of Local Law C,

based on the concerns of members of the majority community at Legislative hearings.  *See*

Merrill's Notes ¶¶ 27–28; Merrill Dep. Tr. at 108:8–109:13; Deposition of Wanda Willingham,

taken Jan. 30, 2012 ("Willingham Dep. Tr.") at 152:8–17, Karlan Decl., Ex. 34.  The

Commission as a whole, however, did not hold its own public hearing or meeting to re-adopt the

redistricting plan.  *See generally* Transcript of Public Hearing on Local Law C, May 19, 2011

("May 19, 2011 Hr'g"), Karlan Decl., Ex. 53.

7.      Plaintiffs deny this assertion, as Local Law C maintained the same number of

MMDs as the previous plan, and thus did not create any MMDs of its own.  *See* Deposition of

Vicente Alfonso, taken Mar. 23, 2012 ("Alfonso Dep. Tr.") at 88:15–23, 91:2–9, Karlan Decl.,

Ex. 35.

8.      Plaintiffs admit this assertion.

9.      Plaintiffs deny this assertion, as there is no immediate indication in Local Law C

why the number of districts in the City of Albany decreased.  Further, the minority population of

the City greatly increased, justifying the creation of a fifth MMD.  Cooper PI Decl. ¶¶ 8–11.

10.      Plaintiffs deny this assertion, as the full DOJ paragraph notes that "responses

which report Hispanics and one or more minority races (for example, Hispanics who list their

race as Black/African-American), those responses will be allocated alternatively to the Hispanic

category *and the minority race category*."  *Guidance Concerning Redistricting and

Retrogression Under Section 5*, 66 Fed. Reg. 5412, 5414 (Jan. 18, 2001) (emphasis added).  The

document on which Defendants rely is also a 2001 document from DOJ, following the 2000

Census.  The guidance following the 2010 Census should be used here.  The relevant language of

the 2010 document is substantively the same as the complete version of the language from the

2000 document quoted here, noting that "responses which report Latino and one or more

minority races (for example, Latinos who list their race as Black/African-American), those

responses will be allocated alternatively to the Latino category and the minority race category." *Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act*, 76 Fed. Reg. 7470, 7472–73 (Feb. 9, 2011).  Plaintiffs further argue that it is therefore appropriate to look at all individuals who self-identify as black.

      11.     Plaintiffs admit this assertion.

      12.     Plaintiffs admit this assertion.

      13.     Plaintiffs deny this assertion, as it misconstrues the nature and relevance of "proportional."  Plaintiffs further object in that there is no source provided for the population figures provided, or the percentages provided.  The referenced exhibits are solely block equivalency files that do not provide any population information.

      14.     Plaintiffs admit this assertion.

      15.     Plaintiffs deny this assertion.  In the last lawsuit, which was filed prior to the 2010 Census, Plaintiffs did not take a position on whether a fifth MMD  should be created in the wake of the 2010 Census.  Further, Plaintiffs have consistently argued that the first *Gingles* precondition does not require a supermajority of an MMDs' population to be comprised of the minority population—only that the MMDs must be effective.  *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Injunction at 11, Dkt. No. 30 ("Plaintiffs' PI Motion") (arguing that the County's minority population is sufficiently large to support five MMDs); Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment at 8, Dkt. No. 210 ("Plaintiffs' MSJ"); *see also Pope v. Cnty. of Albany,* 687 F.3d at 567.  Further, the *Arbor Hill* plaintiffs also believed that the minority population should include both the Hispanic and Black populations.  *See supra* ¶ 4.  The MMDs that courts have directed

Albany County to adopt have proven to be effective, as exemplified by their electing minority legislators after the previous lawsuits.  *See, e.g.*, C. Gonzalez Decl. ¶ 9.

16.     Plaintiffs admit this assertion.

17.     Plaintiffs deny this assertion, as it misinterprets the Second Circuit's holding. Specifically, the Court "clarif[ied] the law applicable to the first [*Gingles*] factor at the same time that [the Court] affirm[ed] the district court's denial of preliminary relief."  *Pope*, 687 F.3d at 566; *see also id.* at 574 (finding "legal error in the district court's demand for plaintiffs to show more than a simple majority of the relevant minority group at the first step of *Gingles* analysis"). Moreover, the Second Circuit found for the Plaintiffs on the first *Gingles* factor: "Both the AHEJ Plan and Illustrative Plan 3 show DOJ Non-Hispanic Blacks to constitute a majority in five proposed districts for representatives to the County legislature. . . .  Thus, plaintiffs should not have been denied injunctive relief on this ground."  *Pope*, 687 F.3d at 566; *see also id.* at 577 (internal citation omitted).

18.     Plaintiffs deny this assertion, as the Plaintiffs have made clear that the Black population alone is sufficiently large, geographically compact, and politically cohesive.  *See* Plaintiffs' MSJ; Plaintiffs' PI Motion at 12, 13 (arguing that "[l]est there be any doubt, the increased population of blacks *alone* supports 5 MMDs" and noting that "'no one has raised a question . . . concerning the political cohesiveness of the black community in Albany County'"). Plaintiffs allege, however, that the County's Hispanic residents, as members of the minority community who are cohesive with the Black population, should also be counted as minority for purposes of redistricting.  Defendants misunderstand Plaintiffs' complaint, which argues for a fifth MMD to ensure representation of the County's minority citizens.

