# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ANNE POPE, WANDA WILLINGHAM, GERALDINE BELL, SAMUEL COLEMAN and LEE PINCKNEY,

                                                                  Plaintiffs,

- against -

COUNTY OF ALBANY and the ALBANY COUNTY BOARD OF ELECTIONS,

                                                                 Defendants.

Civil Action #11-CV-736
LEK/DRH

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MURPHY, BURNS, BARBER & MURPHY, LLP
Attorneys for Defendant County of Albany
226 Great Oaks Boulevard, Albany, New York, 12203

Of Counsel:
       Peter G. Barber, Esq.
       Catherine A. Barber, Esq.

OFFICE OF THE ALBANY COUNTY ATTORNEY
Attorney for Defendant Board of Elections
Albany County Attorney, Department of Law
112 State Street, Suite 1010, Albany, New York, 12207

Of Counsel:
       Thomas Marcelle, Esq.
       Adam Giangreco, Esq.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    POINT I

        NO PLAINTIFF HAS STANDING TO MAINTAIN A
        SECTION 2 CLAIM ................................................................................................ 3

    POINT II

        PLAINTIFFS FAILED TO MEET THEIR BURDEN OF
        PROVING A "SUFFICIENTLY LARGE" AND COMPACT
        RELEVANT MINORITY ........................................................................................ 4

        A.    Failure to Prove "Sufficiently Large" Minority ................................. 5

        B.    Failure to Prove "Geographically Compact" Minority ...................... 8

    POINT III

        PLAINTIFFS FAILED TO PROVE POLITICAL
        COHESION ............................................................................................................... 9

CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

Page

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
281 F.Supp.2d 436 (N.D.N.Y. 2003) ................................................................................ 7

Barnett v. City of Chicago, 141 F.3d 699 (7th Cir. 1998)............................................ 1, 5, 6

Bush v. Vera, 517 U.S. 952 (1996) ................................................................................... 8

Diaz v. Silver, 932 F.Supp. 462 (E.D.N.Y. 1996)............................................................. 7

France v. Pataki, 71 F.Supp.2d 317 (S.D.N.Y. 1999) ...................................................... 6

Georgia v. Ashcroft, 539 U.S. 461 (2003) ........................................................................ 8

Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.,
962 F.2d 268 (2nd Cir. 1992)............................................................................................ 11

Hall v. Virginia, 276 F. Supp.2d 528 (E.D. Va. 2003)..................................................... 3

Johnson v. DeGrandy, 512 U.S. 997 (1994)..................................................................... 1

Lopez v. Merced County, 473 F.Supp.2d 1072 (E.D. Cal. 2007) ..................................... 3

Montano v. Suffolk County Legislature, 268 F.Supp.2d 243 (E.D.N.Y. 2003) ................ 7

Negron v. City of Miami Beach, 113 F.3d 1563 (11th Cir. 1997) ................................. 4, 6

New Rochele Voter Defense Fund v. City of New Rochelle, 308 F.Supp.2d 152
(S.D.N.Y. 2003).................................................................................................................. 7

Perry Bey v. City of Norfolk, 678 F.Supp.2d 348 (E.D. Va. 2009 ................................... 3

Pope v. County of Albany, 687 F.3d 565 (2nd Cir. 2012)......................................... 2, 4, 11

Reyes v. City of Farmers Branch, 586 F.3d 1019 (5th Cir. 2009) ................................. 4, 6

Rodriguez v. Pataki, 308 F.Supp.2d 346 (S.D.N.Y. 2004) ............................................... 6

Shaw v. Reno, 509 U.S. 630 (1993) .................................................................................. 8

Thornburg v. Gingles, 478 U.S. 30 (1976) .................................................................. passim

United States v. Hayes, 515 U.S. 737 (1995) ..................................................................... 3

United States v. Village of Port Chester, 704 F.Supp.2d 411 (S.D.N.Y. 2010) ................. 6

Valdespino v. Alamo Heights Indep. Sch. Dist., 168 F.3d 848 (5th Cir. 1999) ................... 6

Wise v. Lipscomb, 437 U.S. 535 (1978) ............................................................................. 7

Wright v. Dougherty County, Ga., 358 F.3d 1352 (11th Cir. 2004) .................................... 3

Statutes, etc.

