UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| ANNE POPE, WANDA WILLINGHAM, GERALDINE BELL, SAMUEL COLEMAN, and LEE PINCKNEY,<br><br>                              Plaintiffs,<br><br>                       vs.<br><br>COUNTY OF ALBANY and the ALBANY COUNTY BOARD OF ELECTIONS,<br><br>                              Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' LOCAL RULE 7.1(a)(3) STATEMENT OF MATERIAL FACTS**<br><br>Civil Action #11-CV-736<br><br>(LEK/CFH) |

_____

Defendants County of Albany and Albany County Board of Elections respond to Plaintiffs' Local Rule 7.1(a)(3) Statement of Material Facts (Dkt. No. 211) as follows:

**Response No. 1**:   Defendants admit this statement.

**Response No. 2**:   Defendants admit this statement.

**Response No. 3**:   Defendants admit this statement.

**Response No. 4:**   Defendants admit this statement.

**Response No. 5**:   Defendants deny this statement. Plaintiffs fail to note that the Consent Judgment and Decree states that "[t]he redistricting plan will include three districts *in the area of the City of Albany*…" See Consent Judgment and Decree, NAACP v. Albany County, No. 91-cv-1288 (N.D.N.Y. Nov. 13, 1991), Dkt. 1-2, ¶ 2 under "IT IS HEREBY ORDERED" (emphasis added). By substituting their own phrase, "within the City of Albany," in place of the Court's phrase "in the area of the City of Albany," plaintiffs misconstrue the Order of the Court.

**Response No. 6**:   Defendants admit this statement.

1

**Response No. 7**:   Defendants admits this statement only to the extent of elections conducted under the plan adopted as a result of the Consent Judgment and Decree, <u>NAACP v. Albany County</u>, No. 91-cv-1288 (N.D.N.Y. Nov. 13, 1991).

**Response No. 8**:   Defendants admit this statement.

**Response No. 9**:   Defendants admit this statement.

**Response No. 10**:   Defendants admit this statement.

**Response No. 11**:   Defendants admit this statement.

**Response No. 12**:   Defendants admit this statement.

**Response No. 13**:   Defendants deny this statement. Plaintiffs offer no support for their assertion that Albany County entered into a settlement with minority voters in 2003. This Court, in <u>Arbor Hill III</u>, indicates just the opposite: "the 1991 case was negotiated by the parties and settled by way of the Consent Decree which has not occurred here … Second, it is not clear that even if there was a settlement in this case and an agreement by the parties to conduct a special election that the Court would have the power to order it to occur." <u>Arbor Hill III</u>, 289 F. Supp. 2d at 276.

Plaintiffs also misconstrue this Court's statement in <u>Arbor Hill III</u>, F.Supp.2d at 272. Although plaintiffs attempt to give the impression that defendants have multiple past redistricting "plans" that included blacks and Hispanics in the constitution of MMDs, this conclusion is unsupported by plaintiffs' reference to <u>Arbor Hill III</u>. Rather, the Court there was making reference to "Local Law E" only, not several or even multiple "plans" as plaintiff would like the Court to believe. <u>Arbor Hill III</u>, 289 F. Supp. 2d at 271-72.

**Response No. 14**:   Defendants admit this statement.

**Response No. 15**:   Defendants admit this statement.

**Response No. 16**:   Defendants admit this statement.

**Response No. 17**:   Defendants admit this statement.

**Response No. 18**:   Defendants admit this statement.

**Response No. 19**:   Defendants admit this statement.

**Response No. 20**:   Defendants admit this statement.

**Response No. 21**: Defendants admit this statement.

**Response No. 22**: Defendants admit this statement.

**Response No. 23**: Defendants admit this statement.

**Response No. 24**: Defendants admit this statement.

**Response No. 25**: Defendants deny this statement. Plaintiffs reference Mr. Cooper's preliminary injunction declaration as their sole support for this statement. Although Mr. Cooper notes in his declaration that this data regarding an alleged decrease of the non-Hispanic white population in the City of Albany is based upon the 2000 and 2010 Censuses, he fails to provide a specific citation to the census documents. See Cooper PI Decl. ¶8. Moreover, although "Exhibit 1" of Mr. Cooper's declaration purports to be "a true compilation of 2000 and 2010 U.S. Census data for Albany County and the City of Albany," see Cooper PI Decl. ¶5, this supposed "true compilation" does not even indicate the creator of the document or the source of the information. See Cooper PI Decl. Exh. 1.

