UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
ANNE POPE, et al.,                                        :
                                                          :
                  Plaintiffs,                             :
                                                          :
     -against-                                            :   No. 11-cv-0736 (LEK) (CFH)
                                                          :
ALBANY COUNTY, et al.,                                    :
                                                          :
                  Defendants.                             :
                                                          :
----------------------------------------------------------x

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan
mkarlan@gibsondunn.com
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035
Bar Roll No. 511874

DEROHANNESIAN &
DEROHANNESIAN
Paul DerOhannesian II
derolaw@verizon.net
677 Broadway, Suite 202
Albany, New York 12207-2985
Telephone: 518.465.6420
Fax: 518.427.0614
Bar Roll No. 104792

*Attorneys for Plaintiffs*

May 20, 2013

**TABLE OF CONTENTS**

Page

I.    THE FIRST *GINGLES* PRECONDITION ...........................................................................2

    A.    Albany's Black Population Is Sufficiently Large .....................................................2

    B.    Albany's Black Population Is Geographically Compact .........................................4

    C.    Plaintiffs Assert a Black-Only Claim .....................................................................8

II.   THE SECOND *GINGLES* PRECONDITION ....................................................................9

III.  ALL PLAINTIFFS HAVE STANDING ..........................................................................13

CONCLUSION ...............................................................................................................................14

## TABLE OF AUTHORITIES

Pages

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 281 F. Supp. 2d 436 (N.D.N.Y. 2003) .................................................................................................................. 13

*Benavidez v. City of Irving,* 638 F. Supp. 2d 709 (N.D. Tex. 2009) ............................................... 6

*Bush v. Vera*, 517 U.S. 952 (1996) ............................................................................................. 5, 6

*Cane v. Worcester Cnty.*, 840 F. Supp. 1081 (D. Md. 1994), *aff'd in part*, 35 F.3d 921 (4th Cir. 1994) ......................................................................................................................... 6

*Fletcher v. Lamone*, 831 F. Supp. 2d 887 (D. Md. 2011), *aff'd*, 133 S. Ct. 29 (2012) .................. 4

*France v. Pataki,* 71 F. Supp. 2d 317 (S.D.N.Y. 1999) ................................................................. 3

*Goosby v. Town Bd. of the Town of Hempstead*, 956 F. Supp. 326 (E.D.N.Y. 1997) ................... 4

*Harvell v. Blytheville Sch. Dist. No. 5*, 126 F.3d 1038 (8th Cir. 1997) ......................................... 6

*Johnson v. De Grandy*, 512 U.S. 997 (1994) ................................................................................. 4

*League of United Latin Am. Citizens (LULAC) v. Perry*, 548 U.S. 399 (2006) ............................ 4

*Lepak v. City of Irving, cert. denied*, 133 S. Ct. 1725, 569 U.S. __ (2013); .................................. 3

*Miller v. Johnson*, 515 U.S. 900 (1995) .................................................................................... 4, 7

*Mitchell v. Washingtonville Central Sch. Dist.*, 190 F.3d 1 (2d Cir. 1999) ................................. 10

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................................................... 10, 11

*Pope v. Cnty. of Albany*, 687 F.3d 565 (2d Cir. 2012) .................................................................. 1

*Radogno v. Illinois State Bd. of Elections*, 836 F. Supp. 2d 759 (N.D. Ill. 2011) ......................... 6

*Rodriguez v. Pataki*, 308 F. Supp. 2d 346 (S.D.N.Y. 2004) ......................................................... 3

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................................................ 4

*Shaw v. Reno*, 509 U.S. 630 (1993) ...................................................................................... 5, 6, 8

*Thornburg v. Gingles*, 478 U.S. 30 (1986) ............................................................... 1, 4, 5, 10, 12

*United States v. Village of Port Chester*, 704 F. Supp. 2d 411 (S.D.N.Y. 2010) .......................... 3

*Wright v. Dougherty Cnty., Georgia*, 358 F.3d 1352 (11th Cir. 2004) ........................................ 13

**Statutes**

42 U.S.C. § 1973(b) ................................................................................................................... 4

