

PAUL DerOhannesian, Esq. (1953-2001)     PAUL DerOhannesian II, Esq.     Danielle R. Smith, Esq.

June 11, 2014

<u>VIA ECF</u>
Hon. Lawrence E. Kahn, U.S. District Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 424
Albany, New York 12207

Hon. Christian F. Hummel, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, New York 12207

    Re: *Pope v. Albany County*, 11-cv-00736 (LEK/CFH)

Dear Judge Kahn and Magistrate Judge Hummel:

    On Monday, June 9, 2014, more than *two years* after Defendants' expert disclosures were due under the Court's scheduling order, Defendants purported to serve Plaintiffs with an "Expert Disclosure Provided by James Monogan" (the "Monogan Report") without seeking leave of the Court. As explained herein, this report should be stricken based on Defendants' failure to seek leave. But even if Defendants had sought leave they would not be able to show good cause for the substitution or overcome the extreme prejudice Plaintiffs will suffer if Defendants are permitted to substitute a new expert for Dr. Ronald Keith Gaddie.

    Dr. Monogan's opinions and their bases differ significantly from those of Dr. Gaddie and will plainly require re-opening expert discovery. This will cause significant prejudice to Plaintiffs with trial just months away. What is more, Plaintiffs have proposed a far more equitable solution to the alleged unavailability of Dr. Gaddie—that the prior reports of both Dr. Gaddie and Plaintiffs' expert, Dr. Baodong Liu, be submitted as their direct testimony, and their depositions be submitted in lieu of cross examination. This solution would be costless and equitable to both sides. Defendants' decision to ignore this solution reveals the true reasons for their untimely substitution of Dr. Gaddie, which is to re-do his flawed analysis, produce new opinions, and avoid the implications of his damaging admissions during deposition. The Court should not permit Defendants' gamesmanship and the Monogan Report should be stricken. And if substitution is allowed, Defendants should be required to pay all costs and fees incurred by Plaintiffs to respond to the substitution.

DerOhannesian & DerOhannesian

**Hon. Lawrence E. Kahn, U.S. District Judge,**
**Hon. Christian F. Hummel, U.S. Magistrate Judge**
**June 11, 2014**
**Page 2**

### I.  Background

Defendants' expert disclosures from Dr. Ronald Gaddie on the *Gingles* preconditions were due on April 2, 2012.  *See* Dkt. 122.  On April 16, 2012, Plaintiffs served two rebuttal reports in response to Dr. Gaddie's report.  Plaintiffs subsequently deposed Dr. Gaddie on April 20, 2012 and March 4, 2013.

In March 2014, nearly two years after Defendants' expert disclosures were due, Defendants suddenly stated they were going to serve a "substitution notice" for Dr. Gaddie due to his alleged unavailability, and that they had a new expert who was prepared to "adopt" Dr. Gaddie's opinions.  *See* Dkt. 264 at 5.  Defendants never served any "substitution notice," and Plaintiffs objected to this improper attempt by Defendants to substitute a new expert well after the close of expert disclosures and discovery.  *See* Dkt. 267.  To address Dr. Gaddie's alleged unavailability, Plaintiffs offered that at trial Dr. Gaddie's and Dr. Liu's expert reports be offered as direct testimony, and their depositions be used in lieu of cross-examination.  *Id.* at 4.  Defendants did not respond to this proposed solution.

On June 9, 2014, without seeking leave of Court, Defendants sent counsel for Plaintiffs the Monogan Report by U.S. mail.  The attached redline shows the differences between Dr. Gaddie's report and that of Dr. Monogan.

### II.  Argument

Litigants must seek leave to modify a scheduling order, which may only be modified for "good cause."  Fed. R. Civ. P 26(a)(2); N.D.N.Y. L.R. 16.1(f); Fed. R. Civ. P. 16(b)(4).  Even if good cause is established, the prejudice to the non-moving party can justify denying the proposed amendment to a scheduling order.  *See S.E.C. v. Aragon Capital Mgmt., LLC*, No. 07 Civ. 919, 2010 WL 4456302, at *2 (S.D.N.Y. Oct. 28, 2010); *see also Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000) (noting that post-discovery motion to allow additional expert testimony should consider prejudice).  Here, Defendants have failed to seek leave of the Court to modify the scheduling order, and the Monogan Report should be stricken on that basis alone.  *See Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 06 cv 1352, 209 WL 5873112, at *3–4 (D. Conn. Feb. 23, 2009) (granting motion to strike supplemental expert report because it was an "untimely self-serving supplementation [that] is nether substantially justified nor harmless" which sought to merely "bolster its earlier submission").

Even if Defendants had sought leave, however, they could not show good cause and substitution would be prejudicial, as addressed below.

DerOhannesian & DerOhannesian

Hon. Lawrence E. Kahn, U.S. District Judge,
Hon. Christian F. Hummel, U.S. Magistrate Judge
June 11, 2014
Page 3

A.   **Defendants Cannot Establish Good Cause**

As detailed in Plaintiffs' April 28, 2014 letter to the Court, Defendants cannot show good cause for the substitution of Dr. Gaddie, as required. *See* Dkt. 267. Far from being retired or "unavailable" for health reasons, Dr. Gaddie is the chair of the Department of Political Science and teaches a full course load at the University of Oklahoma. The primary factor in showing good cause is diligence, which Defendants cannot show even if their unsupported excuses for substituting Dr. Gaddie were credited. *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012). Defendants first claimed Dr. Gaddie had health problems in May 2012, one month after his first deposition in April, following which Defendants attempted to change many of his answers wholesale in an "errata" sheet. *See* Dkt. 132 at 3; Dkt. 154. They again raised his purported unavailability in March 2014, after this Court denied their motion for summary judgment. *See* Dkt. 264. Yet they waited until June 2014—long after the close of expert discovery, after summary judgment and just months before trial—to serve a new expert report, and they did so without seeking leave of court. This conduct is anything but diligent.

