

DANIEL P. McCOY
COUNTY EXECUTIVE

THOMAS MARCELLE
COUNTY ATTORNEY

EUGENIA KOUTELIS CONDON
DEPUTY COUNTY ATTORNEY

JAMES GREEN
ASSISTANT DEPUTY COUNTY ATTORNEY

EVELYN A. KINNAH
ASSISTANT DEPUTY COUNTY ATTORNEY

COUNTY OF ALBANY
OFFICE OF THE COUNTY ATTORNEY
COUNTY OFFICE BUILDING
112 STATE STREET, ROOM 1010
ALBANY, NEW YORK 12207
PHONE: (518) 447-7110   FAX: (518) 447-5564
www.albanycounty.com

SENIOR ASSISTANT COUNTY ATTORNEY
ALBERT DINGLEY        JEFFREY KENNEDY
GREGORY A. RUTNIK   D. STEVE RAHMAS
TRACY A. MURPHY     WILLIAM P. ANDREWS

ASSISTANT COUNTY ATTORNEY
CATHERINE E. BROWN   CARLY MOUSSEAU
JOSEPH ALUND               EDWARD STANO
ADAM G. GIANGRECO   JILLIAN E. FAISON
PATRICK J. COLLINS        LISABETH JORGENSEN

July 2, 2014

VIA ECF

Hon. Lawrence E. Kahn
United States District Court Judge
James T. Foley Courthouse
445 Broadway, Room 424
Albany, NY  12207

      Re:    Pope v. County of Albany, 11-CV-736 (LEK/CFH)

Dear Judge Kahn:

      We represent the defendants in this matter.   Rather than submit yet another motion on pending discovery issues, we submit this letter to address plaintiffs' responses to defendants' letter- motion dated March 11, 2014, regarding defendants' notice to substitute experts; plaintiffs' late and improper document response; and depositions of new plaintiffs (Dkt. No. 264).  We also address plaintiffs' letter- motion to preclude the depositions of new plaintiffs (Dkt. No. 263), and plaintiffs' letter- motion dated June 11, 2014, to strike defendants' notice to substitute experts (Dkt. No. 272).

## PROCEDURAL BACKGROUND

      In a Memorandum Order and Decision dated January 28, 2014, this Court granted in part plaintiffs' motion for summary judgment, denied defendants' cross-motion for summary judgment, and granted leave for plaintiffs to file an amended complaint adding three new plaintiffs and for the conducting of their deposition within 30 days. (Dkt. No. 253).   In a letter dated January 29, 2014, plaintiffs requested a conference with Judge Hummel to "address the schedule for the remainder of the case." (Dkt. No. 255).   The

conference initially set for February 27, 2014 (Dkt. No. 257) was rescheduled for March 12, 2014 (Dkt. No. 260).

In a letter-motion dated March 11, 2014, plaintiffs sought to preclude defendants from taking the depositions of new plaintiffs (Dkt. No. 263). In a letter-motion dated March 11, 2014, defendants provided notice of the substitution of experts based on medical reasons, and objections to plaintiffs' late document production and depositions of new plaintiffs (Dkt. No. 264).

In an Order dated March 12, 2014, this Court held that the letter-motions would be held in abeyance pending the outcome of settlement discussions (Dkt. No. 265). Despite this Court's extensive efforts over the past several months, and the apparent progress toward settlement that provided for the creation of an additional minority-majority district, plaintiffs' attorneys abruptly withdrew from further settlement discussions.

In an Order dated June 25, 2014, this Court held that the pending letter-motions (Dkt. Nos. 263 and 264) are no longer held in abeyance (Dkt. No. 281).

## DEFENDANTS' LETTER-MOTION TO SUBSTITUTE EXPERTS

Upon receipt of this Court's summary judgment motion decision, defendants contacted Dr. Ronald Keith Gaddie, defendants' expert on racially polarized voting, regarding his trial availability. Defendants were informed by Dr. Gaddie that he could not provide expert litigation services for medical reasons.

In considering a request to substitute a new expert after the close of discovery, courts generally consider whether good cause has been shown under Fed.R.Civ.P. 16. See In re DG Acquisition Corp., 151 F.3d 75 (2nd Cir., 1998) ("[a] trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion"). In Chappel v. City of Cleveland, 2007 WL 3353901 (N.D.Ohio, 2007), the Court allowed expert substitution on health grounds. The Court relied on a physician's report which opined that due to stress caused by the expert's work on police practice cases, the expert should "cease all work on such cases (including this one), and to take other measures to control his stress." Id. at *1. Rejecting the opposing party's argument that substitution was prejudicial because its efforts had been based on the original expert's report, the Court held that it "simply cannot ignore the [moving party's] uncontested evidence relative to the health concerns raised by [expert] and his doctor." Id.

