UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
ANNE POPE et al.,                                           :
                                                            :
                Plaintiffs,                          :
                                                            :
    -against-                                              :  No. 11-cv-0736 (LEK) (CFH)
                                                            :
ALBANY COUNTY, et al.,                                      :
                                                            :
                Defendants.                          :
------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR JUDGMENT AS A MATTER OF LAW**

        In order to establish a claim under Section 2 of the Voting Rights Act, a plaintiff must satisfy the three "Gingles" factors by showing that (1) the minority community is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) the minority community is politically cohesive; (3) the white majority votes sufficiently as a bloc to enable it, absent special circumstances, usually to defeat the minority community's preferred candidate; and (4) under the totality of the circumstances, Local Law C denies the minority community an equal chance to participate in the electoral process. *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). Because there will not be trial proceedings on January 27, 2015, as originally planned, and because the trial record is therefore closed, Plaintiffs now bring this motion in writing instead of orally. Plaintiffs seek judgment that Defendants violated Section 2 both as to Blacks only and as to the combination of Blacks and Hispanics.

        Because Plaintiffs carried their burden of proof on each of these preconditions at trial, and Defendants offered virtually no rebuttal evidence, Plaintiffs seek judgment as a matter of law under Rule 52(c) of the Federal Rules of Civil Procedure on the first, second, and third *Gingles* preconditions. *See* Fed. R. Civ. P. 52(c) (providing that "[i]f a party has been fully heard on an

issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim . . . that, under the controlling law, can be maintained . . . only with a favorable finding on that issue.").

A.  **Plaintiffs Are Entitled to Judgment as a Matter of Law on the First *Gingles* Precondition as to Blacks and Hispanics**

This Court already granted Plaintiffs' motion for summary judgment on the first *Gingles* precondition with respect to the Black-only claim, finding that "Plaintiffs have show[n] a majority in a compact area by providing several illustrative plans, each creating five districts in which non-Hispanic black residents comprise majorities.  Furthermore, they have adduced evidence that the black population as a whole is geographically compact."  *Pope v. Cnty. of Albany*, No. 11-cv-736, 2014 WL 316703, at *12 (N.D.N.Y. Jan. 28, 2014) (internal citation omitted).  It follows that the combined Black and Hispanic minority community is sufficiently large and geographically compact to satisfy the first *Gingles* factor.  *See id.* at *14 n.26 ("A finding that a *subset* of a minority group is sufficiently numerous and geographically compact to form a majority of the proposed number of MMDs necessarily implies that *all* members of the minority group can form a majority within the same geographic area.").  As Plaintiffs have shown, the combined Black and Hispanic population exceeds 50 percent of the proposed districts, and the combined minority community is concentrated in a distinct area of the City of Albany.  Defendants did not contest this or present any evidence to the contrary at trial.  Plaintiffs are thus entitled to judgment as a matter of law that Blacks and Hispanics combined satisfy the first *Gingles* precondition.

B.  **Plaintiffs Are Entitled to Judgment as a Matter of Law on the Second *Gingles* Precondition on Both of Their Claims**

The second *Gingles* precondition requires that the minority group in question be politically cohesive.  Overwhelming evidence demonstrates both that (1) the Black community in