19.     Plaintiffs admit this assertion, but note that Plaintiffs also rely on Illustrative Plans created by Plaintiffs' expert William Cooper.  *See* Cooper PI Decl. Exs. 9–16; Declaration of William S. Cooper, dated Apr. 29, 2013 ("Cooper SJ Decl.") ¶ 1–2, 6, Ex. 2, Karlan Decl., Ex. 24.  All of these proposed redistricting plans are merely illustrative, and the Plaintiffs do not have a burden to present remedial plans.

20.     Plaintiffs admit this assertion, assuming that Defendants intended "DOJ Black" to mean "non-Hispanic DOJ Black."  To the extent Defendants did not intend such, Plaintiffs deny this assertion.

21.     Plaintiffs admit this assertion, though argue that it improperly labels William Cooper a consultant.  William Cooper is a properly qualified expert under the Federal Rules. *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 281 F. Supp. 2d 436, 447 (N.D.N.Y. 2003) ("*Arbor Hill II*") (acknowledging Cooper as a qualified expert).

22.     Plaintiffs admit this assertion, assuming that Defendants intended "DOJ Black" to mean "non-Hispanic DOJ Black."  To the extent Defendants did not intend such, Plaintiffs deny this assertion.  Plaintiffs note, however, that they also rely on additional Illustrative Plans created by Plaintiffs' expert William Cooper.  Cooper SJ Decl. ¶ 1–2, 6, Ex. 2.

23.     Plaintiffs admit this assertion, and note that Defendants' expert also relied solely on voting age population ("VAP"), and not citizen voting age population ("CVAP").  *See* Deposition of Ronald Keith Gaddie, taken Apr. 20, 2012 ("Gaddie Apr. 20, 2012 Dep. Tr.") at 47:13–25, Karlan Decl., Ex. 28; *see also* Defendants' Statement of Material Facts, Dkt. No. 214-1, ¶ 12.  Plaintiffs also note, however, that CVAP is not appropriate here because the data for CVAP is not available or reliable.  *See* Gaddie Apr. 20, 2012 Dep. Tr. at 47:21–48:3 ("[W]e don't have good citizenship data at the time that we draw districts. The old one and six long form

that we used to use in the census isn't available, so we don't have CVAP data. This shouldn't affect African-American—the setting of an African-American percentage for performance."); Cooper SJ Decl. ¶ 8–13.

24.     Plaintiffs admit this assertion, though argue that it improperly labels William Cooper a consultant.  William Cooper is a properly qualified expert under the Federal Rules. *See, e.g.*, *Arbor Hill II*, 281 F. Supp. 2d at 447 (acknowledging Cooper as a qualified expert). Plaintiffs deny, however, that CVAP is the appropriate population measure to use, as CVAP data is neither available nor reliable. *See* Gaddie Apr. 20, 2012 Dep. Tr. at 47:21–48:3 ("[W]e don't have good citizenship data at the time that we draw districts.  The old one and six long form that we used to use in the census isn't available, so we don't have CVAP data.  This shouldn't affect African-American—the setting of an African-American percentage for performance.").

25.     Plaintiffs admit this assertion.

26.     Plaintiffs admit this assertion.

27.     Plaintiffs admit this assertion.

28.     Plaintiffs admit this assertion.

29.     Plaintiffs deny this assertion, as Samuel Coleman currently resides in the Tenth District under Local Law C and the AHEJ Plan.  He resided in the Third District under Local Law C and the AHEJ Plan at the time of the filing of the Complaint and the First Amended Complaint.

30.     Plaintiffs admit this assertion.

31.     Plaintiffs deny this assertion, as Janis Gonzalez currently resides outside of Albany County.  She resided in the Sixth District under Local Law C and in the First District

under the AHEJ Plan at the time of the filing of the Complaint and the First Amended

Complaint.

32.     Plaintiffs deny this assertion, as Defendants do not define what "DOJ black"

means.  Further, Janis Gonzalez self-identifies as a Black individual, and indicated as such on her

Census form.  Deposition of Janis Gonzalez, taken May 17, 2012 ("Gonzalez Dep. Tr.") at

12:10, Karlan Decl., Ex. 13; *see also* Declaration of Janis Gonzalez, dated July 14, 2011 ("J.

Gonzalez Decl.") ¶ 3, Karlan Decl., Ex. 54.   In their brief, Defendants exclude Hispanics from

the definition of the term "DOJ Black," conflating it with *non-Hispanic* DOJ Black.  *See* Def. Br.

at 7.  The DOJ paragraph notes that "responses which report Hispanics and one or more minority

races (for example, Hispanics who list their race as Black/African-American), those responses

will be allocated alternatively to the Hispanic category *and the minority race category*."

*Guidance Concerning Redistricting and Retrogression Under Section 5*, 66 Fed. Reg. 5412, 5414

(Jan. 18, 2001) (emphasis added).

33.     Plaintiffs admit this assertion.  For purposes of analyzing racially polarized voting

("RPV") in Albany County, as data for Hispanic voting in Albany in unavailable, (*see* ¶ 5,

*supra*), Dr. Liu analyzed single race black voting trends.  This means Plaintiffs' numbers are, if

anything, under-inclusive in terms of minority support for candidates.  However, for purposes of

*Gingles* preconditions 1 and 2, which deal with the minority population in the County, as

opposed to voting patterns, the more inclusive definition which counts all individuals who

identify as Black or Hispanic should be utilized.