AHEJ Plan .......................................................................................................................... 4

Local Law C ................................................................................................................ passim

Voting Rights Act §2 ................................................................................................... passim

**PRELIMINARY STATEMENT**

Plaintiffs seek to maximize their preferred racial coalition's voting power which is a fine political objective, but not one mandated by §2. The question is not whether it is possible to create a 5th majority-minority district ("MMD"), but whether §2 **requires** it. The County is not required to create the maximum possible number of compact MMDs. "One may suspect vote dilution from political famine, but one is not entitled to suspect (much less infer) dilution from mere failure to guarantee a political feast." Johnson v. DeGrandy, 512 U.S. 997, 1016-17 (1994).

Plaintiffs state that the coalition's population grew primarily in the City of Albany and thus claim that they are entitled to another seat in the City. While that premise of population growth is true, the conclusion that plaintiffs seek to draw is faulty. Plaintiffs neglected to deal with the mathematical reality involved in the City losing a white majority district. Prior to Local Law C, the City had 14 districts, of which four or 28% were MMDs. Under Local C, four of 13 districts or 31% are MMDs. The minority coalition voting age population ("VAP") is 32%; the citizen VAP ("CVAP"), the correct measure of population which the plaintiffs have chosen not to prove, would be lower than 32%. Incredibly, the number of MMDs created by Local Law C is nearly identically proportional to VAP. Plaintiffs do not dispute this fact.

Thus, the coalition has power approximately equal to its share of the electorate. "A group that has electoral power . . . equal to its fraction of the electorate will be hard-pressed to demonstrate, and has not demonstrated in this case, that its members

1

nevertheless have less opportunity than other members . . . to elect representatives of their choice." Barnett v. City of Chicago, 141 F.3d 699, 705 (7th Cir. 1998).

Moreover, plaintiffs' legal analysis is as faulty as its math. By "cherry-picking" what they like and discarding the rest, plaintiffs improperly seek partial summary judgment based on selective statements in Pope v. County of Albany, 687 F.3d 565 (2nd Cir. 2012), in which the Second Circuit affirmed this Court's denial of plaintiffs' motion for a preliminary injunction. Without ruling upon their legal viability, the Second Circuit noted three possible definitions (Any Part black, DOJ Black, or a coalition of DOJ Black and Hispanic) for the "relevant minority" under Gingles's preconditions. Thornberg v. Gingles, 478 U.S. 30 (1976). Noting that the same definition for the relevant minority must be used for each precondition, the Second Circuit warned that one definition might be better for proving a "sufficiently large" minority under Gingles' first precondition, but more problematic for proving that the relevant minority is "politically cohesive" under Gingles' second precondition or that its "preferred candidate" is usually defeated by majority bloc voting under Gingles' third precondition.

With this backdrop, plaintiffs improperly seek summary judgment based on DOJ Black as the relevant minority. In their Complaint (Dkt. No. 1) and Amended Complaint (Dkt. No. 12), plaintiffs rely **solely** upon a coalition of DOJ Black and Hispanic as the relevant minority. Plaintiffs chose not to amend the complaint and kept their exclusive reliance on a coalition claim. With that choice confirmed, defendants made crucial decisions to defend against a coalition claim and create a record for seeking summary judgment, including decisions on retaining experts, whether and how to depose plaintiffs'

2

experts, conduct depositions, and proceed with discovery on a coalition claim. Now, with this expensive discovery concluded, and their experts admitting an inability to prove two of three Gingles' preconditions for a coalition minority, plaintiffs have pivoted away from their coalition claim, and seek partial summary judgment on a DOJ Black claim.