**Response No. 26**: Defendants admit this statement.

**Response No. 27**: Defendants admit this statement.

**Response No. 28**: Defendants admit this statement.

**Response No. 29**: Defendants admit this statement.

**Response No. 30**: Defendants admit this statement.

**Response No. 31**: Defendants admit this statement.

**Response No. 32**: Defendants admit this statement.

**Response No. 33**: Defendants deny this statement. Plaintiffs reference Mr. Cooper's preliminary injunction declaration as their sole support for this statement. Although Mr. Cooper notes in his declaration that this data regarding an alleged increase in the non-Hispanic single-race black population for the City of Albany is based upon the 2000 and 2010 Censuses, he fails to provide a specific citation to the census documents. See Cooper PI Decl. ¶9. Moreover, although "Exhibit 1" of Mr. Cooper's declaration purports to be "a true compilation of 2000 and 2010 U.S. Census data for Albany County and the City of Albany," see Cooper PI Decl. ¶5, this supposed "true compilation" does not even indicate the creator of the document or the source of the information. See Cooper PI Decl. Exh. 1).

**Response No. 34**:   Defendants admit this statement.

**Response No. 35**:   Defendants admit this statement.

**Response No. 36**:   Defendants deny this statement.  Plaintiffs reference Mr. Cooper's preliminary injunction declaration as their sole support for this statement.  Although Mr. Cooper notes in his declaration that this data regarding an alleged increase in the non-Hispanic single-race black population for the County of Albany is based upon the 2000 and 2010 Censuses, he fails to provide a specific citation to the census documents.  See Cooper PI Decl. ¶12.  Moreover, although "Exhibit 1" of Mr. Cooper's declaration purports to be "a true compilation of 2000 and 2010 U.S. Census data for Albany County and the City of Albany," see Cooper PI Decl. ¶5, this supposed "true compilation" does not even indicate the creator of the document or the source of the information.  See Cooper PI Decl. Exh. 1.

The chart located under ¶12 of Cooper's PI Decl., the paragraph cited by plaintiffs' as support for their statement, includes population figures for 2010; however the data allegedly relied upon by Mr. Cooper in producing this population chart only provides data from the years 1980-2000—this is easily discovered by simply inserting the website link Mr. Cooper provides directly below the chart.  See Cooper PI Decl. ¶12 w/ chart.

**Response No. 37**:   Defendants admit this statement

**Response No. 38**:   Defendants admit this statement.

**Response No. 39**:   Defendants deny this statement.  Plaintiffs seemingly draw a dichotomy between the City of Albany and the County of Albany in measuring the black population for each; plaintiffs therefore give no indication as to whether their calculation of the black population in the County includes the black population that is contained in the City.  If the 12% black population figure for the County excludes the City of Albany, then the percentage black population for the County will of course be dwarfed by the percentage black population contained in the City.  Because it is unclear whether the 12% figure accounts for the City black population, defendants are unable to admit that the "Black population is concentrated in the City."

Further, plaintiffs' sole support for this statement is Mr. Cooper's preliminary injunction declaration.  See Cooper PI Decl. ¶¶5, 7.  Although Mr. Cooper notes in his declaration that the non-Hispanic black population constitutes 12% of the County total population, he cites to an "Exhibit 1" that, as stated, gives no indication of the creator or the source of the document, "Exhibit 1."  Also, Mr. Cooper's declaration does state that the non-Hispanic black population constitutes 29% of the City's population; however, Mr. Cooper does not reference any source whatsoever in offering this opinion in his declaration.

**Response No. 40**:   Defendants deny this statement.  Plaintiffs offer no statistical data for this assertion, but rather the three references cited to by plaintiffs offer unsupported conclusory opinions only.