**Other Authorities**

Nathaniel Persily, *The Law of the Census: How To Count, What To Count, Whom To Count, and Where To Count Them,* 32 Cardozo L. Rev. 755 (2011) ............................................................ 3

**Regulations**

U.S. Census Bureau, *A Compass for Understanding and Using American Community Survey Data: What General Data Users Need to Know* 1 (Oct. 2008), http://www.census.gov/acs/www/Downloads/handbooks/ACSstateLocal.pdf. .......................... 3

U.S. Census Bureau, *Three Tips for Using American Community Survey (ACS) Data*, http://www.census.gov/acs/www/guidance_for_data_users/guidance_main/ (last visited May 8, 2013) ..................................................................................................................................... 3

Plaintiffs are entitled to partial summary judgment on the first and second *Gingles* preconditions.

The undisputed evidence establishes that the Albany County's Black population is "sufficiently large and geographically compact" to satisfy the first *Gingles* precondition. *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986). Plaintiffs have shown that five majority-minority districts ("MMDs"), each of which has a Black voting age population ("VAP") greater than 50%, can be created for the Albany County Legislature (the "Legislature"). The Second Circuit has ruled—in this litigation—that a minority group is "sufficiently large" when it is greater than 50 percent of the relevant population in the district. *Pope v. Cnty. of Albany*, 687 F.3d 565, 574 (2d Cir. 2012). Moreover, the Black population in Albany County (the "County") is geographically compact, allowing the creation of five MMDs. All five of the proposed MMDs would be within the City of Albany, which is only 21 square miles in area.

Plaintiffs are also entitled to summary judgment on the second *Gingles* precondition—that Blacks in the County are "politically cohesive." Defendants have previously conceded this point. *See* Pl. Mem. Supp. Partial Summ. J. at 15–16, Dkt. No. 210 ("Pl. MPSJ"). Moreover, the evidence conclusively demonstrates Black political cohesion, and there is no evidence to the contrary.

Defendants' opposition reveals that they have no defense to Plaintiffs' motion. Defendants have not, in fact, actually responded to Plaintiffs' motion.

1. Defendants do *not* dispute that Black voters make up more than 50% of the VAP in the proposed MMDs, constituting a sufficiently large class to warrant a fifth MMD. Instead, Defendants (wrongly) urge the use of *citizen* voting age population ("CVAP"), without providing any evidence that reliable CVAP data even exists for districts the size of the Legislature's districts, much less that using unreliable CVAP data would change the result.

2. Defendants do *not* dispute that that the Black VAP is sufficiently geographically compact to create a fifth MMD. Instead, misconstruing the concept of "compactness"

1

under the VRA, Defendants argue only that one of the proposed MMDs, in only one of Plaintiffs' illustrative plans, is "irregular" in shape.

3. Defendants do *not* offer any evidence to refute Plaintiffs' evidence that the Black population in Albany is politically cohesive. Indeed, Defendants have previously *conceded* this issue.

## I.

## THE FIRST *GINGLES* PRECONDITION

### A.   Albany's Black Population Is Sufficiently Large

The Black population in Albany County is "sufficiently large" to constitute five MMDs, satisfying the first *Gingles* precondition. Furthermore, Defendants do not contest that, using VAP, the Black population is large enough to create five MMDs.[1]

Now, as they did in their summary judgment motion, Defendants again erroneously assert that the proper metric for determining minority presence in a Section 2 case is CVAP, rather than VAP. As Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary

---

[1] Defendants asserted to the Second Circuit that the District Court properly used DOJ Black as the appropriate definition for determining whether or not there was a sufficiently large population to create an additional MMD under the first *Gingles* precondition. Def. Appellees' Br. at 23, *Pope v. Cnty. of Albany*, No. 11-3439-cv (2d Cir. Nov. 10, 2011), submitted as Exhibit 1 to the Declaration of Brittany Garmyn, dated May 20, 2013 ("Garmyn Decl."). Defendants admit that "Non-Hispanic DOJ Black is an appropriate definition to use when calculating the Black population in Albany County." Def. Response to Pl. Statement of Material Facts ¶ 47, Dkt. No. 230-1. While seeking to portray to this Court and the Second Circuit that the County was using the appropriate metric, Non-Hispanic DOJ Black, to determine the number of Blacks in Plaintiffs' Arbor Hill Environmental Justice ("AHEJ") Plan under the first *Gingles* precondition, the County now admits that its expert, "Dr. Ronald Keith Gaddie's conclusion that the AHEJ Plan's MMDs were not sufficiently large under the first *Gingles* precondition used the non-Hispanic single-race Black definition to identify and count the minority population." Def. Response to Pl. Statement of Material Facts ¶ 55, Dkt. No. 230-1. Defendants have never submitted an analysis of the Black population concerning the Plaintiffs' plans and argument for an additional MMD using the DOJ Black standard, even in their opposition to Plaintiffs' motion for partial summary judgment. The erroneous standard and analysis by Defendants' expert dilutes the number of Blacks. The County's admission establishes that a "sufficiently large" Black population exists in the County to entitle Plaintiffs to summary judgment under the first *Gingles* precondition.

2

Judgment discusses in full, it is not necessary or even feasible to use CVAP in Section 2 cases. *See* Pl. Mem. Opp. Def. Summ. J. at 10–11, Dkt. No. 228 ("Pl. Opp.").[2]  This Circuit does not require CVAP data.

CVAP data is not even reliably available for election districts of the small population size at issue in this litigation.  Pl. Opp. at 11 n.26; *see also* Nathaniel Persily, *The Law of the Census: How To Count, What To Count, Whom To Count, and Where To Count Them,* 32 Cardozo L. Rev. 755, 776–77 (2011).  The cases cited by Defendants were *all* decided before the U.S. Census Bureau abandoned its use of the long form questionnaire in for the 2010 U.S. Census and resorted to collecting American Community Survey ("ACS") data.[3]

---

[2] The majority of Courts of Appeals that have decided this issue do not require the use of CVAP data. *Id*. at 10–11.  Moreover, CVAP is not required in this Circuit. *Id*. at 10.  The cases cited by Defendants do not counsel otherwise. *United States v. Village of Port Chester* and *Rodriguez v. Pataki* use both CVAP and VAP in their analysis, 704 F. Supp. 2d 411, 440 (S.D.N.Y. 2010), 308 F. Supp. 2d 346, 374 (S.D.N.Y. 2004), and *France v. Pataki* does not specify a dataset to use, only noting that the relevant dataset should include eligible voters because the relevant minority population "includes a substantial number of non-citizens and family members under age 18 who are ineligible to vote," 71 F. Supp. 2d 317, 326 (S.D.N.Y. 1999).  All three cases involved substantial non-citizen populations. *See Port Chester*, 704 F. Supp. 2d at 419–20 (noting that Hispanics made up 43.4% of the VAP in that case, but only 27.5% of the CVAP); *Rodriguez,* 308 F. Supp. 2d at 374  (noting that " almost half of Hispanics of voting age are not citizens").  To emphasize this point, the Supreme Court recently denied certiorari in a suit to require CVAP data in Voting Rights Act suits.  *See Lepak v. City of Irving, cert. denied*, 133 S. Ct. 1725, 569 U.S. __ (2013); *see also* Pl. Opp. at 10–11.

[3] *See generally* U.S. Census Bureau, *Three Tips for Using American Community Survey (ACS) Data*, http://www.census.gov/acs/www/guidance_for_data_users/guidance_main/ (last visited May 8, 2013); U.S. Census Bureau, *A Compass for Understanding and Using American Community Survey Data: What General Data Users Need to Know* 1–4 (Oct. 2008), http://www.census.gov/acs/www/Downloads/handbooks/ACSstateLocal.pdf.