B.   **Substitution Will Prejudice Plaintiffs**

Even if Defendants could show good cause, substitution should be denied because of the substantial prejudice it will cause Plaintiffs. Defendants represented that their new expert would simply "adopt" Dr. Gaddie's opinions, presumably in an attempt to avoid addressing the untimeliness of their substitution while smuggling in a new expert who would not be tarred with the damaging admissions Dr. Gaddie made at his deposition. But Dr. Monogan does not even pretend to "adopt" Dr. Gaddie's opinions. Instead, he admits that his opinions are based on a review of all reports by Dr. Liu and Dr. Gaddie in this litigation. Dr. Monogan uses new election results, relies on different data, abandons conclusions proffered by Dr. Gaddie, applies additional methodology, and generally offers entirely new opinions regarding the *Gingles* preconditions. Among these changes, the Monogan Report:

- introduces opinions that rely on election results from 2012 and 2013, even though Dr. Gaddie and Plaintiffs' expert, Dr. Liu, relied solely on elections pre-dating 2012;
- defines the relevant minority population as non-Hispanic DOJ Black voters, despite Dr. Gaddie's use of multiple definitions of minority;
- produces a set of underlying data that appears to differ from the data provided by Dr. Gaddie;
- does not opine on the first *Gingles* precondition, even though Dr. Gaddie offered extensive opinions and rebuttals to Plaintiffs' expert's conclusions on this topic;

DeROHANNESIAN & DeROHANNESIAN

**Hon. Lawrence E. Kahn, U.S. District Judge,**
**Hon. Christian F. Hummel, U.S. Magistrate Judge**
**June 11, 2014**
**Page 4**

- introduces a new analysis of "estimated turnout," a metric which Dr. Gaddie did not offer; and
- provides rebuttals to analyses of specific elections that Dr. Liu opined on, which Dr. Gaddie failed to address.

Even if Dr. Monogan had "adopted" Dr. Gaddie's opinions as Defendants claimed, permitting substitution at this late stage will be prejudicial to Plaintiffs, who have spent time and money to depose Dr. Gaddie and respond to his opinions, and who have had no similar opportunity to cross-examine and test Dr. Monogan's opinions.  But the Monogan Report exacerbates this prejudice by significantly changing and expanding the scope of Dr. Gaddie's opinions and the facts on which they rely.  It will require new depositions, new expert reports, and significant expenditure of attorney time and resources with trial just months away.  But the prejudice is not just monetary.  Plaintiffs will be required to formulate a new trial strategy based on these changes with no opportunity to resolve new issues through summary judgment, and they will be required to do so in just months, along with all of the other trial preparations necessary in accordance with this Court's October 7, 2014 trial submission deadline.  *See* Dkt. 266.  Defendants should not be permitted to "redraw[] the boundaries of the case" at this late stage. *Softel Inc. v. Dragon Med. & Sci. Commcn's, Inc.*, 118 F.3d 955, 962 (2d Cir. 1997).

To paraphrase an old adage, you go to trial with the expert you have, not the expert you might wish for.  Defendants cannot simply elect to cut and run from their expert on the eve of trial and whitewash Dr. Gaddie's flawed opinions and damaging deposition admissions with the Monogan Report.  See *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003) (holding party seeking substitution "does not get a 'do-over'").  If the Court does allow substitution, Defendants should be required to pay Plaintiffs' costs caused by the substitution, including attorneys' fees and expert fees.  *See Dunbar v. Ballymore*, No. 88-CV-108, 1991 WL 273302, at *2 (N.D.N.Y. Dec. 19, 1991); Fed. R. Civ. P. 37(b)(2)(C).

### III.  Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the Monogan Report and preclude Defendants from substituting any expert for Dr. Gaddie at this late stage.  Instead, the Court should adopt Plaintiffs' proposal that each side submit the existing reports of Dr. Gaddie and Dr. Liu as their direct testimony, and submit deposition designations in lieu of cross-examination.  This would be a more equitable resolution of this dispute and would avoid prejudice to either side.

To the extent Defendants are permitted to substitute their expert report at this late stage, they should bear the costs of reopening fact and expert discovery, including paying any

**DerOhannesian & DerOhannesian**

**Hon. Lawrence E. Kahn, U.S. District Judge,**
**Hon. Christian F. Hummel, U.S. Magistrate Judge**
**June 11, 2014**
**Page 5**

attorneys' fees incurred due to the substitution and fees for Plaintiffs' expert to prepare a rebuttal report. *See Dunbar*, 1991 WL 273302 at *2.

     As always, we appreciate the Court's consideration.

                                  Sincerely,

                                  /s/ Paul DerOhannesian II
                                  Paul DerOhannesian II

                                  Mitchell A. Karlan

                                  *Attorneys for Plaintiffs*

Attachment

cc:     All counsel of record, *via ECF*