Here, in his letter dated April 23, 2014, attached hereto as Exhibit A, Dr. Stephen E. Connery opines that Dr. Gaddie's workload contributed to hypertension, physical exhaustion, stress, and anxiety and opines that Dr. Gaddie's continuing role as a litigation expert would be a threat to his health and well-being. In his letter dated April 21, 2014, attached hereto as Exhibit B, Dr. Gaddie confirms that he has ceased work as a consulting expert due to his debilitating health conditions.

Unable to challenge the medical justification for withdrawal, in their letter dated April 28, 2014 (Dkt. No. 267), plaintiffs embark upon an ad hominem attack on Dr. Gaddie and improperly question the medical basis for his withdrawal. As detailed in his accompanying declaration dated June 12, 2014, attached hereto as Exhibit C, Dr. Gaddie has followed his physician's directions by limiting his workload to 40 hours per week of academic and related activities at his university. Dr. Gaddie has ended all expert litigation services for medical reasons. No matter how plaintiffs may seek to distort the facts, it remains beyond cavil that Dr. Gaddie is medically unable to continue as a litigation expert.

Plaintiffs also suggest that substitution based upon medical grounds is a ruse and that defendants were motivated to change experts because of alleged flaws in Dr. Gaddie's opinion that were identified during his deposition. Put simply, this Court disagreed with plaintiffs' assertions and held that a follow-up deposition regarding changes in Dr. Gaddie's transcript would be restricted to one-hour (Dkt. No. 156).

With notice of Dr. Gaddie's unavailability due to health concerns, defendants promptly searched for and located Dr. Jamie Monogan, as a substitute expert on racially polarized voting. In his Report dated June 4, 2014, attached hereto as Exhibit D (without CD exhibit), Dr. Monogan confirmed Dr. Gaddie's expert opinion that recent voting in Albany County is not racially polarized. The next day, on June 5, 2014, a copy of Dr. Monogan's expert report was served on plaintiffs' counsel as a courtesy and to avoid any delay in substituting experts.

In their letter-motion dated June 11, 2014, plaintiffs argue that the Monogan report should not be allowed because this Court's leave was not obtained. Again, as with their mischaracterization of defendants' professional courtesy in accommodating plaintiffs' request for rescheduling the depositions, plaintiffs purposefully distort defendants' courtesy service of the Monogan report. Back in March 2014, defendants notified plaintiffs and this Court of an intention to substitute experts for medical reasons. This motion to substitute experts was held in abeyance by Court order pending the conclusion of settlement discussions and was immediately filed after this Court lifted the stay.

Plaintiffs also contend that the Monogan report should not be allowed because it uses bi-racial contests that took place after the April 2012 Gaddie report. Dr. Baodong Liu, plaintiff's expert, has stated his intention to supplement his report as more bi-racial contests are conducted. Indeed, in nothing short of selective memory, plaintiffs ignore the fact that Dr. Liu submitted multiple reports starting with his initial failure to consider significant bi-racial contests (including black candidate successes in bi-racial elections for District Attorney, Common Council President, City Treasurer and others contests). Dr. Liu compounded this error by basing his analysis on wrong population figures for Albany County and City of Albany elections. Due to these errors and other fundamental mistakes, Dr. Liu has submitted a total of five expert reports (July 15, 2011, December 20, 2011, April 16, 2012, May 1, 2012, January 20, 2013) which has caused defendants to incur unnecessary litigation expenses and expert fees to address.

Defendants have repeatedly stated that the substitution of experts would allow plaintiffs to depose Dr. Monogan and that they will make him available at a mutually convenient date, time, and location. The parties have cooperated in the past by holding depositions in New York City for experts based in Utah and Oklahoma.

Moreover, defendants served the Monogan report back on June 5th, the day after it was completed. At last count, plaintiffs have 11 attorneys, spread over two law firms, and should, by now, have had ample opportunity to review the Monogan report and consult with their own expert, Dr. Liu. Defendants also would consent to allow Dr. Liu the opportunity to submit a rebuttal report as he has done in the past.

For these reasons, defendants respectfully request the entry of an order allowing defendants to substitute Dr. Monogan as an expert in lieu of Dr. Gaddie and allow Dr. Monogan's report.

## DEFENDANTS' LETTER-MOTION REGARDING PLAINTIFFS' DOCUMENT PRODUCTION

On Friday, February 21, 2014, without the Court's permission and inconsistent with the claim that the matter was trial ready, plaintiffs served Plaintiffs' Fourth Production of Documents, consisting of hundreds of pages of documents pertaining to the City of Albany's redistricting of wards that occurred from March 2012 through November 2012. This late production purports to be responsive to Defendants' First Document Demand dated September 30, 2011, and includes plans, emails, notes of public hearings, and other materials pertaining to the City redistricting effort in 2012.

There is no question that plaintiffs were aware of these documents years ago. Indeed, plaintiffs referenced the City's redistricting efforts in their March 2013 motion for summary judgment (Dkt. No. 210, p. 17 n.13; Dkt. No. 228, pp. 28, 30; Dkt. No. 229, p. 21 ¶46).