Albany County is cohesive with itself and (2) that Blacks and Hispanics in Albany County are cohesive. Indeed, this Court has already found as such in prior litigations. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 281 F. Supp. 2d 436, 449 (N.D.N.Y. 2003); *see also* P-20, Consent Judgment and Decree, *NAACP v. Albany Cnty.*, No. 91-cv-1288 (N.D.N.Y. Nov. 13, 1991). Furthermore, Albany County has treated the Black and Hispanic populations as politically cohesive for the purposes of Section 2 consistently for the past thirty years. In the 1991 consent decree, the County "stipulated that the black and Hispanic groups in the County were cohesive and should be considered as one group for purposes of the Voting Rights Act." *Arbor Hill I*, 2003 WL 21524820, at *9; P-20, Consent Judgment and Decree, *NAACP v. Albany Cnty.*, No. 91-cv-1288 (N.D.N.Y. Nov. 13, 1991) ¶ 17 ("The black population of Albany County is characterized by . . . political cohesion."). In the *Arbor Hill* litigation, the County again treated blacks and Hispanics as politically cohesive. Subsequent to Judge Mordue's opinion holding that the black and Hispanic communities were politically cohesive, *Arbor Hill II*, 281 F. Supp. 2d at 448 (finding this was "amply supported by the record"), the County "included in its calculations of the minority populations in the majority/minority districts not only blacks but Hispanics and those of mixed race who included either black or Hispanic as one of their races." *Arbor Hill IV*, 289 F. Supp. 2d at 272; *see also* P-262 (noting population figures for the plan agreed-upon in the *Arbor Hill* consent decree).

And the County conceded as much during this redistricting cycle. The undisputed evidence adduced at trial shows that Thomas Marcelle instructed the Redistricting Commission and its mapmaker, John Merrill, on what criteria to use in drawing the majority-minority districts, and that he publicly announced that the Commission was treating Blacks and Hispanics as cohesive. P-10 3:43–4:22; P-304 4:17–5:6. Merrill also told a member of the Redistricting

3

Commission, Lucille McKnight, that he was using a combined definition. *See* P-111; Trial Tr. 605:13–15, 727:2–8 (McKnight testifying she was under the impression Merrill was including Hispanics).[1]

At trial, Plaintiffs presented ample statistical and anecdotal evidence of cohesion. Dr. Liu testified "that African American voters [in Albany County] are 'politically cohesive' in that they have overwhelmingly preferred African American candidates as their choices in biracial or multiracial elections involving black and white candidates." Trial Tr. 269:11–13; *see* P-91 at 6–7. Plaintiffs' demographic expert Bill Cooper testified that there are significant similarities between the socioeconomic status of the Black and Hispanic populations in the County and City, which also lag behind the white community's socioeconomic status, based off data from the American Community Survey. *See* P-261; P-262; Trial Tr. 913:11–919:17, 925:1–930:17. Plaintiffs' fact witnesses, including Ladan Alomar, Carolyn McLaughlin, Lucille McKnight, Elaine Fraizer, Anne Pope, Vicente Alfonso, Joseph Gomez, and Samuel Coleman testified that the Black and Hispanic communities in Albany County live in the same neighborhoods, go to the same churches, share similar concerns regarding job opportunities, education, health care, and social services, and support and work on campaigns for the same political candidates. In particular, Anne Pope testified that Blacks and Hispanics attend similar churches in Albany and that these churches provide a political outlet for the minority community. Trial Tr. 458:5–460:25. Plaintiffs' witnesses also testified about the many community organizations and events that unite the Black and Hispanic communities, including Centro Cívico, the NAACP, Black Fest, Latin Fest, Somos el Futuro, ¡Sí, Se Puede! Latino Youth Conference, the Black and Latino

---

[1] The evidence adduced at trial also shows that despite these public statements, Marcelle and Merrill secretly used the disfavored "single race black" definition to draw the MMDs, as well as required them to have ultra-high "majority" thresholds of over 60%, as Shawn Morse, the Chair of the Redistricting Commission, testified. At this point, it is only possible to speculate about what the outcome of the redistricting process would have been had these facts not been hidden from public view.

4

Achievers Program, the Capital Area Urban League, One Hundred Black Men, the Greater Capital Region Minority Business Association, the Center for the Elimination of Minority Health Disparities, and the Black, Puerto Rican, Hispanic and Asian Legislative Caucus. *See Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, No. 03-CV-502, 2003 WL 21524820, at *9 (N.D.N.Y. July 7, 2003) (cohesion can be shown "by testimony from leaders of the minority group attesting to "the ways in which [the group has] joined together to further each other's political and social interests," including joint participation in events and projects of interest).