34.     Plaintiffs deny this assertion, as Defendants do not define what "DOJ black"

means.  Cooper utilized non-Hispanic DOJ Black when noting that the AHEJ Plan's five MMDs

are sufficiently large.  *See* Cooper Rebuttal Rep. ¶¶ 6, 10.  For consistency, Plaintiffs propose

that all parties use "non-Hispanic DOJ Black" or "NH DOJ Black" to indicate people who are single race non-Hispanic Black or African-American or a person of two races who is non-Hispanic Black and White, and avoid the uncertainty regarding whether the Defendants' term "DOJ Black" includes Hispanic individuals. Cooper also utilized the category Any Part Black and the category NH DOJ Black + *Hispanics* for purposes of calculating the true minority population of the proposed MMDs. Cooper Rebuttal Rep. at 5–7; Cooper PI Decl. at 10.

35. Plaintiffs deny this assertion, as Dr. Liu merely expressed concerns with the sufficiency and reliability of the data on Hispanic voting trends in Albany County. *See, e.g.*, Liu Apr. 20, 2012 Dep. Tr. at 116:16–117:3, 117:19–118:16, Karlan Decl., Ex. 26.

36. Plaintiffs deny this assertion as Dr. Liu did attempt to determine the preferred candidate of Hispanic voters, but determined that the data on Hispanic voting patterns in the County was not sufficiently reliable. Liu Apr. 20, 2012 Dep. Tr. at 187:8–19.

37. Plaintiffs admit this assertion, as Dr. Liu testified that data on Hispanic voting patterns in 2003 "was very limited on the Hispanic racial data in precincts" and he determined that it was "impossible to produce reliable estimates concerning Hispanic[s]." Liu Apr. 20, 2012 Dep. Tr. at 116:16–25.

38. Plaintiffs admit deny this assertion. The cited testimony does not refer to or discuss turnout. Moreover, Dr. Liu does not testify that he only used ecological inference analysis.

39. Plaintiffs deny this assertion. Dr. Liu sought to analyze the possible existence of RPV in Albany County, and sought to conclude whether the white voters of Albany vote sufficiently as a bloc to usually defeat the candidate of choice of the minority population. Defendants misstate Dr. Liu's testimony, as nowhere in the cited pages (or in any other page of

the deposition transcript) does he testify he sought only to determine the average support of

black and white voters.  Significantly more analysis than just determining averages goes into

analyzing for the presence of RPV.  Defendants misunderstand Dr. Liu's analysis, focusing on

only one row of one table of Dr. Liu's report rather than the bulk of Dr. Liu's findings.  Dr. Liu

noted that average black and white support is only "one of many factors" he considered in his

analysis.  Deposition of Dr. Baodong Liu, taken Feb. 26, 2013 ("Liu Feb. 26, 2013 Dep. Tr.") at

287:13–17, Karlan Decl., Ex. 55.

      40.    Plaintiffs deny this assertion, as Dr. Liu testified that his analysis included one

race with a mixed race individual of Black and Hispanic heritage.  Liu Feb. 26, 2013 Dep. Tr. at

235:22–24.  Moreover, Defendants misunderstand the data deficiency.  The data deficiency

regarding data on Hispanic voters in the County has to do with a lack of data on the *voting*

*patterns* of Hispanic voters in specific elections—not a lack of data on Hispanic candidates.

      41.    Plaintiffs admit this assertion, but note that some of the candidates in the analyzed

elections may self-identify as bi-racial or Hispanic as well.

      42.    Plaintiffs deny this assertion because Dr. Liu found that the minority candidate

prevailed in 15, not 16, out of 34 elections.  *See* Supplemental Expert Report of Dr. Baodong

(Paul) Liu, dated Dec. 20, 2011 ("Liu Supp. Rep."), Ex. A, Table 3, Karlan Decl., Ex. 25.  To the

extent Defendants intended their reference to 16 elections in sentence two to mean 15 elections,

Plaintiffs admit this assertion, but note that two of the races in which a black candidate prevailed

were MMDs.  Twelve of the remaining 13 elections where a minority candidate has prevailed

outside an MMD all involved the same five candidates: Soares, Heath-Roland, Barnette,

McLaughlin and McCall.  Liu Supp. Rep. at 13–19.  Three involved candidates who were

previously appointed to the same position.  Two involved state-wide races.  And three involved incumbents.  *See id.* 7–9.

43.      Plaintiffs admit this assertion, but note the concession of Defendants' expert that Black incumbency is a special circumstance to be considered.  "[I]f we rely on analysis of incumbent -- minority incumbent politicians to set a threshold for performance for the minority vote, what happens is you'll often -- if you have a minority incumbent running, you'll often have stronger than expect -- in a polarized environment, you might have stronger than expected white support for the black incumbent."  Gaddie Apr. 20, 2012 Dep. Tr. at 155:5–12.  Neither Plaintiffs' nor Defendants experts opined that white incumbency was a factor to be considered when analyzing racially polarized voting.  Plaintiffs further note that one of the listed contests again involved an MMD.