## ARGUMENT

## POINT I

## NO PLAINTIFF HAS STANDING TO MAINTAIN A SECTION 2 CLAIM

As established in Defendants' Motion for Summary Judgment (Dkt. No. 214), no plaintiff has standing to pursue a voting dilution claim under Section 2 of the VRA. To bring a claim, a plaintiff must be a member of the relevant minority and reside in a district where dilution allegedly exists. See Wright v. Doutherty County, Ga., 358 F.3d 1352 (11th Cir. 2004); Hall v. Virginia, 276 F.Supp.2d 528 (E.D.Va. 2003) (plaintiffs who did not reside in a majority district lacked injury or standing to bring a §2 vote dilution case); United States v. Hays, 515 U.S. 737, 744–45 (1995)(only a plaintiff registered in a under-represented district has standing).; Perry Bey v. City of Norfolk, 678 F.Supp.2d 348 (E.D. Va. 2009); Lopez v. Merced County, 473 F.Supp.2d 1072 (E.D. Cal. 2007).

Five plaintiffs are black but reside in the 1st, 2nd, 3rd, or 4th Districts which are MMDs under the County's plan. Plaintiffs Pope and Pinckney are voters in the 1st District. See DSFM Nos. 10, 14. Plaintiffs Willingham and Bell are voters in the 2nd District. See DSFM Nos. 11, 12. Plaintiff Coleman is a voter in the 3rd District. See DSFM No. 13. As voters in MMDs under Local Law C, these plaintiffs lack standing.

3

The sixth plaintiff, Janice Gonzalez, an Hispanic, did not reside in an MMD under Local Law C, but did reside in an MMD under plaintiffs' plan. Plaintiff Gonzalez could have had standing to bring a coalition claim. However, plaintiff Gonzalez has voluntarily withdrawn as plaintiff (Dkt. No. 222). As demonstrated in Defendants' Motion for Summary Judgment (Dkt. No. 214), a coalition claim was not legally viable under §2. Absent a plaintiff with standing, plaintiffs' motion should be denied.

### POINT II

### PLAINTIFFS FAILED TO MEET THEIR BURDEN OF PROVING A "SUFFICIENTLY LARGE" AND COMPACT RELEVANT MINORITY

In their motion papers, plaintiffs do not try to demonstrate that the coalition minority -- the sole claim in their pleading -- is sufficiently large and compact. Indeed, the coalition claim was unsustainable because, as established in Defendants' Motion for Summary Judgment (Dkt. No. 214), a coalition claim is: (1) not legally viable; (2) not politically cohesive under Gingles' second precondition; and (3) the preferred candidate of the claimed coalition was not analyzed by plaintiffs' expert, and the minority candidate is not usually defeated under Gingles' third precondition. For these reasons, plaintiffs' motion should be summarily denied and defendants' motion should be granted.

In their Amended Complaint, plaintiffs offer a plan known as the AHEJ with five MMDs with the following VAP:

|            | **DOJ Black** | **Hispanic** | **Coalition** |
|------------|---------------|--------------|---------------|
| District 1 | 52.17         | 10.52        | 62.69         |
| District 2 | 52.66         | 7.80         | 60.46         |
| District 3 | 52.67         | 8.90         | 61.57         |
| District 4* | 50.44        | 11.53        | 61.97         |
| District 6 | 51.56         | 9.44         | 61.12         |

It is evident that Hispanics alone do not comprise a majority of any district. Moreover, plaintiff has failed to prove that blacks command a <u>CVAP</u> of more than 50%.

In their motion papers, plaintiffs instead focus on VAP of DOJ Black to establish the first <u>Gingles</u> factor. Defendants are not sure why this analysis is even relevant to their coalition claim, but assuming that it is, and assuming that plaintiffs possessed jurisdiction to maintain a §2 claim (which they do not) and further assuming that the a coalition claim can be made under §2 (which it cannot), plaintiffs failed to meet their burden of proving <u>Gingles</u>' first precondition that the relevant minority is "sufficiently large and geographically compact to constitute a majority in a single-member district." <u>Gingles</u>, 478 U.S. at 50. This is true because they never bothered to meet their burden of proof under §2 by showing the CVAP population in any MMD.