**Response No. 41**:   Defendants admit this statement.

**Response No. 42**:   Defendants admit this statement.

**Response No. 43**:   Defendants admit this statement.

**Response No. 44**:   Defendants admit this statement.

**Response No. 45**:   Defendants admit this statement.

**Response No. 46**:   Defendants deny this statement.  Plaintiffs misconstrue this Court's statement in Arbor Hill III, F.Supp.2d at 272.  Although plaintiffs attempt to give the impression that defendants have multiple past redistricting "plans" that included blacks and Hispanics in the constitution of MMDs, this conclusion is unsupported by plaintiffs' reference to Arbor Hill III.  Rather, the Court there was making reference to "Local Law E" only, not several or even multiple "plans" as plaintiff would like the Court to believe.  Arbor Hill III, 289 F. Supp. 2d at 271-72.

**Response No. 47**:   Defendants admit this statement.

**Response No. 48**:   Defendants deny this statement.  Dr. Gaddie testified that he applied the DOJ black standard in his analysis of Gingles' second and third preconditions.  See Gaddie Mar. 4, 2013 Dep. Tr. at 294:4–22.  Therefore, plaintiffs' blanket statement intimating that Dr. Gaddie's whole analysis is flawed for allegedly wrongly leaving out a segment of the black population is simply false.  Moreover, the very standard plaintiffs advocate for, the DOJ Black standard, which was also used by Dr. Gaddie, by its very definition does not account for individuals who identified as both black and Hispanic, thereby leaving out a segment of the population "who identified themselves as black."  See DOJ's *Guidance Concerning Redistricting and Retrogression Under Section 5*, 66 Fed. Reg. 5412.

**Response No. 49**:   Defendants deny this statement.  Plaintiffs offer Mr. Mair's preliminary injunction declaration as the sole support for their statement.  See Mair PL Decl. ¶¶ 30-31, 35; see also Mair PL Decl., Ex. 14, Dkt. 28-14.  Mr. Mair's testimony is inadequate because, although plaintiffs aver in their statement that the AHEJ plan was created "using the 2010 U.S. Census data," the specific paragraphs cited to by plaintiffs in Mr. Mair's declaration include no exhibits or verifiable references of U.S. census data or reports.  See id.  The fact that

5

Mr. Mair claims that he "looked at the 2010 Census population" in crafting his proposed redistricting plan is not convincing.

**Response No. 50**: Defendants deny this statement in part and admit in part. Defendants admit that the AHEJ plan purports to have MMDs with percentage DOJ Black population percentages. However, neither Mr. Cooper nor Mr. Mair offers any foundation for how they arrived at these DOJ Black voting age population percentages. See Cooper PI Decl., ¶ 26 with table; see also Mair PI Decl., Exhibit 11, Dkt. 28-11. Defendants therefore deny the accuracy of these percentages for this reason. See id. As established in defendants' motion for summary judgment, the proper criteria is CVAP not VAP.

**Response No. 51**: Defendants deny this statement. Defendants admit that the Cooper plans purports to have MMDs with percentage DOJ Black population percentages. However, Mr. Cooper offers no foundation for how he arrived at these DOJ Black voting age population percentages. See Cooper PI Decl., ¶ 26 with table. Defendants therefore deny the accuracy of these percentages for this reason. See id. As established in defendants' motion for summary judgment, the proper criteria is CVAP not VAP.

**Response No. 52**: Defendants deny this statement. Plaintiffs offer Mr. Cooper's preliminary injunction declaration as the sole support for their statement. See Cooper PI Decl., ¶ 38 with table. Even though plaintiffs accurately extract from Mr. Cooper's declaration the non-Hispanic DOJ Black VAP percentages offered by Mr. Cooper, Mr. Cooper provides no basis for his calculations in arriving at the claimed percentages. See id.

**Response No. 53**: Defendants deny this statement. Plaintiffs reference Mr. Cooper's Rebuttal Report as support for the stated non-Hispanic DOJ black VAP percentages as contained in "Illustrative Plan 4." See Cooper Rebuttal Report, ¶¶ 18-19 with attachments. However, Mr. Cooper's Rebuttal Declaration at the stated paragraphs cite to no census reports or data or any official document whatever as a basis for arriving at the non-Hispanic DOJ Black VAP percentages. See id.