3

Defendants cannot manufacture a genuine issue of material fact merely by guessing that a gap may exist between the VAP and CVAP figures in the County. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (nonmoving party must do more than create "some metaphysical doubt").[4]

### B. Albany's Black Population Is Geographically Compact

A minority group is "geographically compact" under *Gingles* so long as it can "constitute a majority in a single member district," 478 U.S. at 50, regardless of whether the *district* itself is compact. *See, e.g.*, *League of United Latin Am. Citizens (LULAC) v. Perry*, 548 U.S. 399, 433 (2006). Compactness "refers to the compactness of the minority population, not to the compactness of the contested district." *Id.* (citations and internal quotation marks omitted). *Accord, e.g.*, *Goosby v. Town Bd. of the Town of Hempstead*, 956 F. Supp. 326, 334 (E.D.N.Y. 1997) (noting that the minority population is concentrated in the town center); *see generally*, Pl. MPSJ at 12–15.[5]

---

[4] Defendants' allegation that Blacks are proportionally represented in the County Legislature is factually flawed and legally irrelevant. Defendants confuse proportionality with proportional representation. Proportionality "speaks to the *success* of minority candidates, *as distinct from the political or electoral power of minority voters*," and it is "distinct from the subject of the proportional representation clause of § 2, which provides that 'nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.' 42 U.S.C. § 1973(b)." *Johnson v. De Grandy*, 512 U.S. 997, 1014 n.11 (1994) (emphasis added).

In *De Grandy*, the Supreme Court rejected the argument that proportionality always defeats a Section 2 claim and specifically stated that it is not a safe harbor defense. *De Grandy*, 512 U.S. at 1017–21; *see also id*. at 1025 (O'Connor, J., concurring) ("[P]roportionality . . . is *never* itself dispositive."). The Court explained that such an "inflexible rule would run counter to the textual command of Section 2, that the presence or absence of a violation be assessed 'based on the totality of circumstances.'" *Id*. at 1018 (quoting 42 U.S.C. § 1973(b)).

[5] The term "'compactness' . . . refers to two distinct concepts" in voting rights law. *Fletcher v. Lamone*, 831 F. Supp. 2d 887, 899 (D. Md. 2011), *aff'd*, 133 S. Ct. 29 (2012). *Gingles* and its progeny mandate an assessment of the minority population's compactness within a district. *LULAC*, 548 U.S. at 432–33. A court may also analyze district lines' contours to determine whether race was the legislature's predominant factor in a districting scheme, thus violating the Equal Protection Clause. *Miller v. Johnson*, 515 U.S. 900, 916 (1995).

Defendants do not contest this settled law; nor do they contest that Albany's Black population is "compact." Defendants contend only that one single proposed district in one of Plaintiffs' several illustrative plans is too "irregular[ly] shape[d]." Def. Mem. Opp. Pl. Summ. J. at 9, Dkt. No. 230 ("Def. Opp.").

Defendants' reliance on *Shaw v. Reno* is entirely misplaced. In *Shaw*, the Supreme Court made clear that it "never has held that race-conscious state decisionmaking is impermissible in *all* circumstances." 509 U.S. 630, 642 (1993). Indeed, to do so would invalidate decades of Voting Rights Act precedent requiring the creation of MMDs. *See, e.g.*, *Gingles*, 478 U.S. 30; *see also Bush v. Vera*, 517 U.S. 952, 990–92 (1996) (O'Connor, J., concurring) (collecting cases). "[R]ace-conscious redistricting," is both constitutional and contemplated by the Voting Rights Act. *See Shaw*, 509 U.S. at 642. A redistricting plan is unconstitutional only if the shape of a district is "so extremely irregular on its face that" even if it is "race neutral on its face, [it] rationally cannot be understood as anything other than an effort to separate voters into different districts on the basis of race, and that the separation lacks sufficient justification." *Id.* at 642, 649. The plurality opinion in *Bush v. Vera* similarly states that strict constitutional scrutiny applies only if race is "*the predominant* factor motivating the . . . redistricting decision," "subordinat[ing]" "other . . . districting principles." 517 U.S. at 959 (brackets and internal quotation marks omitted). And even then, "[i]f the State has a 'strong basis in evidence,' for concluding that creation of a majority-minority district is reasonably necessary to comply with § 2, and the districting that is based on race 'substantially addresses the § 2 violation,' it satisfies strict scrutiny." *Bush*, 517 U.S. at 977 (plurality opinion) (internal citations omitted).

---

Defendants erroneously conflate the *Gingles* Voting Rights Act compactness analysis with the distinct compactness inquiry under the Equal Protection Clause. As will be discussed, Defendants' constitutional claim also lacks merit.