The Federal Rules of Civil Procedure and this Court's order set the parameters for litigation strategy, including decisions regarding the retention of experts and conducting discovery. With this late production, plaintiffs are attempting to radically change and widen the scope of this litigation by introducing evidence of another governmental unit's redistricting effort. And if, as plaintiffs argue, the production was proper because some documents were "publically available," see Dkt. No. 263 at p.2, that novel argument does not relieve plaintiffs of the obligation of timely disclosure. Simply put, this one-sided production unfairly and belatedly expands this litigation.

Plaintiffs' suggestion that defendants did not object in writing to this production is incredulous at best. In an email dated February 4, 2014, the next business day after the Friday afternoon document dump, defendants objected to the timing and propriety of this production and stated that the matter would be discussed at the then-scheduled February 27th conference. After the conference was rescheduled to March 12th, defendant submitted a letter dated March 5, 2014 (Dkt. No. 263-2 at p.2) raising the objection and followed-up with defendants' letter-motion dated March 11, 2014 (Dkt. No. 264). In any event, plaintiffs' document dump was a legal nullity when served. As such, plaintiffs' assertion that there was an untimely rejection of this blatantly late production is baseless.

Finally, if this belated production is allowed, defendants should be allowed additional discovery on political cohesion. As the Court will recall, at the preliminary injunction hearing, plaintiffs' expert conceded that he was not an expert on either political or social cohesion. Given the poor quality of plaintiffs' disclosed evidence and expert proof on cohesion, defendants elected not to retain an expert on this issue. Given plaintiffs' reliance upon these additional documents, defendants should be given a reasonable period of time for additional discovery and retention of an expert.

## DEFENDANTS' LETTER-MOTION REGARDING THE DEPOSITIONS OF NEW PLAINTIFFS

In their letter-motion dated March 11, 2014 (Dkt. No. 263), plaintiffs curiously argue that defendants "waived" taking the depositions of new plaintiffs Alfonso, Frazier and Davis by not holding them within 30 days of this Court's Memorandum-Decision and Order. Plaintiffs are improperly using defendants' professional courtesy for an unjustified litigation advantage and as a distraction from their own discovery failures.

On the same day as this Court's decision, counsel exchanged emails regarding scheduling deposition of the new plaintiffs within the 30-day window, and, by email dated January 30, 2014, proposed February 26th and 27th for the depositions.  Plaintiffs' counsel responded that plaintiff Alfonso would be out of the country from February 9th through February 28th, and requested a date after his return.  Plaintiffs later emailed defendants with a "thank you" for accommodating this request and scheduled the deposition of plaintiff Alfonso and Frazier for March 11.  Counsel agreed to hold the deposition of plaintiff Frazier on February 26.  After lengthy efforts to schedule the deposition of plaintiff Davis, plaintiffs abruptly announced that she had withdrawn.  Of course, plaintiffs never complained about defendants' accommodating plaintiffs' requests for scheduling the depositions until filing the present letter-motion asserting waiver of the depositions.  Simply stated, plaintiffs' assertions are ill-founded.

Despite plaintiffs' representations to this Court that adding the new plaintiffs would cause "minimal and non-prejudicial" additional discovery (Dkt. No. 226-1, p.5), the opposite is true.  On Friday, February 21, 2014 – well beyond this Court's discovery deadline and without justification – plaintiffs served a voluminous document production consisting of the 2012 proceedings of the City of Albany's redistricting of its Common Council.  These documents showed that new plaintiff Alfonso, as Chairman of the City's Redistricting Committee, and new plaintiff Frazier, as Vice-Chairman of this Committee, were advocates for the coalition of Hispanic and black voters, and caused the City committee to use this coalition in drawing the new Common Council wards.  Simply put, the belated service of these materials, years after the close of discovery, was unfair, prejudicial, and inexcusable.

Given the document dump's impact on the scope of scheduled depositions, on Monday February 24, 2014, defendants informed plaintiffs that the Frazier deposition scheduled for that week would be rescheduled to enable this Court to determine the propriety of plaintiffs' document dump at the February 27th Court conference (later adjourned to March 12).  Under the circumstances, it is beyond reason for plaintiffs to suggest that defendants waived the depositions of the new plaintiffs.  The initial rescheduling of the depositions was at the request of plaintiffs' attorneys who later hampered this right by a last minute and improper document dump.

Thank you for your kind consideration of this letter.

Respectfully submitted,

OFFICE OF THE ALBANY COUNTY ATTORNEY

        ____s/ Thomas Marcelle_____
       By: Thomas Marcelle
         Bar Roll # 102117

       MURPHY, BURNS, BARBER & MURPHY, LLP

        ____s/ Peter G. Barber_____
       By: Peter G. Barber

cc: Paul DerOhannesian II, Esq. (via ECF)
   Mitchell Karlan, Esq. (via ECF)