Defendants presented no expert testimony or factual evidence that would contradict this strong evidence of cohesion, instead attempting to point to minor variations between individual members of the Black and Hispanic communities, none of which was sufficient to countervail this powerful statistical and anecdotal evidence. Indeed, Defendants' own witness, Mert Simpson, testified that the Black and Hispanic communities share similar concerns, live in the same neighborhoods, and have widely supported his campaigns. *See* Trial Tr. 1573:2–21. Moreover, a minority community need not vote as "identical twins" in order to be cohesive. Rather, "[a] showing that a significant number of minority group members usually vote for the same candidates is one way of proving the political cohesiveness necessary to a vote dilution claim." *Gingles*, 478 U.S. at 31.

In short, the unrefuted evidence shows that Blacks, and Blacks and Hispanics, "share[] the same beliefs, ideals, principles, agendas, and concerns, such that they generally unite behind or coalesce around particular candidates and issues." *Rodriguez v. Harris Cnty.*, 964 F. Supp. 2d 686, 754 (S.D. Tex. 2013) (internal quotation marks omitted). Thus, both Blacks as a group and Blacks and Hispanics, are politically cohesive. Plaintiffs are therefore entitled to judgment as a

matter of law that the Black community is cohesive with itself, and that Blacks and Hispanics are cohesive in Albany County.

C. **Plaintiffs Are Entitled to Judgment as a Matter of Law on the Third *Gingles* Precondition on Both of Their Claims**

The third *Gingles* precondition requires Plaintiffs to show that the white majority votes sufficiently as a bloc to enable it, absent special circumstances, "usually to defeat" the minority community's preferred candidate. *Gingles*, 478 U.S. at 51. White bloc voting occurs when the votes are correlated such that "there is a consistent relationship between the race of the voter and the way in which the voter votes, or to put it differently, where Black voters and white voters vote differently." *Id*. at 53 & n.21.

Plaintiffs presented unrefuted evidence at trial that minority-preferred candidates are usually defeated in Albany County, absent special circumstances. Dr. Liu testified that 29 of the 46 elections analyzed, or 63.04%, revealed a pattern of racial polarization, and concluded that "the elections that took place in Albany, New York, over the last two decades exhibited clear pattern and the pattern can be described as . . . whites formed a voting bloc that voted differently [than the Black community]. In this case they preferred white candidates in biracial elections and the existence of the racially-polarized voting indeed led to typically defeat of [Black-preferred] candidate." Trial Tr. 284:18–23, 268:15–269:6. In instances in which minority-preferred candidates did win, special circumstances were present nearly every time: those candidates were either appointed to their positions, ran as incumbents, ran in non-competitive elections, received a one-time electoral boost from the 2003 VRA case; or a third political party, such as the Working Families Party, influenced the election. Trial Tr. 419:1–424:8 and 278:22–279:19 (Dr. Liu describing special circumstances in individual elections), 1758:7–1759:9. Defendants presented *no* statistical evidence to refute this. Instead, Defendants offered the

testimony of Matthew Clyne, who attempted to provide his own armchair analysis of the elections to explain away minority defeats while trumpeting minority wins.  This improper opinion testimony (which was not probative in the first place given Clyne's admission that he had no information about how minorities actually voted) has since been stricken (Dkt. 403 at 8), and Defendants thus have no evidence to rebut Plaintiffs' proof of racial polarization.  Plaintiffs are therefore entitled to judgment as a matter of law on the third *Gingles* precondition.

## II.  CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court grant judgment as a matter of law for Plaintiffs on the first, second, and third *Gingles* preconditions for both of Plaintiffs' claims.

Dated:   New York, New York
            January 22, 2015

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

 /s/ Mitchell A. Karlan
Mitchell A. Karlan

mkarlan@gibsondunn.com
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035
Bar Roll No. 511874

DEROHANNESIAN & DEROHANNESIAN
Paul DerOhannesian II
paul@derolaw.com
677 Broadway, Suite 707
Albany, New York 12207
Telephone: 518.465.6420
Fax: 518.427.0614
Bar Roll No. 104792

*Attorneys for Plaintiffs*