44.      Plaintiffs deny this assertion.  Of the 34 elections Dr. Liu analyzed in Table 3, an elected incumbent was victorious in 17.  In the remaining 17 (not 16) contests, there was either no elected incumbent or the incumbent was defeated.

45.      Plaintiffs deny this assertion.  Excluding contests with an incumbent victory, the black candidate prevailed in 10 out of 17 such contests, a success rate of 58.82%.  Further, Plaintiffs argue that consideration of only "elected incumbents" versus appointed incumbents is incorrect.  Defendants neglect to note that Helena Heath-Roland was appointed as a City Court Judge prior to running for the position in 2005, and was thus an incumbent when she ran.  Similarly, McCall was appointed to his position as New York State Comptroller General prior to running for the position in 1994, and Riddick was appointed to his position as County Legislator for the 5th Legislative District.  Adjusting for Defendants' error in this respect by removing Heath-Roland's primary and general election victories, McCall's general election victory, and

Riddick's general election victory from this calculation, the black candidate prevailed in only 6 out of 13 non-incumbent contests, a success rate of 46.15%.  Plaintiffs, however, do not contend that elections involving an incumbent should be wholly removed from the RPV analysis.  Indeed, Defendants' expert testified that Black incumbency is a special circumstance to be considered. Gaddie Apr. 20, 2012 Dep. Tr. at 155:5–12.

46.     Plaintiffs admit this assertion, as Dr. Liu testified that he did not perform analyses on these elections.  Liu Feb. 26, 2013 Dep. Tr. at 281:4–25.  Further, Plaintiffs note that analyses of these races would have constituted an improper supplement to his expert opinion.

47.     Plaintiffs admit this assertion, but cannot speak for the authenticity of the referenced exhibit.  The 2012 races are meaningless in this analysis, as both parties' experts were prohibited under Rule 26(e)(2) of the Federal Rules of Civil Procedure from providing supplements to their expert reports to address subsequent elections, such as the 2012 races. Among other things, the 2012 races may have been influenced by the presence of this ongoing litigation.

48.     Plaintiffs admit this assertion, but Plaintiffs' expert, like Defendants' expert, was prohibited under Rule 26(e)(2) of the Federal Rules of Civil Procedure from providing a supplement to his expert report to address subsequent elections, such as the 2012 races.  Among other things, the 2012 races may have been influenced by the presence of this ongoing litigation. Further, the District Attorney race included a long-term incumbent, Soares, and this race is thus subject to special circumstances.

49.     Plaintiffs admit this assertion, but note that the results of the 2008 and 2012 presidential election are irrelevant to this analysis.  Dr. Liu has noted that "one should use the local elections to determine the racial voting patterns for redistricting purposes."  Liu Supp. Rep.

at 5–6 n.7.  Defendants' expert agreed that a presidential race is the "least indicative" of all elections one can analyze to determine local voting patterns.  Gaddie Apr. 20, 2012 Dep. Tr. at 199:20–24.

## COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiffs are all registered voters and residents of the area of minority concentration in Albany County, i.e., Districts 1–4 under Local Law C.

2.      Proposed Plaintiff[1] Frazier lives in District 9, adjacent to District 1, an MMD.  *See* Cooper SJ Decl. ¶ 6, Ex. 2 (Illustrative Plan 5).

3.      Proposed Plaintiff Alfonso lives in District 7, adjacent to District 4, an MMD. *See id.*, Ex. 2 (Illustrative Plan 5).

4.      Proposed Plaintiff Davis lives in District 6, adjacent to District 1.  *See id.* ¶ 6, Ex. 2 (Illustrative Plan 5).

5.      Proposed Plaintiff Gomez is a registered voter in the County.  *See* Proposed Second Am. Compl., Dkt. No. 226-3 ¶ 15.

6.      Proposed Plaintiff Lebron is a registered voter in the County.  *See id.* ¶ 16.

7.      Albany County has a long history of violations under Section 2 of the Voting Rights Act.  Minority voters successfully sued the County in 1990, alleging that the redistricting plan for the districts of the County Legislature improperly diluted the minority vote by packing minorities into a single majority-minority district.  *See* 1991 Consent Decree.  Again in 2003, Black and Hispanic voters alleged that the County's Black and Hispanic population required the creation of an additional MMD.  *Arbor Hill II*, 281 F. Supp. 2d at 448; *Arbor Hill III*, 289 F. Supp. 2d at 272.  The Court found that the Black and Hispanic communities were politically

---

[1]   On April 29, 2013, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which proposes to add Elaine Frazier, Vicente Alfonso, Stephanie Davis, Joseph Gomez, and Nathan Lebron as plaintiffs in this matter (the "Proposed Plaintiffs.").

cohesive, and combined the Black and Hispanic populations to create four MMDs.  *Arbor Hill II*, 281 F. Supp. 2d at 448; *Arbor Hill III*, 289 F. Supp. 2d at 272.