### A. Failure To Prove "Sufficiently Large" Minority.

Plaintiffs inexplicably seek summary judgment on a DOJ Black claim that they did not even plead. The Second Circuit clearly required plaintiffs' to pick their theory – which they did in their amended complaint by pleading a singular cause of action based on a coalition claim. In their motion for summary judgment however, they appear to abandon the more numerous coalition minority for the less populated DOJ Black minority, which creates difficulties of proof. In seeking to create a fifth MMD from the diminished DOJ Black population, plaintiffs are left with a proposed District No. 4 with a DOJ Black VAP of only **50.44%**. Indicative of their "cherry-picking," plaintiffs state

that the Second Circuit noted that 50.44% is a majority, but ignore the Court's discussion of CVAP.[1]

The text of §2 and the case law require that plaintiffs use CVAP. To begin with, §2 of the VRA, 42 U.S.C. 1973(a), states that it is intended to address "a denial or abridgement of the right of **any citizen of the United States** to vote on account of race or color . . . " (emphasis added). In achieving that goal, the Court in Gingles held that "[u]nless minority voters **possess the potential to elect representatives** in the absence of the challenged structure or practiced, they cannot claim to have been injured by that structure or practice." (emphasis added).

Against this backdrop, various Circuit Courts have held that CVAP is the proper basis for determining a §2 case. See Reyes v. City of Farmers Branch, 586 F.3d 1019, 1023 (5th Cir. 2009) (CVAP is the appropriate population under §2); Barnett v. City of Chicago, 141 F.3d 699, 704 (7th Cir. 1998)("citizen voting-age population is the basis for determining equality of voting power that best comports with the policy of the statute"); Negron v. City of Miami Beach, 113 F.3d 1563, 1569 (11th Cir.1997) (same). Similarly, in New York State, the courts have looked to CVAP as the relevant population in a §2 case. United States v. Village of Port Chester, 704 F.Supp.2d 411, 440 (S.D.N.Y. 2010). "Although the Supreme Court has left the issue open, VAP and, in particular, CVAP, have been considered the most important statistics in defining the 'relevant population' for the majority-in-a-district requirement." Rodriguez v. Pataki, 308 F.Supp.2d 346, 376

---

[1] The Second Circuit did not consider if the appropriate standard was VAP or CVAP. See Pope, 687 F.3d at 574, n.6 (noting that "[b]ecause the parties argue by reference to VAP, we do not here consider the alternative possibility of employing *citizen* voting-age population ("CVAP") in evaluating a Section 2 claim") (emphasis in the original).

6

(S.D.N.Y. 2004)(citation omitted); France v. Pataki, 71 F.Supp.2d 317, 326 (S.D.N.Y.1999) ("[T]he proper measure of population is the total citizens eligible to register and vote, the total population.").

Here, plaintiffs have chosen to offer no proof that the DOJ Black CVAP of each of their proposed MMDs constitutes a majority. In order to create the maximum number of conceivable MMDs, plaintiff shaved the DOJ Black VAP to bare majorities — the lowest district, District 4, has a DOJ Black VAP of 50.44%. Of course this spells trouble because if just ½ of 1% of the black population are not citizens (or eligible voters), black voters no longer comprise a majority in District 4. While it may be assumed that a majority of DOJ Black VAP are citizens, plaintiffs have not shown that it is 100 percent. Plaintiffs have also not addressed the impact of disenfranchised felons on CVAP, an issue raised by plaintiff's own expert in the 2003 litigation. See DSMF ¶3. Plaintiffs have simply failed to prove a sufficiently large relevant minority population necessary to create a 5th MMD.[2]

---

[2] Plaintiffs relegate to a footnote their assertion that "Any Part black" could be the relevant minority. A claim based on a coalition minority was the sole relief sought in plaintiffs' complaints. But even if they could switch minority definitions, plaintiffs cannot impose Any Part Black as the relevant minority in redistricting the Legislature. There is no dispute that the County Legislature, not plaintiffs, is entrusted with discretionary choices involved in redistricting. "The Supreme Court has repeatedly held that 'redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to preempt.'" Diaz v. Silver, 932 F.Supp. 462, 465 (E.D.N.Y. 1996), citing Wise v. Lipscomb, 437 U.S. 535, 539 (1978).