**Response No. 54**: Defendants deny this statement. First of all, this statement is completely irrelevant and has no bearing on the Gingles analysis whatsoever. Even if it was relevant, plaintiffs however offer little support, in addition to misleading the Court. For example, plaintiffs cite to testimony given by John Merrill, defendants' map maker. Mr. Merrill, at the preliminary injunction hearing, however was not speaking in terms of plaintiffs' "redistricting plans," but rather his answer regarding the difficulty of walking from one end of an MMD to another was only in reference to plaintiffs' AHEJ plan (plan in the singular). *See* Transcript of Preliminary Injunction Hearing at 201-203. Plaintiffs therefore mislead the Court.

Plaintiffs' reference to "Karlan Decl., Ex. 10" contains testimony from plaintiffs' expert, Mr. Cooper in which he offers his opinion regarding the compactness of the AHEJ MMDs. Yet, compactness of a district does not necessarily equate to feasibility of walking from one end of the MMD to the other on foot, as plaintiffs seem to intimate. Therefore, Mr. Cooper's testimony, as cited by plaintiffs, lends no credence to plaintiffs' statement.

**Response No. 55**: Defendants admit this statement.

**Response No. 56**: Defendants deny this statement. Plaintiffs are well aware that Dr. Gaddie relied on the 2010 Census data in performing his analysis of Gingles' first precondition. See Dr. Gaddie Amended Expert Report at p. 4, dated April 2, 2012. This is the same data that plaintiffs expert, Dr. Liu, claims to have used as well. See Dr. Liu Supplemental Expert Report at p. 4, dated December 20, 2011.

**Response No. 57**: Defendants deny this statement. The answer Dr. Gaddie provided at his March 4, 2013 deposition was in regard to "voting age black people," not "minorities" in general, which, as this litigation has demonstrated, has the potential of carrying with it a number of definitions. See Gaddie Mar. 4, 2013 Dep. Tr. at 311:3. "[V]oting age black people," on the other hand, has a more restrictive meaning.

Moreover, plaintiffs' statement omits any kind of context. If plaintiffs are representing to the Court that the DOJ Black definition would serve to "increase the number of minorities" in the County, this can only possibly be true in relation to another standard for calculating black population—in other words, the supposition is relative, not absolute. However, plaintiffs' statement does not offer a standard in which to compare DOJ Black to, and therefore is nonsensical.

**Response No. 58**: Defendants deny this statement. None of plaintiffs' references here support the assertion they wish to make. Dr. Gaddie, in plaintiffs' first transcript reference, merely responded "yes" to whether the "DOJ black definition would increase the number of voting age black people in Albany county." See Gaddie Mar. 4, 2013 Dep. Tr. at 310:10–311:4. Dr. Gaddie made no comment in this transcript reference regarding any of plaintiffs' proposed plans, and certainly gave no opinion as to whether any of plaintiffs' proposed plans contain sufficient minority population to support a fifth MMD. Id.

In their second transcript reference, plaintiffs' again attempt to stretch Dr. Gaddie's testimony to create the illusion that Dr. Gaddie's testimony agrees with their statement. However, Dr. Gaddie merely responds "[i]t is possible, yes" as to whether using "a less inclusive definition of minority," under Gingles first precondition, would affect his evaluation of the AHEJ plan. See Gaddie Mar. 4, 2013 Dep. Tr. at 312:3–8.

Plaintiffs' third transcript reference again fails to lend any credence to plaintiffs' statement. Dr. Gaddie here responded "[i]t is possible" with regard to whether applying the DOJ black standard would change his analysis of plaintiffs' redistricting plan. For the same reason this does not support plaintiffs' assertion. See Gaddie Mar. 4, 2013 Dep. Tr. at 313:20–314:7.