5

Defendants present no evidence at all to suggest that any of the proposed MMDs are unconstitutional or non-compact. Nor could they. All five of the proposed MMDs are within the City of Albany, which is only 21 square miles. *See, e.g.*, *Radogno v. Illinois State Bd. of Elections*, 836 F. Supp. 2d 759, 769 (N.D. Ill. 2011) (a district's shape did not suggest racial gerrymandering where "[the district] [was] not a 160 mile long, snakelike district that winds through demographically disparate regions, gobbling in enclaves of the targeted population while avoiding others . . . Nor [did] it contain 'narrow corridors, wings, or fingers' that 'reach out to enclose black voters'") (citing *Shaw*, 509 U.S. at 635–36 and *Bush*, 517 U.S. at 973); *Benavidez v. City of Irving,* 638 F. Supp. 2d 709, 722 (N.D. Tex. 2009) (finding proposed single-member city council districts that "reach out to grab" pockets of the Hispanic population nonetheless compact because they are geographically near the Hispanic population's primary concentration); *Harvell v. Blytheville Sch. Dist. No. 5*, 126 F.3d 1038, 1040 (8th Cir. 1997) (stating that the district court did not err in finding no *Shaw* violation as to districts that "followed natural boundaries, streets, and neighborhoods"); *Cane v. Worcester Cnty.*, 840 F. Supp. 1081, 1086–87 (D. Md. 1994) (finding proposed districts "not unreasonably irregular in shape" where the districts "do not . . . run through several 'tentacle-like corridors' nor are the district's boundary lines so unreasonably irregular, bizarre or uncouth as to approach obvious gerrymandering"), *aff'd in part*, 35 F.3d 921, 925 (4th Cir. 1994); *cf. Shaw*, 509 U.S. at 635 (noting that the district is "160 miles long and, for much of its length, no wider than the I-85 corridor").

There is no evidence here that Plaintiffs' illustrative MMDs were made "without regard for traditional districting principles." To the contrary, Plaintiffs' illustrative plans demonstrate respect for political subdivisions, *see Shaw*, 509 U.S. at 647 (various criteria, including respect for political subdivisions, "are objective factors that may serve to defeat a claim that a district

6

has been gerrymandered on racial lines"), and protection of communities of shared interests, *see Miller*, 515 U.S. at 916.  The plans' authors considered appropriate redistricting criteria, including respect for "natural community, neighborhood, and municipal boundaries," using neighborhood and neighborhood association boundaries, local development organization records, community school district boundaries, and church locations.  *See, e.g.*, Declaration of Aaron Mair, dated July 15, 2011, ¶ 31, Dkt. No. 231-15.  None of Plaintiffs' illustrative MMDs cross municipal boundaries.  *See id.* ¶ 34.  Plaintiffs' expert William Cooper opined that Plaintiffs' AHEJ Plan respects "key traditional criteria such as compactness."  Declaration of William S. Cooper, dated July 14, 2011 ("Cooper PI Decl."), ¶ 28, Dkt. No. 232-3; *see also* Transcript of Preliminary Injunction Hearing, Aug. 3–4, 2011 ("PI Hr'g Tr.") at 46:19–21, 48:2–9, Garmyn Decl., Ex. 2 (noting AHEJ District 6 is only one square mile).  Defendants' own mapmaker conceded that "it would not be difficult" to walk from one end to the other of any of Plaintiffs' proposed AHEJ Plan MMDs.  PI Hr'g Tr. at 203:4–8.  Cooper testified that the "technical redistricting work of [the AHEJ Plan] is on a par with, or better than, the typical government agency or redistricting consultant."  Cooper PI Decl. ¶ 24.  The illustrative plans Cooper created similarly respect compactness concerns and consider traditional redistricting criteria in addition to demographics.  *See, e.g.*, Rebuttal Report of William S. Cooper in Response to the Report of Ronald Keith Gaddie, dated Apr. 16, 2012, ¶ 19, Dkt. No. 231-29.

Indeed, Local Law C itself—which Defendants do *not* claim is unconstitutional—shows how districts without smooth edges can result from the application of traditional districting principles:

7



Local Law C Districts 2, 7, 10, and 23, respectively.