8.     During the 2011 County redistricting process, the Commission failed to hold any public hearings in an MMD, advertised the public hearings minimally, and held them at inconvenient times and locations.  Declaration of Anne Pope, dated July 14, 2011 ("Pope Decl.") ¶ 10–11, Karlan Decl., Ex. 7; Declaration of Lucille McKnight, dated July 14, 2011 ("McKnight Decl.") ¶ 8, Karlan Decl., Ex. 8; Declaration of Wanda Willingham, dated July 15, 2011 ("Willingham Decl.") ¶ 9–11, Karlan Decl. Ex. 9; Transcript of County Executive Hearing, May 31, 2011 ("Exec. Hrg. Tr.") at 64:8–16 (Pope saying no hearings were held in a minority community), Karlan Decl., Ex. 10; *id.* 5:15–6:21, 7:11–8:17; Deposition of Thomas Scarff, taken Apr. 12, 2012 ("Scarff Apr. 12 Dep. Tr.") at 74:22–79:10 (indicating the Commission had limited means to advertise, and did little to reach out to the public), Karlan Decl., Ex. 11; Deposition of Geraldine Bell, taken Feb. 1, 2012 ("Bell Dep. Tr.") at 41:3–6, Karlan Decl., Ex. 12; Gonzalez Dep. Tr. at 91:9–93:20 (testifying that information about the public hearings was hard to track down, even for those "internet-savvy," and that the times and locations were inconvenient, especially for the poor); Deposition of Anne Pope, taken May 3, 2012 ("Pope Dep. Tr.") at 49:1–5, Karlan Decl., Ex. 14; Declaration of Aaron Mair, dated July 15, 2011 ("Mair PI Decl.") ¶ 15–17, Karlan Decl., Ex. 15; Albany Citizen One, "Chasing Down Albany County Redistricting," May 15, 2011, Karlan Decl., Ex. 16 (noting the need for "chasing down" the Commission hearing locations).  There was one hearing at the Albany County Office Building at 112 State Street, an office building away from residential areas and unfamiliar to the minority community.  Pope Dep. Tr. at 46:16–47:5.  A second hearing may or may not have been held at

400 Central Avenue, which is in an MMD, but it was not publicized and members of the minority community were not informed of the hearing.  *See id.* at 47:6–48:19.

9.      At these hearings, the minority community educated the Commission about the large increase in the minority population, and why a fifth MMD was necessary.  *See, e.g.*, Scarff Notes at 12; Pope Decl. ¶ 4.

10.     Commissioner Nardacci believed these concerns needed addressing.  Email from Tom Nardacci to John Merrill, May 5, 2011 (Bates Emails000150–53), Karlan Decl., Ex. 17.

11.     At a May 6, 2011 public hearing, the Commission released a redistricting map, which maintained the number of MMDs at four.

12.     At the May 6, 2011 public hearing, Thomas Marcelle, then-Counsel to the Minority in the Legislature, publicly stated that the MMDs in the proposed map were based on combining the Black and Hispanic populations.  Transcript of Public Hearing Regarding Albany County Legislative Redistricting, Plaintiffs' Exhibit G, Dkt. 86-4, Karlan Decl., Ex. 18.

13.     The public expressed disagreement with the map, and stated that Local Law C was diluting the minority vote in violation of the Voting Rights Act.  May 17, 2011 Hr'g at 6:4– 19, 11:18–20, 18:15–19; Pope Dep. Tr. at 36:1–18; *see also* Pope Decl. ¶ 6.

14.     At the Legislature's May 9 public comment period, Aaron Mair presented the Arbor Hill Environmental Justice Corporation's alternative redistricting plan (the "AHEJ Plan"), which created five MMDs.  Mair PI Decl. ¶ 26.

15.     The Commission's mapmaking consultant, John Merrill was told he should not follow Judge Homer's findings in the prior redistricting litigation, should not combine the Black and Hispanic populations when creating MMDs, and should explicitly not create a fifth MMD. Merrill Dep. Tr. at 185:20–186:10, 177:11–178:2; McKnight Dep. Tr. at 45:23–46:22 (during a

legislative caucus session, Merrill stated that he "fixed it to make sure it stayed" at four MMDs and that "he didn't count some of the mixed race people . . . he did as he was told"); McKnight Decl. ¶ 12; *see also* Deposition of Carolyn McLaughlin, taken Mar. 23, 2012 ("McLaughlin Dep. Tr.") at 114:2–13, Karlan Decl., Ex. 22.

16.     When asked contemporaneously about his definition of "minority" for purposes of creating draft redistricting plans, John Merrill told Lucille McKnight in a May 12, 2011, email that Hispanics were included along with the non-Hispanic Black and non-Hispanic "two or more races" population.  Email from John Merrill to Lucille McKnight, May 12, 2011 (Bates Emails000154–57), Karlan Decl., Ex. 56.

17.     Merrill testified that this statement to McKnight was a "boo-boo," and he "obviously made a mistake."  Merrill Dep. Tr. at 179:10–11, 181:3.

18.     The Legislature voted to approve Local Law C by a 22 to 14 vote on May 23, 2011.  Local Law No. "C" for 2011.

19.     The County Executive signed it into law on June 6, 2011.  McKnight Decl. ¶ 2.

20.     On August 3 and 4, 2011, a hearing was held on Plaintiffs' motion for a preliminary injunction, which this Court denied.  Mem. Decision & Order, Dkt. No. 76.

21.     Plaintiffs appealed this decision to the Second Circuit, which found legal error in the "district court's demand for plaintiffs to show more than a simple majority" and held that Plaintiffs "satisfy the first *Gingles* factor for DOJ Non-Hispanic Blacks."  *Pope*, 687 F.3d at 574, 577 n.11.