The County's choice to use DOJ Black instead of Any Part Black or a coalition minority was proper. DOJ Black was the minority definition used in the 2003 litigation against the County, see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 281 F.Supp.2d 436 (N.D.N.Y. 2003), and in redistricting efforts in municipalities in New York State, see New Rochele Voter Defense Fund v. City of New Rochelle, 308 F.Supp.2d 152 (S.D.N.Y. 2003); Diaz v. Silver, 932 F.Supp. 462 (E.D.N.Y. 1996); Montano v. Suffolk County Legislature, 268 F.Supp.2d 243 (E.D.N.Y. 2003). The Supreme Court has recognized that the application of the DOJ Black standard is proper even for the more rigorous review

7

### B. Failure To Prove "Geographically Compact" Minority.

Plaintiffs next contend that the relevant minority is geographically compact. As before, plaintiffs do not seek to show that the coalition minority, the sole claim in their pleadings, is compact. Instead, after all discovery is concluded, plaintiffs seek summary judgment based upon DOJ Black, a claim not raised in the pleadings.

Even if DOJ Black is the relevant minority, plaintiffs cannot prove compactness. In Bush v. Vera, 517 U.S. 952, 980 (1996), the Court held that "[s]ignificant deviations from traditional districting principles, such as the bizarre shape and non-compactness demonstrated by the districts here, cause constitutional harm insofar as they convey the message that political identity is, or should be, primarily racial." As a result, a district that would look like a "jigsaw puzzle" or a "sacred Mayan bird," see Bush, 517 U.S. at 973-74, or would be so irregular that it would be understood only as an effort to "separate voters into different districts on the basis of race," Shaw v. Reno, 509 U.S. at 649, means that the district would be "the product of [presumptively] unconstitutional gerrymandering subject to strict scrutiny." Bush, 517 U.S. at 976.

---

under Section 5 of the VRA. Georgia v. Ashcroft, 539 U.S. 461, 474 n.1 (2003). Simply put, the County had the discretion to use DOJ Black (and not a coalition or Any Part Black) as the relevant minority.

Moreover, in the 2003 litigation, plaintiffs demanded that the County use DOJ Black when drawing lines — at points contending that if the County used any definition other than DOJ Black that it would be engaging in intentional discrimination. Plaintiffs' footnote assertion (which speaks volumes concerning the force of their argument) that the County use "Any Part Black" is embarrassingly left without explanation for the sudden and abrupt shift.

8

Applied here, the irregular shape of plaintiffs' proposed 4th District as depicted below is indicative of racial gerrymandering:

**DISTRICT 6**



The review of the shape of this district is a matter for the Court to determine. For this reason alone, plaintiffs cannot demonstrate a compact fifth MMD.

## POINT III

### PLAINTIFFS FAILED TO PROVE POLITICAL COHESION

Under <u>Gingles</u>' second precondition, plaintiffs must prove that the relevant minority population is "politically cohesive." <u>Gingles</u>, 478 U.S. at 50-51. As with the <u>Gingles</u>' first precondition, plaintiffs seek summary judgment based upon DOJ Black, and not a coalition, which is the sole claim raised in their pleadings.

9

As detailed in Defendants' Motion for Summary Judgment, plaintiffs cannot prove that a coalition of Hispanic and DOJ Black voters is politically cohesive. William Cooper, plaintiffs' consultant, testified that "I don't believe that I do make any statement regarding political cohesion." See Marcelle Dec. Exh. "K" at pp. 8,16. Dr. Baodong Liu, plaintiffs' expert on racially polarized voting, testified that "there is insufficient data to engage in an analysis that will produce reliable results as to the extent of polarization characterizing elections in Albany County involving Hispanic candidates." See Marcelle Dec. Exh. "F" at p. 5; see Marcelle Dec. Exh. "P" at p. 48 ("I had no such data that would allow me to draw reliable estimates."); see also, Marcelle Dec. Exh. "K" at p. 7 ("I do not have sufficient data about Latino again."). Dr. Liu's current opinion regarding the lack of statistical evidence regarding Hispanic voters is identical to his opinion in the 2003 litigation. See Marcelle Dec. Exh. "C" at p. 22 ("Dr. Liu testified extensively at the hearing that there is simply no sufficient statistical information available to make informed conclusions about Hispanic voting patterns in Albany County to create effective majority-minority districts.")