As for plaintiffs' fourth and final transcript reference, Dr. Gaddie affirms that "I have not made that determination" regarding whether it is possible to create a fifth MMD operating under the DOJ black standard. See Gaddie Mar. 4, 2013 Dep. Tr. at 314:8–18. Again, far from espousing plaintiffs' assertion that their proposed MMDs could contain sufficient minority population under the DOJ black standard, Dr. Gaddie in no uncertain terms attests: "I have not made that determination." See Gaddie Mar. 4, 2013 Dep. Tr. at 314:8–18.

**Response No. 59**: Defendants deny this statement. Dr. Gaddie corrected his testimony and confirmed that his opinion that elections in Albany County were not racially polarized was based upon analyses using DOJ Black. See Gaddie errata sheet.

**Response No. 60**: Defendants' deny this statement. Plaintiffs' reference to the 1991 Consent Judgment and Decree omits critical language. Although plaintiffs assert that the black population "in the County," unqualifiedly, is politically cohesive, this is not what the 1991 Consent Decree declares. Rather, the Consent Decree binds the political cohesiveness of the black population within Albany County specifically to "particular areas of the county," which is not to say that the black population is cohesive within the entire County, as plaintiffs intimate. See Consent Judgment and Decree, NAACP v. Albany County, No. 91-cv-1288 (N.D.N.Y. Nov. 13, 1991), Dkt. 1-2, ¶ 17.

**Response No. 61**: Defendants deny this statement. Plaintiffs' reference fails to support their statement. Plaintiffs' statement is refuted by the very face of the quote plaintiffs rely upon. The quote extracted by plaintiffs from Defendants' Amended Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction merely concedes political cohesion of the black community for the purpose of the preliminary injunction and no more, as the language cited by plaintiffs clearly evinces. Defendants' concession regarding political cohesion at the preliminary injunction stage does not therefore require defendants to make the same concession nearly two years later in the making of dispositive motions—defendants make no such concession.

In seeking to establish that the minority's preferred candidate is "usually defeated" by majority bloc voting under Gingles' third precondition, plaintiffs relied upon an analysis of 34 bi-racial contests, including the black population's preferred candidate in 2005 Legislative District No. 7 Republican Party Primary and 2005 Legislative District No. 8 Republican Party Primary. See DSMF at ¶41, Marcelle Dec. Exh. "S" at p. 8, Table 3. Plaintiffs also analyzed the preferred candidate of the black community in the 2011 Legislative District No. 3 General

Election in which a black candidate (Clifton Dixon) ran as the Conservative and Working Families candidate; the 2010 County Surrogate Court General Election in which a black candidate (Helena Heath-Roland) ran as the Working Families candidate; the 2005 Albany Mayor General Election in which a black candidate (Alice Green) ran as the Green Party candidate; and the 2004 Legislative District No. 2 General Election in which a black candidate (Lucille McKnight) ran as the Working Families candidate.  Having sought to rely upon this evidence to prove the preferred candidate of the black community under Gingles' third precondition, plaintiffs must suffer the consequences, as noted by the Second Circuit, when the same evidence undermines its effort to prove that the same community is politically cohesive under Gingles' second precondition.  Plaintiffs have offered no proof that the black supporters of Democratic, Republican, Conservative, Working Families, and Green Party candidates are politically cohesive.

Dated:   April 30, 2013			MURPHY, BURNS, BARBER & MURPHY, LLP
							/s/ Peter G. Barber
						By_____
							Peter G. Barber, Esq.
							Bar Roll No. 301523
							Attorneys for Defendant County of Albany
							226 Great Oaks Boulevard
							Albany, New York, 12203
							Telephone:  518-690-0096
							Telefax:  518-690-0053
							E-mail: pgb@mbbmlaw.com

							/s/ Thomas Marcelle
							_____
							Thomas Marcelle, Esq.
							Bar Roll No. 117102
							Albany County Attorney
							Attorney for Defendant Albany County
							Board of Elections
							Department of Law
							112 State Street, Suite 1010
							Albany, New York, 12207
							Telephone: 518-447-7110
							Telefax:  518-477-5564
							E-mail:  ThomasMarcelle@albanycounty.com