Defendants offer nothing to suggest that any illustrative MMD is "so extremely irregular on its face that it rationally can be viewed only as an effort to segregate the races for purposes of voting, without regard for traditional districting principles and without sufficiently compelling justification." *Shaw*, 509 U.S. at 642.

### C. Plaintiffs Assert a Black-Only Claim

Plaintiffs in this action alleged both that Blacks alone are sufficiently numerous and compact to satisfy *Gingles* and that, in the alternative, Blacks and Hispanics together satisfy the test.

In addition to describing the growth of Albany County's Hispanic population, the Complaint separately details the "increase[]" in its "non-Hispanic black population," First Amended Compl. ¶¶ 25, 30, Dkt. No. 100, identifying population increase as a basis for increasing the number of MMDs. *See id.* ¶ 33. The Complaint then alleges that five MMDs can be created with just Albany's Black voters, as an alternative to creating MMDs from the combination of Blacks and Hispanics, *see id.* Ex. H, Dkt. No. 100-8, and seeks an order enacting such a plan. *Id.* at 17.

Plaintiffs' preliminary injunction papers argued that "the increased population of blacks *alone* supports 5 MMDs with non-Hispanic black VAPs of between 50.44% and 52.67%." Pl. Mem. Supp. Prelim. Inj. at 12, Dkt. No. 30. Plaintiffs reiterated that position on appeal. *See, e.g.*, Appellants' Br. at 2, *Pope v. Cnty. of Albany*, No. 11-3439-cv (2d Cir. Oct. 24, 2011),

8

Garmyn Decl., Ex. 3 ("Blacks alone (without considering Hispanics) are more than 50% of the voting age population in those districts."); *id.* at 4 ("[d]id the District Court err in denying Plaintiffs' motion for preliminary injunction when it was undisputed that the black population of Albany County supported five MMDs in which blacks were more than 50% of the voting age population"); *id.* at 13–14 ("Even if Hispanics are excluded, and only blacks are deemed relevant, there is still no dispute that it is simple to draw a map with five MMDs where the black voting age population in each district is above 50%."); *id.* at 14 ("The five MMDs in Illustrative Plan 1 each have a minority voting age population of over 60% black and Hispanic, and over 50% black.").

Defendants pretend not to understand that Plaintiffs are pressing both theories (although Plaintiffs are only seeking summary judgment with respect to Blacks only). But Defendants' feigned ignorance is disingenuous. Defendants themselves successfully characterized Plaintiffs' Complaint as asserting a Black-only claim in opposing a preliminary injunction. *See* Def. Opp. Pl. Prelim. Inj. at 11–12, Dkt. No. 40 ("Plaintiffs' plan (when counting Blacks alone) does not create an effective majority-minority district.").

## II.

### THE SECOND *GINGLES* PRECONDITION

The undisputed evidence establishes that the Black community in Albany County is politically cohesive. The uncontradicted evidence in the record demonstrates that Black voters in the County tend to vote together for the same candidates.

First, Plaintiffs' expert Dr. Baodong Liu opined that the County's Black population is politically cohesive because Blacks usually vote for the same candidates. "A showing that a significant number of minority group members usually vote for the same *candidates* is one way

9

of proving the political cohesiveness necessary to a vote dilution claim." *Gingles*, 478 U.S. at 56

(emphasis added). Dr. Liu demonstrated that is the case in the County:

> In all 34 single-member district elections, the white support for the leading black candidate in an interracial race was on average 42.43%, while the black support for the same black candidate was on average 71.62%. In other words, the racial gap between the two racial groups is more than 29%. **Clearly, black voters preferred black candidates**, and this preference was not shared by the white voters in Albany County, New York between 1991 and 2011.