22.     Plaintiffs' expert William Cooper's supplemental expert report analyzed the demographics and socio-economic figures of the County's minority population, finding significant growth of the minority community based on the 2010 U.S. Census figures, and that

Blacks and Hispanics "lag behind whites across most socio-economic measures."  Cooper Supp.

Decl. ¶ 9.

23.    Plaintiffs' expert Dr. Baodong Liu found that racially polarized voting is present

in Albany County.  Liu Supp. Rep. at 4.

24.    Dr. Liu analyzed 46 races (12 multi-member-district elections and 34 single-

member-district elections) to reach his conclusion.  Liu Supp. Rep. Tables 2 & 3.

25.    Thirty of the 46 races featured racially polarized voting, and Black candidates

were defeated in 27 of the races.  Liu Supp. Rep. at 10, Tables 2 & 3.

26.    Among the 15 single-member elections where racially-polarized voting was not

found, 14 were found to be non-competitive, and 10 involved the special circumstances of

incumbency or appointment.  Liu Supp. Rep. at 7–8.

27.    It is not possible for experts in this case to analyze Hispanic voting patterns in

Albany because of the lack of sufficient statistical data on Hispanic voters necessary to perform

reliable analyses.  *See* Liu Apr. 20, 2012 Tr. at 117:19–118:16.

28.    Defendants' expert, Ronald Keith Gaddie, only analyzed 14 elections.  Deposition

of Ronald Keith Gaddie, taken Apr. 20, 2013 ("Gaddie Apr. 20, 2013 Dep. Tr.") at 132:16–25,

Karlan Decl., Ex. 28.

29.    Gaddie used "single race black" to analyze the first *Gingles* precondition.

Deposition of Ronald Keith Gaddie, taken Mar. 4, 2013 ("Gaddie Mar. 4, 2013 Dep. Tr.") at

300:4–14, 321:12–17, Karlan Decl. Ex. 27.

30.    Gaddie admitted that had he used the more standard DOJ Black definition, he

might have found the minority population to be sufficient to satisfy *Gingles* 1.  *Id.* at 310:10–

311:13, 312:3–8, 313:20–314:7.

31.     Gaddie used a different definition of the minority population, non-Hispanic DOJ Black, when analyzing the second and third *Gingles* preconditions.  *Id.* at 317:17–318:7, 323:14–324:3.

32.     Gaddie did not examine any special circumstances affecting these elections, despite admitting that they are relevant.  Gaddie Apr. 20, 2013 Dep. Tr. at 153:21–25, 157:18–158:10, 232:2–16.

33.     Gaddie testified that he was not aware that Albany County had been sued previously for Voting Rights Act violations.  *Id.* at 165:11–14.

34.     Plaintiffs have demonstrated five MMDs can be created with a Black voting-age population ("VAP") of more than 50%.  Cooper Rebuttal Rep. at 6, Table 1.

35.     The redistricting plans offered by Plaintiffs are merely illustrative.  *See* Cooper SJ Decl. ¶ 4.  Any remedial plan adopted as a result of this litigation could not be adopted without revisiting the boundaries as a result of new election districts provided by the Albany County Board of Elections.  *Id.* ¶ 5.

36.     Defendants have not offered CVAP figures in this case, but have continuously proffered VAP data.  *See Pope*, 687 F. 3d at 574 n.6 ("Because the parties argue by reference to VAP, we do not here consider the alternative possibility of employing citizen voting-age population.") (emphasis added).

37.     John Merrill used VAP when creating Local Law C.  Affidavit of John E. Merrill, dated July 29, 2011 ("Merrill Affidavit") ¶¶ 3–4, Karlan Decl., Ex. 30; Local Law C Maps and Statistics, Ex. E, attached to Merrill Affidavit ("Merrill Aff. Ex. E"), Karlan Decl., Ex. 31.

38.     Gaddie did not provide any analysis regarding CVAP figures, and utilized voting-age population VAP figures in his reports.

39.     In the 2003 litigation, the County argued that VAP figures should be used.  *See*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, No. 03-cv-0502, 2003

WL 21524820, at *6 (N.D.N.Y. July 7, 2003) (noting "the parties disagree over whether the

appropriate population is the general population or the voting age population").

40.     The Greater Capital Region Minority Business Association is comprised of both

Black and Hispanic members, Deposition of Joseph Gomez, taken Mar. 23, 2012 ("Gomez Dep.

Tr.") at 27–28, 33, 54–56  Karlan Decl., Ex. 38.

41.     Hispanics and Blacks work together with the organization African-American

Heritage Census Complete Count Committee.  Pope Dep. Tr. at 27.

42.     The County's Blacks and Hispanics are both involved in the NAACP.  Pope Dep.

Tr. at 30.

43.      Nathan LeBron campaigned at an informal gathering of the Black and Hispanic

communities.  Alfonso Dep. Tr. at 77–81; Declaration of Nathan Lebron, dated Apr. 29, 2013

("Lebron SJ Decl.") ¶ 5, Karlan Decl., Ex. 37.

44.     Wanda Willingham distributed campaign literature in Spanish in order to facilitate

the cohesion between the Black and Hispanic voters in her district.  Willingham Dep. Tr. at 66–

67, 91–95; Willingham Spanish Campaign Literature, Karlan Decl., Ex. 43.