This Court held that "the Court cannot conclude, in the absence of any statistical voting evidence, that a twenty year-old Consent Decree, evidence of socioeconomic similarities, and mere anecdotal evidence of cooperation between Blacks and Hispanics in the community are in and of themselves sufficient to prove that the two groups are politically cohesive." This Court concluded that it "finds no other cases applying the VRA in this Circuit or in other circuits where anecdotal evidence alone has been deemed sufficient to establish political cohesion." Id, at 5. On appeal, the Second Circuit noted

10

that plaintiffs' expert did not offer any data on the Hispanic vote and expressed "no view" on this Court's finding of a lack of political cohesion.  Pope, 687 F.3d at 573.

Despite this prior precedent, plaintiffs have offered no evidence of any kind in their motion, whether expert or even anecdotal, in support of their coalition claim.  For this reason alone, plaintiffs' motion should be denied.

In an effort to avoid this lack of proof, plaintiffs have again sought summary judgment based on DOJ Black, a minority definition that was not raised in their pleading.  Contending that defendants did not contest political cohesion at the preliminary injunction hearing, and without offering any expert proof, plaintiffs contend that there is no genuine issue of fact on this issue.  Plaintiffs are again mistaken.  In Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 274 (2nd Cir. 1992), the Second Circuit held that it would be "anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions."

Here, too, the anomaly is present and exacerbated by plaintiffs' internally inconsistent efforts to prove the Gingles' preconditions.  As established above, the Second Circuit held that plaintiffs must be consistent in their application of the relevant minority in considering each of the three Gingles' precondition.  In their zeal to establish that the minority's preferred candidate is "usually defeated" by majority bloc voting under Gingles' third precondition, plaintiffs relied upon an analysis of 34 bi-racial contests, including the black population's preferred candidate in 2005 Legislative District No. 7 Republican Party Primary and 2005 Legislative District No. 8 Republican Party

11

Primary.  See DSMF at ¶41, Marcelle Dec. Exh. "S" at p. 8, Table 3.

In seeking to prove polarized elections, plaintiffs also analyzed the preferred candidate of the black community in the 2011 Legislative District No. 3 General Election in which a black candidate (Clifton Dixon) ran as the Conservative and Working Families candidate; the 2010 County Surrogate Court General Election in which a black candidate (Helena Heath-Roland) ran as the Working Families candidate; the 2005 Albany Mayor General Election in which a black candidate (Alice Green) ran as the Green Party candidate; and the 2004 Legislative District No. 2 General Election in which a black candidate (Lucille McKnight) ran as the Working Families candidate.  Having sought to rely upon this evidence to prove the preferred candidate of the black community under Gingles' third precondition, plaintiffs must suffer the consequences, as noted by the Second Circuit, when the same evidence undermines its effort to prove that the same community is politically cohesive under Gingles' second precondition.  Simply stated, plaintiffs have offered no proof that the black supporters of Democratic, Republican, Conservative, Working Families, and Green Party candidates are politically cohesive.  As such, plaintiffs' motion should be denied.

## CONCLUSION

For these reasons, defendants respectfully request the entry of an order denying plaintiffs' motion for partial summary judgment.

Dated:   April 30, 2013                MURPHY, BURNS, BARBER & MURPHY, LLP

By_____s/ Peter G. Barber_____
Of Counsel:                            Peter G. Barber, Esq.
   Catherine A. Barber, Esq.           Bar Roll No. 301523

12

|  |  |
|---|---|
|  | Attorneys for County of Albany |
|  | 226 Great Oaks Boulevard |
|  | Albany, New York, 12203 |
|  | Telephone:   518-690-0096 |
|  | Telefax:       518-690-0053 |
|  | Email:   pgb@mbbmlaw.com |
|  |  |
|  | _____s/ Thomas Marcelle_____ |
| Of Counsel: | Thomas Marcelle, Esq. |
| Adam Giangreco, Esq. | Bar Roll No. 117102 |
|  | Albany County Attorney |
|  | Attorney for Albany County Board of Elections |
|  | Department of Law |
|  | 112 State Street, Suite 1010 |
|  | Albany, New York, 12207 |
|  | Telephone:   518-447-7110 |
|  | Telefax:       518-477-5564 |
|  | Email:   ThomasMarcelle@albanycounty.com |