Supplemental Expert Report of Dr. Baodong (Paul) Liu, dated Dec. 20, 2011, at 6 ("Liu Supp. Rep."), Dkt. No. 231-25 (emphasis added); *see also* Supplemental Declaration of Dr. Baodong (Paul) Liu, dated May 1, 2012, ¶ 10, Dkt. No. 232-27. Specifically, Dr. Liu has found "that **African American voters [in Albany County] are 'politically cohesive'** in that they have overwhelmingly preferred African American candidates as their choices in biracial or multiracial elections involving black and white candidates." Liu Supp. Rep. at 6–7 (emphasis added). Defendants have offered no evidence whatsoever to dispute this evidence.[6]

---

[6] Defendants have previously conceded that Blacks in the County are politically cohesive, both at the preliminary injunction stage in this litigation and in agreeing to the consent decrees in prior litigation on the Legislature's districts following the 1990 and 2000 censuses. *See, e.g.*, Pl. MPSJ at 15–16 (noting that Defendants conceded Black political cohesion at the preliminary injunction stage); Def. Response to Pl. Statement of Material Facts ¶ 6, Dkt. No. 230-1 (admitting that the 1991 consent decree stated, *inter* alia, that "[t]he black population of Albany County is characterized by . . . political cohesion") (citing Consent Judgment and Decree ¶ 17, *NAACP v. Albany Cnty.*, No. 91-cv-1288 (N.D.N.Y. Nov. 13, 1991), Dkt. 231-1). To the extent that Defendants wish to change this position, principles of judicial estoppel should apply, not the doctrines of res judicata or law of the case. *See, e.g.*, *Mitchell v. Washingtonville Central Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999) ("Judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding." (internal brackets and quotations omitted)).

Defendants' concessions in the 1991 consent decree, for example, prevent them from arguing that the Black community is not cohesive. *New Hampshire v. Maine*, 532 U.S. 742, 751–52 (2001) (invoking judicial estoppel in context of a party's factual assertion in a previous consent decree involving same factual question because a consent decree is a judicial endorsement of a party's position). The Court may exercise its discretion to apply judicial estoppel in such a case based "typically" on "several factors," including (1) whether the

10

Second, Plaintiffs have adduced ample testimonial evidence from the County's Black community itself. This testimony is inextricably linked to the electoral and political processes. *See, e.g.*, Declaration of Joseph Gomez, dated April 29, 2013, ¶ 8, Dkt. No. 232-6 ("Gomez SJ Decl.") (In Albany County, the group "One Hundred Black Men [has] advocated on behalf of a number of minority candidates, including . . . Carolyn McLaughlin"); Declaration of Elaine Frazier, dated April 25, 2013, ¶ 8, Dkt. No. 232-10 ("I was actively involved in David Soares' campaign in 2004 for Albany County District Attorney."); Declaration of Samuel Coleman, dated July 15, 2011, ¶ 9, Dkt. No. 22 ("In the voting on the endorsement from the Democratic Committee [for candidate in the Third Legislative District], votes were cast generally along racial lines, with minority ward representatives voting for me and majority ward representatives voting for Ms. Maffia-Tobler [a white candidate]."); Deposition of Carolyn McLaughlin, taken Mar. 23, 2012 at 13:6–16, Garmyn Decl., Ex. 4; Deposition of Anne Pope, taken May 3, 2012 at 62:4–11, 63:5–24, Garmyn Decl., Ex. 5.

Defendants suggest that it is relevant that the Black community's preferred candidates, identified in Dr. Liu's analysis, ran as candidates for a variety of political parties. Def. Opp. at

---

changed position is "clearly inconsistent" with the earlier position; (2) whether the party changing positions persuaded a court to accept the earlier position, "so that judicial acceptance of an inconsistent position . . . would create the perception that either the first or the second court was misled"; and (3) whether the party changing positions "would derive unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51 (internal citations and quotation marks omitted). Defendants took the position in agreeing to the 1991 consent decree that the County's Black community is politically cohesive. This Court approved the consent decree, accepting that position. Defendants now seek to reverse that position in an attempt to weaken Plaintiffs' motion for summary judgment on the second *Gingles* precondition, which is undisputed in the factual record and is supported by the weight of evidence Plaintiffs have adduced. Therefore, the Court should invoke judicial estoppel "to protect the integrity of the judicial process" and prevent Defendants from contradicting themselves to gain the upper hand. *New Hampshire*, 532 U.S. at 749–51 (internal citations omitted).