45.     Willingham also requested that election materials be provided in Spanish by the

County.  McLaughlin Dep. Tr. at 110.

46.     Black and Hispanic communities worked together to advocate for a fifth MMD

during the 2011 redistricting.  Alfonso Dep. Tr. at 68–70, 65; *see also* Declaration of Elaine

Frazier, dated Apr. 25, 2013 ("Frazier SJ Decl.") ¶ 6 (describing a similar experience with

respect to the City's redistricting), Karlan Decl., Ex. 40.

47.     The City of Albany—where the MMDs in Local Law C and the illustrative redistricting plans are located—recently found the Black and Hispanic populations in the City to be politically cohesive for purposes of redistricting the City's Common Council wards. Declaration of Vicente Alfonso, dated Apr. 29, 2013 ("Alfonso SJ Decl.") ¶ 5, Karlan Decl., Ex. 44.

48.     As a member of Common Council, Corey Ellis organized numerous community meetings for the Black and Hispanic minority community. Declaration of Corey Ellis, dated Apr. 30, 2013 ("Ellis SJ Decl.") ¶¶ 21–22, Karlan Decl., Ex. 42.

49.     The Hispanic community supported Black candidate Michael Brown's campaign for City office.  Alfonso Dep. Tr. at 101; Lebron SJ Decl. ¶ 8.

50.      Janis Gonzalez helped with get-out-the vote efforts, canvassing, visiting polls, and working with local organizations for minority candidates including Corey Ellis and David Soares.  Gonzalez Dep. Tr. at 32–35, 83, 109–110.

51.     Corey Ellis supported and worked for David Soares alongside Black and Hispanic activists, and Blacks and Hispanics supported Ellis's own campaigns.  Ellis SJ Decl. ¶¶ 11–18.

52.     Joseph Gomez also supported Ellis and McLaughlin.  Declaration of Joseph Gomez, dated Apr. 29, 2013 ("Gomez SJ Decl.") ¶ 5, Karlan Decl., Ex. 36.

53.     Mónica M. Arias Miranda assisted Nathan Lebron with his 2009 campaign for mayor of Albany and Barack Obama during his 2008 presidential campaign.  Declaration of Mónica M. Arias Miranda, dated Apr. 29, 2013 ("Miranda SJ Decl.") ¶ 13–14, Karlan Decl., Ex. 45.

54.     Mónica Arias Miranda's campaign included voter registration in the County's minority community, particularly among Blacks and Hispanics. Declaration of Ladan Alomar, dated Apr. 30, 2013 ("Alomar SJ Decl.") ¶ 15, Karlan Decl., Ex. 41.

55.     One Hundred Black Men is comprised of both Blacks and Hispanics.  Gomez SJ Decl. ¶ 6.  The group helps the minority population get involved in politics by organizing voter registration drives, and has supported specific minority candidates.  *Id.* ¶¶ 6–8.

56.     The local chapter of the NAACP has organized voter registration drives, and has held public forums for political candidates.  *Id.* ¶ 9; Miranda SJ Decl. ¶ 6, 9 (describing her partnership with the NAACP's voter registration drive on Albany's African American Family Day); Lebron SJ Decl. ¶ 6.

57.     The organization People of Color Who Vote supports candidates in local races, discusses issues of concern, and undertakes get-out-the-vote efforts.  Alfonso Dep. Tr. at 45–48, 50.

58.     When Corey Ellis ran for Mayor of the City of Albany in 2009, he campaigned to bring Black and Hispanic communities together.  Ellis SJ Decl. ¶¶ 11–16.

59.     When Corey Ellis ran for City Common Council in 2005, he also had support from both Blacks and Hispanics who volunteered on his campaign.  *Id.* ¶ 18.

60.     Ellis had some of his City Common Council campaign literature translated into Spanish.  *Id.* ¶ 18.

61.     Centro Civico, Inc., and its predecessors have served minority communities in the Capital Region since 1975.  Members of the Black and Hispanic communities have come together through Centro Civico for various community events, including the African American Family Day Festival at the Empire State Plaza.  Alomar SJ Decl. ¶¶ 3, 5.

62.     The Capital District YMCA's Black & Latino Achievers Program that seeks to help young people establish and pursue higher education and career goals. The Capital District YMCA's Black & Latino Achievers Award Dinner recognizes Black and Latino achievement in the Albany community.  *Id.* ¶ 6.

63.     Hispanic and Black women of the County's minority community participate in the Capital District Chapter of 100 Hispanic Women, a national organization founded to provide opportunities for Hispanic and other individuals who support Hispanics to address community issues, advocate on public policy issues, and promote diversity.  The chapter has participated in various events in the Albany area since its founding in 2006, including working with the Capital District YMCA Black & Latino Achievers Program and Centro Civico on the Latino Youth Conference.  *Id.* ¶ 9.

64.     Black and Hispanic women in the County participated in fundraisers in support of former New York Gov. Eliot Spitzer's campaign.  *Id.* ¶ 17.

65.     Every February, members of the New York State Black and Hispanic Caucus meet in Albany from around New York State.  Members of the County's Black and Hispanic communities participate together in this advocacy event in support of political and public policy issues of common concern to the Black and Hispanic communities.  *Id.* ¶ 18.