11

12.  That fact is irrelevant.  Political cohesion does not require party cohesion.  A minority group can be and is politically cohesive when its members support the same *candidates*, regardless of their party affiliation.  *See Gingles*, 478 U.S. at 56 ("A showing that a significant number of minority group members usually vote for the same candidates is one way of proving the political cohesiveness necessary to a vote dilution claim"); *see also, e.g.*, Declaration of Nathan Lebron, dated Apr. 29, 2013, ¶ 8, Dkt. No. 232-7 ("Lebron SJ Decl.") (describing how he voted for and supported Alice Green as a mayoral candidate, despite the fact that she ran on the Green Party platform and he is a Republican); Declaration of Corey Ellis, dated Apr. 29, 2013, ¶¶ 4–6, Dkt. No. 232-12 ("Ellis SJ Decl.") (describing his candidacy for the Democratic Party nomination for mayor of the City of Albany, in 2009 and 2013, and his candidacy in the 2009 general election for mayor of the City of Albany as the Working Families Party candidate); Declaration of Lucille McKnight, dated July 14, 2011, ¶ 4, Dkt. 231-9 (noting that she has been a candidate on the Democratic Party line and the Working Families Party line).  Minority voters in the County believe that "the minority candidate is most likely to understand [their] needs," and as such, they "often prefer the minority candidate" regardless of party affiliation.  *See, e.g.*, Lebron SJ Decl., ¶ 7; Ellis SJ Decl., ¶ 30.

The political cohesion of the Black community is a discrete, non-controversial proposition, amply supported by the record before the Court.  Therefore, Plaintiffs are entitled to summary judgment on the second *Gingles* precondition with respect to the County's Black population.

Defendants argue that, because Plaintiffs did not move for summary judgment on the issue of *Black and Hispanic* political cohesion, Plaintiffs' motion for partial summary judgment on the issue of *Black-only* political cohesion should be summarily denied.  This is nonsense.

Blacks are politically cohesive, and they are politically cohesive with Hispanics. *See* Pl. Opp. at 15–34. Plaintiffs, however, seek partial summary judgment only with respect to the issue of Black cohesion. Defendants' opposition does not contradict the undisputed facts, and Defendants have previously conceded this point.[7]

## III.

## ALL PLAINTIFFS HAVE STANDING

As discussed more fully in Plaintiffs' opposition brief, all Plaintiffs have standing as minority voters in the County because Plaintiffs have asserted a packing claim. *See* Pl. Opp. at 12–15, Dkt. No. 228.[8]

---

[7] *See, e.g.*, Dkt. No. 230-1 ¶ 6; Consent Judgment and Decree ¶ 17, *NAACP v. Albany Cnty.*, No. 91-CV-1288 (N.D.N.Y. Nov. 13, 1991), Dkt. No 231-1; *cf. Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 281 F. Supp. 2d 436, 448 (N.D.N.Y. 2003) ("That defendants either did not, could not or chose not to rebut the evidence submitted by plaintiffs to date does not alter the fact that the evidence is uncontradicted.").

[8] Defendants mistakenly look to *Wright v. Dougherty County, Georgia*, 358 F.3d 1352 (11th Cir. 2004), Def. Opp. at 3, in support of their incorrect view of standing. The plaintiffs in *Wright*, however, did not bring a vote dilution or packing claim (as Plaintiffs do here), but rather a "one person, one vote claim," alleging that "population equality among voting units [was] not present." *Id*. at 1353, 1355 (citation omitted). Discussions of "under-representation" or "over-representation" with respect to total population figures between different districts are simply not applicable to the issue of whether a plaintiff who asserts a packing claim has standing under Section 2.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant partial summary judgment for Plaintiffs on the first and second *Gingles* preconditions.

Dated:  New York, New York  
        May 20, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ Mitchell A. Karlan  
Mitchell A. Karlan

mkarlan@gibsondunn.com  
200 Park Avenue  
New York, New York 10166-0193  
Telephone: 212.351.4000  
Fax: 212.351.4035  
Bar Roll No. 511874

DEROHANNESIAN & DEROHANNESIAN  
Paul DerOhannesian II  
derolaw@verizon.net  
677 Broadway, Suite 202  
Albany, New York 12207-2985  
Telephone: 518.465.6420  
Fax: 518.427.0614  
Bar Roll No. 104792

*Attorneys for Plaintiffs*