66.     Every March, members of the Black and Hispanic communities participate in the Somos El Futuro Conference, which is attended by Black and Hispanic New York State legislators, representatives of not-for-profit organizations serving the Albany County minority community, members of the County's Black and Hispanic communities, and various others. *Id.* ¶ 19.

67.    Members of the Black and Hispanic communities generally take the same positions on various political issues, including concerning access to health care, housing, and education.  Alomar SJ Decl. ¶ 20.

68.    Members of the Black and Hispanic communities have a participated  in events and community organizing for improvement in public education.  Alomar SJ Decl. ¶ 21; Ellis SJ Decl. ¶  24.

69.    Dr. Liu found that voting in the County from 1991 to 2011 has been "racially polarized as "African American voters have expressed an overwhelming preference for African American candidates, and this preference was not shared by white voters."  Liu Supp. Rep. at 4.

70.    Only six minority individuals have prevailed in Albany County elections outside of an MMD.  *See* Liu Supp. Rep. at 13–19.  Twelve of the 13 elections where a minority candidate has prevailed outside an MMD all involved the same five candidates: Soares, Heath-Roland, Barnette, McLaughlin, and McCall.  Liu Supp. Rep. at 13–19.

> 2004 County Leg. 2nd District General -- MMD
> 2004 County Leg. 5th District General -- MMD
> 2009 Albany City Common Council President Democratic Primary (McLaughlin)
> 2009 Albany City Common Council President General (McLaughlin)
> 2008 104th State Assembly District Democratic Committee Member (Female) (Barnette)
> 2008 District Attorney General (Soares)
> 2006 104th State Assembly District Democratic Committee Member (Female) (Barnette)
> 2005 Albany City Court Judge Democratic Primary (Heath-Roland)
> 2005 Albany City Court Judge General (Heath-Roland)
> 2005 Albany City Common Council 7th Ward Republican Primary (McLain)
> 2004 District Attorney Democratic Primary (Soares)
> 2004 District Attorney General (Soares)
> 1998 NYS Comptroller General (McCall)
> 1994 NYS Comptroller General (McCall)
> 1993 Albany City Treasurer Democratic Primary (Barnette)

*See* Defendants' Statement of Material Facts, Dkt. 214-1, ¶ 42; Liu Supp. Rep. Tables 3, 4;

Supplemental Declaration of Dr. Baodong (Paul) Liu, dated May 1, 2012 ("Liu 2d Supp. Rep."),

Ex. 3, Table 3 (noting correction to 2005 Albany City Common Council 7th Ward Republican Primary), Karlan Decl., Ex. 57.

71.     David Soares campaigned for office right after the 2003 Voting Rights Act lawsuit against the County.  Liu Supp. Rep. at 7–8.  Soares was reelected three times.  *Id.* at 8.

72.     Helena Heath-Roland was appointed to office before being re-elected.  *Id*. at 7–8.

73.     Betty Barnette was appointed to her offices following the 1991 Voting Rights Act litigation and was later re-elected.  *Id*. at 9.

74.     Carl McCall ran for state-wide office as a candidate for New York State Comptroller.  Liu Supp. Rep. at 9.  He was later re-elected.  *Id*.

75.     McCall was originally appointed to his position.  *Id*.

76.     Professor Gaddie opined on only 16 of the 46 bi-racial elections that Dr. Liu analyzed.  *See* Gaddie Am. Rep.

77.     Gaddie did not opine on the other 30 bi-racial elections that Dr. Liu analyzed, summarily dismissing them, for example, as "too old" or involving Republicans or third parties. Gaddie April 20, 2012 Dep. Tr. at 160:4–165:25, 188:7–194:6.

78.     Of the 15 elections Defendants cite in which a minority candidate prevailed, nine followed Section 2 litigation against the County.  *See* Liu Supp. Rep. at 13–19; Liu 2d Supp. Rep., Table 3 (noting correction to 2005 Albany City Common Council 7th Ward Republican Primary).

79.     Discounting these nine successful minority elections that were a direct result of past Voting Rights Act litigation, minority-preferred candidates were only successful in six out of 34 bi-racial elections, or 17.6%.  *See* Liu Supp. Rep. at 13–19; Liu 2d Supp. Rep., Table 3 (noting correction to 2005 Albany City Common Council 7th Ward Republican Primary).

80.     Two of the minority victories cited by Defendants took place in MMDs: 2004 County Legislature 5th District and 2004 County Legislature 2nd District.  *See* Liu Supp. Rep. Table 3.

81.     No minority candidate has ever been elected to the County Legislature in Albany County outside of an MMD who has not first been appointed.  *See* Liu Supp. Rep. at 13–19.

82.     Nine of the elections analyzed involving white incumbents were racially polarized, and the white incumbent did not win a majority of Black support.  Liu Supp. Rep. Table 3.

Dated:   New York, New York
             April 30, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

  /s/ Mitchell A. Karlan
Mitchell A. Karlan

mkarlan@gibsondunn.com
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035
Bar Roll No. 511874

DEROHANNESIAN & DEROHANNESIAN
Paul DerOhannesian II
derolaw@verizon.net
677 Broadway, Suite 202
Albany, New York 12207-2985
Telephone: 518.465.6420
Fax: 518.427.0614
Bar Roll No. 104792

*Attorneys for Plaintiffs*