UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANNE POPE, *et al.*,

                              Plaintiffs,

        -against-                                            1:11-cv-0736 (LEK/CFH)

COUNTY OF ALBANY; and ALBANY
COUNTY BOARD OF ELECTIONS,

                              Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

        This matter returns to the Court on Plaintiffs' Motion for attorneys' fees.  Dkt. Nos. 438

("Motion"); 439 ("Memorandum").  In a Memorandum-Decision and Order filed on March 24,

2015, the Court found that Defendants County of Albany (the "County") and Albany County Board

of Elections (together, "Defendants") had violated Section 2 of the Voting Rights Act ("VRA") and

ordered Defendants to pay Plaintiffs attorneys' fees and costs in an amount to be determined at a

later date.  Dkt. No. 427 ("March Order").  The instant Motion ensued.  For the following reasons,

the Court awards Plaintiffs $1,602,886.75 in attorneys' fees and $127,532.05 in costs.

## II.     BACKGROUND

        The Court presumes the parties' familiarity with the facts and history of this case, and recites

only those facts necessary to the resolution of the pending Motion.

        Plaintiffs filed a Complaint in June 2011, alleging that the VRA required the creation of an

additional majority-minority district ("MMD") in the County Legislature following population shifts

reflected in the 2010 Census.  Dkt. No. 1 ("Complaint").  Shortly thereafter, Plaintiffs filed a

Motion for preliminary injunction to prevent the County from holding elections under the Legislature's operative redistricting plan. Dkt. No. 12 ("PI Motion"). The Court held a hearing on the PI Motion on August 3 and 4, 2011. Dkt. Nos. 64; 65. On August 18, 2011, the Court denied the PI Motion, holding that Plaintiffs failed to prove that they were likely to succeed on the merits of their claim. Dkt. No. 76. Plaintiffs filed an interlocutory appeal. Dkt. No. 78 ("Appeal"). The Second Circuit found error in the Court's requirement of something more than a simple majority at the first step of Section 2 analysis, but ultimately affirmed the Court's decision. Pope v. Cty. of Albany, 687 F.3d 565 (2d Cir. 2012). On January 5, 2012, Plaintiffs filed an Amended Complaint. Dkt. No. 100 ("Amended Complaint").

The parties engaged in extensive discovery and settlement negotiations. See Dkt. Nos. 440 ("Karlan Declaration") ¶¶ 12-14, 17-21; 441 ("DerOhannesian Declaration") ¶¶ 17, 29-30, 46; 447-1 ("Marcelle Declaration") ¶ 5; see also generally Docket. In March 2013, the parties filed Cross-Motions for summary judgment. Dkt. Nos. 209 ("Plaintiffs' Summary Judgment Motion"); 214 ("Defendants' Summary Judgment Motion"). Plaintiffs also filed a Motion for leave to file a second amended complaint due to the withdrawal of their only Hispanic plaintiff. Dkt. No. 226. In a Memorandum-Decision and Order dated January 28, 2014, the Court denied Defendants' Motion for summary judgment and granted in part Plaintiffs' Motion for partial summary judgment, and allowed Plaintiffs to file a Second Amended Complaint. Pope v. Cty. of Albany, No. 11-CV-0736, 2014 WL 316703 (N.D.N.Y. Jan. 28, 2014) (Kahn, J.).

On December 2, 2014, a settlement agreement was filed, which would have put into place various electoral and redistricting reforms as well as creating a fifth MMD. Dkt. No. 360 ("Settlement Agreement"). However, this settlement was never approved by the Albany County

Legislature, an express condition of the settlement.  Id. ¶ 23; see also Dkt. No. 368 (stating that the

Albany County legislature had not approved the settlement by December 2, and thus the agreement

was no longer in effect).

The Court held an eleven-day bench trial between November 6, 2014 and January 13, 2015.

Dkt. Nos. 336 ("Opening Transcript"); 406-16 ("Trial Transcript").  On December 22, 2014,

Plaintiffs' filed a second Motion for a preliminary injunction.  Dkt. No. 372 ("Second Preliminary

Injunction Motion").  At the conclusion of trial, both parties submitted post-trial briefs and replies

with the Court.  Dkt. Nos. 421; 422; 423; 425; 426.  The Court entered Judgment for Plaintiffs, and

ordered Defendants to pay attorneys' fees and costs in an amount to be determined.  Mar. Order at

80-81.

Plaintiffs then filed the instant Motion, requesting $6,295,935.00 in attorneys' fees and

$115,060.74 in costs for Plaintiffs' Counsel Gibson Dunn & Crutcher, LLP ("Gibson Dunn") and

$522,612.50 in attorneys' fees and $29,858.75 in costs for Plaintiffs' Counsel DerOhannesian &

DerOhannesian ("D&D").  Mem. at 3-4.  Defendants oppose the Motion.  Dkt. No. 447

("Response").[1]

## III.    DISCUSSION

The Court has already determined that Plaintiffs are entitled to attorneys' fees and costs

pursuant to 52 U.S.C. § 10310.  Mar. Order at 80.  Consequently, the only matter left for the Court

to resolve is whether the fees and costs requested by Plaintiffs are reasonable.  See 52 U.S.C.

---

[1] On September 2, 2015, Plaintiffs filed a Letter Brief providing supplemental authority for their Motion for fees.  Dkt. No. 452.  Defendants moved to strike this Brief on September 4.  Dkt. No. 453.  Defendants' request, as a result of this Memorandum-Decision and Order, is denied as moot.

§ 10310(e); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996).

**A. Defendants' Arguments Against Awarding Any Fees**

As a preliminary matter, Defendants argue that the Court should deny Plaintiffs' Motion in its entirety because (1) the fees requested are "intolerably inflated" and (2) the Motion "bears several indicia of bad faith." Resp. at 3.

*1. Intolerable Inflation*

Defendants argue that Plaintiffs' fee Motion is "intolerably inflated" on the grounds that "Plaintiffs billed hundreds of thousands of dollars for training young litigation associates," overstaffing, conferences, travel time, and other excessive hours, and because Plaintiffs' requested fee is "grossly disproportionate" to fees awarded in similar cases. Resp. at 3. A complete denial of a motion for attorneys' fees is considered "a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances." SJ Berwin & Co. v. Evergreen Entm't Grp., Inc., No. 92 CIV. 6209, 1994 WL 501753, at *3 (S.D.N.Y. Sept. 14, 1994) (quoting Jordan v. U.S. Dep't of Justice, 691 F.2d 514, 518 (D.C. Cir. 1982)). A fee request should not be denied simply because counsel has spent too many hours on a case; an excessive and unreasonable request alone is not sufficient to trigger a complete denial of fees. See Zabkowicz v. W. Bend Co., 789 F.2d 540, 550 (7th Cir. 1986) ("[T]he fee request in the present case is not so egregious nor is counsel's recordkeeping so inept that a complete denial of fees is warranted, although we readily agree with the district court that the fee request [in] this case is undoubtedly excessive and unreasonable.").

The Court does not find that Plaintiffs' request is "intolerably inflated." This case lasted for four years, and included a preliminary injunction hearing with a subsequent appeal and an eleven-

day trial interrupted by settlement negotiations.  Furthermore, Plaintiffs' Counsel Gibson Dunn is a large corporate law firm, and the attorneys on this case are primarily based in New York City, where standard billing rates are typically high.  See, e.g., In re Telik, Inc. Secs. Litig., 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (finding partner billing rates of $700 to $750 reasonable after determining partner billing rates at large firms to be as high as $830 in 2005).  The billing rates used by Gibson Dunn in their motion are higher than these rates, with billing rates for the three partners on the case averaging roughly $950 per hour, see Karlan Decl. ¶¶ 26-28; see also Dkt. No. 440-2 ("Gibson Biographies") at 1-6, but when their voluntary twenty percent reduction "in light of the magnitude of the fees in this matter" is taken into account, Karlan Decl. ¶ 57, the effective billing rates for the three partners involved in this case average roughly $760 per hour.  It is additionally worth noting that Gibson Dunn has calculated an alternative award of attorneys' fees based on the rates requested by local counsel.  Id. ¶ 59; see also DerOhannesian Decl. ¶ 57 (outlining a "partner hourly rate of $375.00 [and an] associate hourly rate of $215.00" for D&D lawyers).  Thus, while it can be argued whether Gibson Dunn's requested rates are reasonable, they are not "intolerably inflated" to the point of taking the extraordinary measure of denying fees altogether.  The number of hours billed is also comparable to what has been approved in the past for cases of similar complexity and duration. See N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1142, 1146 (2d Cir. 1983) (upholding an award of 11,034 hours reasonably expended on a multiyear civil rights case that involved a preliminary injunction hearing and disputes over implementation of a settlement agreement).

Defendants' reliance on Brown v. Stackler, 612 F.2d 1057 (7th Cir. 1980), and Fair Housing Council of Greater Washington v. Landow, 999 F.2d 92 (4th Cir. 1993), is misplaced.  Brown

involved a request for fees based on 800 hours of work. 612 F.2d at 1058. However, the sole issue in Brown was indisputably controlled by pending Supreme Court litigation, and most of the work consisted of filing motions for extensions of time. Id. Furthermore, much of the research was done by law students on a volunteer basis. Id.

The facts of Landow are similarly inapposite. In the underlying litigation, the plaintiffs only prevailed on one portion of one of two claims. 999 F.2d at 94-95. In the subsequent motion for fees, the plaintiffs claimed roughly $600,000 in legal expenses, but excluded only $67,000 that was not attributable to the claim on which it prevailed. Id. The timesheets did not make any attempt to differentiate work done on different claims or of different substantive types and instead included entries simply marked "document production" or "review discovery and draft discovery." Id. The Fourth Circuit denied attorneys' fees altogether, due to "the FHC's woefully inadequate time records, coupled with its failure to make a good faith effort to exclude fees attributable to unsuccessful claims." Id. at 97. While not all of the timesheets submitted by Plaintiff's Counsel in the instant case have the ideal level of detail, the vast majority are much more detailed than those at issue in Landow and certainly could not be called "woefully inadequate" as a whole. Furthermore, Plaintiffs prevailed on the cause of action contemplated in the instant case and did not have a duty to exclude any fees due to the lack of unsuccessful claims.

The cases Defendants collect in their Appendix, Resp. at App. 1, are also not useful comparisons. The vast majority of these cases did not involve lengthy procedural histories comparable to the instant case; most did not last for four years or go to trial. See id. In fact, the only case cited where the requested fee was reduced to a merely nominal award is Shepherd v. Goord, 662 F.3d 603 (2d Cir. 2011), where the award was statutorily limited by the Prison

Litigation Reform Act to a percentage of the monetary damages awarded. Defendants do not cite any Northern District cases in which an award was completely denied due to excessiveness.

The only VRA case included in the Appendix, however, is the 2003 litigation brought against Defendants following the previous decennial redistricting. Resp. at 28; see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, No. 03-CV-502, 2005 WL 670307 (N.D.N.Y. Mar. 22, 2005) ("2005 Fees Order"), report and recommendation adopted, 419 F. Supp. 2d 206 (N.D.N.Y. 2005), aff'd, 522 F.3d 182 (2d Cir. 2008).[2] In considering the plaintiffs' fee request, the Arbor Hill court determined in the previous case that the request was calculated with excessive out-of-district billing rates, that an excessive number of attorneys were used for most of the proceedings, and that the costs claimed by counsel were insufficiently supported and thus subject to further reduction. Id. at *6, *8-10, *13-14. However, the court did not take the extraordinary measure of denying fees altogether. Id. at *1. Defendants' arguments in the instant case for denying fees altogether are parallel to the Court's characterization of plaintiffs' request in Arbor Hill, and the alleged deficiencies taken as a whole do not rise to a level of inflation that merits outright denial of the fee.

### 2. Bad Faith

As evidence of bad faith, Defendants note that Plaintiffs (1) defend their high fees as a form of punishment for the County, which is impermissible, and (2) Plaintiffs' fee application is either sloppy or misleading, charging for hours worked on unrelated cases, and charging full hourly rates for travel time. Resp. at 3-4. In the context of whether to award attorneys' fees for bad faith, courts

---

[2] The plaintiffs in Arbor Hill retained the same counsel, Gibson Dunn and D&D, as in the instant case. 2005 WL 670307 at *1-2. They were additionally represented by the Lawyers' Committee for Civil Rights Under Law. Id.

will find bad faith when claims are made "entirely without color and ha[ve] been asserted wantonly, for purposes of harassment or delay, or for other improper purposes." <u>Harleysville Worcester Ins. Cop. v. Erie Painting & Maintenance, Inc.</u>, No. 12-CV-5937, 2014 WL 6694800, at *7 (E.D.N.Y. Nov. 26, 2014) (quoting <u>Browning Debenture Holders' Committee v. DASA Corp.</u>, 560 F.2d 1078, 1088 (2d Cir. 1977)).

Defendants argue that Plaintiffs' fee application was made in bad faith because they ask that the Court award their "inflated legal bill" as punishment for the County, but an "award of counsel fees is not intended to punish the defendant in any way."  Resp. at 3 (quoting <u>Milwe v. Cavuoto</u>, 653 F.2d 80, 84 (2d Cir. 1981)).  However, Plaintiffs do not argue that their fee application is justified solely as punishment to Defendants.  Rather, they contend that a fee award is justified in this case, as in other voting rights cases, in order to encourage attorneys to take up these important issues, and that the amount of fees requested reflects Defendants' unwillingness to settle the case.  <u>See</u> Mem. at 2-3.

Defendants also cite a total of nine entries in Plaintiffs' supporting materials that are erroneously billed to this case as an indication of bad faith.  Resp. at 14-15.  However, eight of these are attributable to a single associate who appears to have been erroneously billing time attributable to a separate case.  <u>See id.</u>  In a document containing approximately seven thousand billing entries, <u>see generally</u> Dkt. No. 440-1 ("Gibson Timesheets"), a set of fewer than ten errors likely stemming from a single oversight is not enough to justify a finding of bad faith.  While a pattern of erroneous reporting can be evidence of bad faith, there is no other indication that this accidental billing of $7,446.50 was part of an intentional scheme to inflate the fee requested.  These entries will be used to adjust the ultimate fee award, but they alone do not justify a denial of the entire request.

Finally, Defendants also point to the billing of travel time at the full rate, which is not standard practice in the Northern District. See, e.g., Marshall v. N.Y. Div. of State Police, 31 F. Supp. 2d 100, 107 (N.D.N.Y. 1998) ("Where [travel time] hours are held recoverable, the billing rate for this time is reduced by 50%."). While Gibson Dunn requested travel fees for the 2003 litigation and had that request halved in the 2005 Fees Order, see Arbor Hill, 2005 WL 670307, at *6, this knowledge does not by itself give rise to an inference of bad faith in Gibson Dunn's present request for the full rate for travel time. This adjustment can be made when the fee is calculated. The Court has already determined that Plaintiffs are entitled to an award of attorneys' fees, Mar. Order at 80, and thus none of the arguments Defendants raise in support of a finding of bad faith lead the Court to conclude that the Motion has been asserted for purposes of harassment or otherwise improperly. As each argument for complete denial of the fee application is without merit, a reasonable fee must be determined.

**B. Attorneys' Fees**

"Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011) (citing Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

*1. Reasonable Hourly Rate*

To calculate a presumptively reasonable fee, the Court must determine a reasonable hourly

rate. "As the movant, it is Plaintiff's 'burden to establish the prevailing market rate.'" Jimico

Enters., Inc. v. Lehigh Gas Corp., No. 07-CV-0578, 2014 WL 1239030, at *6 (N.D.N.Y. Mar. 25,

2014) (citations omitted). Furthermore, pursuant to the Second Circuit's "forum rule," "the hourly

rates employed in the district in which the reviewing court sits" should be used in calculating a

presumptively reasonable fee. Bergerson, 652 F.3d at 290 (quoting Simmons, 575 F.3d at 174). In

order to overcome the presumption that the forum district's rates are reasonable, "a litigant must

persuasively establish that a reasonable client would have selected out-of-district counsel because

doing so would likely (not just possibly) produce a substantially better net result." Simmons, 575

F.3d at 175.

> In determining what constitutes a reasonable hourly rate, a court should:
>
> consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Osterweil v. Bartlett, No. 09-cv-825, 2015 WL 1066404, at *5 (N.D.N.Y. Mar. 11, 2015) (quoting

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184 (2d Cir.

2008)). The Second Circuit has discussed courts' obligations to view the market from the

perspective of the client, and how this affects the review of out-of-district counsel:

> [T]he district court must act . . . to ensure that the attorney does not recoup fees that the market would not otherwise bear. Indeed, the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively. . . .

> [A] district court may use an out-of-district hourly rate—or some rate in between . . . in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.

Arbor Hill, 522 F.3d at 184, 191. While rates are often set by district, courts should be mindful of the practice area of the underlying litigation and take this into account when determining a reasonable hourly rate. Id. at 192.

### a. Forum Rule and Southern District Rates

The Second Circuit has repeatedly held that "deviation from the forum rule is only appropriate 'in the unusual case.'" Simmons, 575 F.3d at 175 (quoting Arbor Hill, 522 F.3d at 184). In order to overcome the presumption that the forum district's rates should apply, "[t]he party seeking the award . . . [must] make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." Id. at 176.

Gibson Dunn requests rates ranging from $450 to $695 per hour for associates to up to $1,174 per hour for a partner. See Karlan Decl. ¶ 58; see also Gibson Biographies. Plaintiffs argue that Gibson Dunn's rates are commensurate with the prevailing market rate in New York City and Washington, D.C., where the attorneys who worked on this case are based. See Mem. at 6; Karlan Decl. ¶¶ 47, 49. See generally Dkt. Nos. 440-3 ("Billing Survey"); 440-4 ("Legal Billing Report"). Plaintiffs argue that Gibson Dunn should be awarded out-of-district rates because: (1) clients around the country routinely pay their rates, Mem. at 6; and (2) a reasonable client would be willing to pay Gibson Dunn's rates in a case such as this because the firm's size and resources allowed it to incur the high expenses of the case up-front; this case specifically required a large investment of attorney

time, which would be difficult for a smaller local firm to handle; Gibson Dunn is "unfettered" by local politics; and the Gibson Dunn attorneys on the case have significant expertise in voting rights law, Mem. at 7-9.

Defendants argue that Gibson Dunn is not entitled to out-of-district rates because: (1) their expertise was not needed in this case, as D&D are experts in election law and have litigated similar cases in the past, (2) the Court should not award out-of-district rates in a voting rights case, since Plaintiffs were not in a position to negotiate hourly rates, (3) the court refused to grant out-of-district rates in the previous Section 2 case against the County, (4) the instant litigation did not require significant resources, and (5) Gibson Dunn and D&D have also received reputational benefits from taking this case. Resp. at 5-13.

The Court finds that Plaintiffs have not met their burden of showing that out-of-district rates are warranted. Plaintiffs state that the billing rates requested are commensurate with reasonable Southern District rates in bankruptcy courts and that the rates requested in the fees Motion are paid by clients across the country. Karlan Decl. ¶¶ 47, 49, 51. However, they have not specified what types of clients typically work with Gibson Dunn in this manner. Other than a mention of the 2003 litigation, the biography of Gibson Dunn lead counsel Mitchell A. Karlan indicates a specialization in complex commercial litigation, particularly in fields such as securities and mergers and acquisitions. See Gibson Biographies at 1. Karlan, in his affidavit, only lists one other voting rights case on which he has worked. Karlan Decl. ¶ 24. In fact, the only other mention of any civil rights representation in any of the biographies is of this instant case. Gibson Biographies at 7. The five associates who worked on this case in the year after they graduated from law school use billing rates that average $442 per hour, even after taking the voluntary twenty percent discount into account.

See Gibson Biographies; see also Karlan Decl. ¶¶ 38, 39, 43, 45, 46, 58. The Second Circuit has

made clear that the fact that corporate clients may pay these rates does not necessarily mean that

those rates are reasonable in a civil rights matter. Arbor Hill, 522 F.3d at 192 ("To define markets

simply by geography is too simplistic. Sometimes, legal markets may be defined by practice area.").

Furthermore, Gibson Dunn has not met their burden of showing Southern District reasonable

hourly rates in civil rights cases. The fees requested for Gibson Dunn attorneys are significantly

higher than what is requested in most civil rights litigation. See, e.g., Munoz v. Manhattan Club

Timeshare Ass'n, Inc., No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014)

(finding $400 per hour reasonable for "an experienced civil rights attorney with almost twenty years

in practice"); Finch v. N.Y. State Office of Children & Family Svcs., 861 F. Supp. 2d 145, 153-55

(S.D.N.Y. 2012) (determining that the requested $550 per hour rate was unreasonable for all but

"extraordinary attorneys held in unusually high regard by the legal community" and awarding $450

per hour to an attorney with forty-two years of civil rights experience); see also Alvarez v. 215 N.

Ave. Corp., No. 13-CV-7049, 2015 WL 3855285, at *7 (S.D.N.Y. June 19, 2015) ("Courts in this

District have determined that between $250 and $450 is an appropriate fee for experienced civil

rights and employment litigators." (collecting cases)); Greene v. City of New York, No. 12 Civ.

6427, 2013 WL 5797121, at *3 (S.D.N.Y. Oct. 25, 2013) (finding that experienced civil rights

attorneys have been awarded between $250 and $600 per hour in the Southern District). The few

cases that award higher rates do so only for the most experienced attorneys working on the most

complex civil rights litigation. See Abdell v. City of New York, No. 05-CV-8453, 2015 WL

898974, at *3 (S.D.N.Y. Mar. 2, 2015) (finding $650 per hour reasonable for lead counsel in a civil

rights case that lasted "for the better part of a decade" but reducing other attorneys' rates to $600 per

hour, and finding $375 per hour reasonable for other attorneys with over twenty-five years of experience); <u>Ognibene v. Parkes</u>, No. 08-CV-1335, 2014 WL 3610947, at *3 (S.D.N.Y. July 22, 2014) (finding rates of $575 and $525 reasonable for partners with over twenty years of experience while noting that the rates "fall on the higher end of the spectrum deemed reasonable"). Typical rates for junior associates in civil rights cases are between $150 and $200 per hour. <u>Black v. Nunwood, Inc.</u>, No. 13-cv-7207, 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015) (stating that "courts have typically awarded rates in the range of $175-200 to associates with three years' experience" and awarding a rate of $150 for an associate with less than one year of experience); <u>Anthony v. Franklin First Fin., Ltd.</u>, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (finding $175 per hour reasonable for a lawyer who graduated from law school the same year the complaint was filed, and part of whose work on the case was as a law clerk).

Perhaps most instructive is <u>Salama v. City of New York</u>, No. 13-cv-9006, 2015 WL 4111873 (S.D.N.Y. July 8, 2015), where the Southern District considered a similar fee request with high rates. Covington and Burling LLP ("Covington"), another corporate law firm with a large New York City office, successfully represented a food cart operator in a civil rights suit challenging the circumstances and method of his arrest. <u>Id.</u> at *1. The rates that Covington requested were $825-860 per hour for a senior partner with over thirty years of experience, $720 for another partner with over twenty-five years of experience, $335-675 per hour for a senior associate with nine years of experience, and $360-455 per hour for a junior associate with one year of clerkship experience prior to working on the litigation. <u>Id.</u> at *3. The court noted that none of these attorneys had demonstrated any significant civil rights experience and accordingly set their rates at $450 for the senior partner, $425 for the other partner, $350 for the senior associate, and $175 for the junior

associate.  Id.  These rates, as opposed to Gibson Dunn's typical billing rates for non-civil rights cases, are more in line with the Second Circuit's guidance in Arbor Hill.

Plaintiffs advance three arguments for why Southern District rates are appropriate for Gibson Dunn: experience in voting rights litigation, political concerns for local counsel taking the case, and the amount of resources at Gibson Dunn's disposal, which allowed them to outlay significant expenses over the course of multiyear litigation.  Mem. at 6-9.  While D&D discusses having specific experience in voting rights litigation, DerOhannesian Decl. ¶¶ 7-8, Mitchell Karlan is the only attorney from Gibson Dunn who has demonstrated any experience with voting rights cases, and his claimed prior experience is less than the claimed experience of D&D, Karlan Decl. ¶ 24.  Gibson Dunn, therefore, has not demonstrated expertise that would justify Southern District rates in this case.  The local politics argument is also unpersuasive.  While these concerns should be taken seriously, D&D, who served as local counsel in this case, apparently had no such objections that prevented them from taking the case.  Furthermore, local counsel was contacted first by Plaintiffs, at which point Gibson Dunn was brought onto the case to assist.  Id. ¶ 7.  No showing has been made by either D&D or Gibson Dunn in this case that any other Northern District counsel was contacted and declined to take the case due to political reasons.

This leaves Plaintiffs' concerns regarding resources.  It is undisputed that D&D, as a solo practice at the time of the commencement of this suit, did not have sufficient resources to represent Plaintiffs on this case alone.  Lead counsel at D&D states that he "only agreed to represent Plaintiffs with the understanding that [Gibson Dunn] would assist."  DerOhannesian Decl. ¶ 5.  He also claims to be "aware of no other firm in the Albany area, or the Northern District of New York, that would have the resources . . . to commit to a case such as this."  Id.  However, no claim is made that

Plaintiffs or Counsel tried to find another firm in the area, with comparable local rates, to share the financial and time burdens of the case. Plaintiffs state in a conclusory fashion that "[m]ost small to mid-sized firms cannot front the significant litigation expenses" and that local non-profits would not help. Karlan Decl. ¶¶ 4-5.

The Second Circuit has rejected similar arguments that were not accompanied by specific proof that out-of-district counsel could be necessary. In Green v. City of New York, counsel for plaintiffs tried to justify the use of out-of-district counsel by relying on the expertise of one member of the litigation team. 403 F. App'x 626, 628 (2d Cir. 2010). While the types of proof supplied by the plaintiffs are not specified, the Second Circuit noted that "[a]ppellants have made no showing, beyond mere conjecture, that 'local counsel possessing requisite experience were unwilling or unable to take the case,' or that no in-district counsel possessed expertise necessary to litigate the case." Id. (quoting Simmons, 575 F.3d at 176). Even for the partner whose qualifications were discussed, the fact that there was no evidence that this attorney "possessed expertise that could not have been obtained" within the district meant that the plaintiffs had not made a particularized showing that out-of-district rates were warranted. Id.

Since Plaintiffs have not made a particularized showing that it was necessary for an out-of-district firm to be involved in this case, there is no need to address the question of whether a reasonable paying client would authorize the use of a New York City firm as a risk-sharing measure. However, courts have been reluctant to find risk-sharing through a New York City firm worthy of Southern District rates. See Davis v. Eastman Kodak Co., 758 F. Supp. 2d 190, 200 (W.D.N.Y. 2010) ("[Co-counsel] selected a firm in New York City whose lawyers customarily billed hourly rates substantially higher than their own. . . . Would reasonable paying clients wishing to spend the

minimum necessary to litigate the case seek out a New York City law firm to share the risk . . .

particularly when the New York City law firm and the lead counsel have no special expertise in

employment discrimination cases?")  As a result, Northern District rates shall be used to determine

the presumptively reasonable fee for all attorneys on this case.

b.  Reasonable Hourly Rates in the Northern District

Recent cases in the Northern District have upheld hourly rates between $250 and $345 for

partners, between $165 and $200 for senior associates, and between $80 and $90 for paralegals.

See, e.g., Jimico Enters., Inc. v. Lehigh Gas Corp., No. 07-CV-0578, 2014 WL 1239030, at *6

(N.D.N.Y. Mar. 25, 2014) (awarding "$300 for partner-level work, $180 for associate level work

and $80 for paralegal work"); Deferio v. Bd. of Tr. of State Univ. of N.Y., No. 11-CV-0563, 2014

WL 295842, at *7 (N.D.N.Y. Jan. 27, 2014) (finding that $200 per hour was a reasonable rate for an

attorney with five years of experience); Curves Int'l, Inc. v. Nash, No. 11-CV-0425, 2013 WL

3872832, at *5 (N.D.N.Y. July 25, 2013) (Kahn, J.) (finding $275 per hour for a partner and $200

per hour for an associate reasonable); Bosket v. NCO Fin. Sys., Inc., No. 11-CV-00678, 2012 WL

4093023, at *4 (N.D.N.Y. Sept. 17, 2012) (Kahn, J.) (allowing a $335 per hour rate for partners but

refusing to approve a $135 per hour rate for paralegals where "Plaintiff ha[d] submitted nothing

substantiating a $135/hour billing rate for paralegals"); Broad. Music, Inc. v. DFK Entm't, LLC,

No. 10-CV-1393, 2012 WL 893470, at *7 (N.D.N.Y. Mar. 15, 2012) (finding that $270 for partners,

$165 for associates, and $90 for paralegals were reasonable hourly rates).

D&D seeks to recover fees at the following typical billing rates: $350 and $375 for Paul

DerOhannesian II, $215 for Danielle Smith, $125 and $145 for Kristin Bruno, and $95 for

secretaries and law students.[3] DerOhannesian Decl. ¶ 57.  Defendants request rates of $275 for Mr. DerOhannesian, $150 for Ms. Smith, $80 for Ms. Bruno and for law students, and $0 for secretaries. Resp. at 13.  Defendants note that these rates are the same as the rates used in the 2005 Fees Order. However, the 2005 Fees Order, consistent with the principle that fee awards should rise with inflation, was itself an increase from previous rate structures.  Arbor Hill, 2005 WL 670307, at *6 ("This rate structure represents an increase of approximately 20% over that previously found and reasonably represents the maximum rate structure existing in this district at the time plaintiffs' attorneys' fees were incurred.").  Awarding the same fees deemed reasonable ten years ago would not be an accurate representation of the market at the time these fees were incurred.  While Plaintiffs do not explicitly request that the prevailing reasonable fees in this district be increased, their request for a $375 per hour fee for partners and a $215 fee for associates is higher than any current prevailing rate in the Northern District.  However, the maximum fee found reasonable for experienced partners, $345, was awarded in a case from seven years ago.  Trudeau v. Bockstein, No. 05-cv-1019, 2008 WL 3413903, at *6 (N.D.N.Y. Aug. 8, 2008).  While there were factors in that case that served to augment the fee, such as time sensitivity, id., a fee as high as $335 was approved as early as 2011 in a case where such factors were absent, Bosket, 2012 WL 4093023, at *3.

In light of the case law cited above, the following rates are deemed reasonable: $350 for Mr. DerOhannesian, $200 for Ms. Smith, $90 for Ms. Bruno and for law students.  Mr. DerOhannesian has over thirty-five years of experience and has taken voting rights cases with some regularity since the 2003 litigation, where he also represented a similar group of plaintiffs against Defendants.  Ms.

---

[3] Two billing rates are listed for Mr. DerOhannesian and Ms. Bruno because D&D instituted a rate increase for all of their clients in 2013, while this litigation was pending.  DerOhannesian Decl. ¶ 57.

Smith had nearly five years of experience when she started working on the case in 2013. The reasonable rate for paralegals is at the top end of what has been approved in the Northern District, and no showing has been made that any further increase is necessary. While this is still less than Plaintiffs have asked for, it once again reasonably represents the maximum rate structure existing in this district.

Gibson Dunn, as an alternative to Southern District rates, seeks to recover fees at the same rates requested by D&D: $375 per hour for partners and $215 per hour for all associates.[4] Karlan Decl. ¶ 59. Defendants request rates of $275 per hour for Mr. Karlan, a partner with over thirty-five years of experience; $210 per hour for partners Aric Wu and Anne Champion, who have seventeen and ten years of experience, respectively; $150 per hour for all associates with one or more years of experience when they started working on the case; and $120 per hour for all other associates. These rates are also consistent with the 2005 Fees Order.

In light of the above caselaw, the Court finds the following rates reasonable: $350 per hour for Mr. Karlan, $300 per hour for Mr. Wu, $250 per hour for Ms. Champion, $200 per hour for senior associates with more than three years of experience, and $140 per hour for all other associates. While the $350 per hour rate is an upward departure from the cases cited, Mr. Karlan, like Mr. DerOhannesian, was involved in the 2003 litigation and thus has specialized knowledge that was likely useful to this case. Ms. Champion, who had six years of experience when she started working on this case, is awarded a lower partner rate of $250 per hour, which is still an increase

---

[4] Gibson Dunn has voluntarily excluded all hours worked by forty-eight paralegals, summer associates, and secretaries. Karlan Decl. ¶ 56. While Gibson Dunn has a right to recover fees for paralegals, summer associates, and for the nonclerical work of secretaries, no materials have been submitted cataloguing the work done by these forty-eight employees, and as such, no award for these employees can be determined.

from Mr. Karlan and Mr. DerOhannesian's rates of $210 per hour in the 2005 Fees Order. Mr. Wu, who possesses experience that falls between Mr. Karlan and Ms. Champion's, is thus awarded an intermediate rate of $300 per hour.

Five associates—Ms. Claflin, Ms. Schmidt, Mr. Fortney, Mr. Gillett, and Ms. Mayer—started working on this case when they had at least three years of experience. As a result, they are awarded the same $200 per hour rate that Ms. Smith receives, which is toward the top of the range of approved rates for senior associates in this District and in keeping with the principle of gradually increasing billing rates. The other thirteen associates came to this case with less than three years of experience, and thus are billed at a lower rate of $140. It is worth noting that this $140 per hour rate, which is a slight increase from the $120 rate awarded in the 2005 Fees Order, is similar to the rates typically awarded to junior associates in Southern District civil rights cases. <u>See, e.g.</u>, <u>Nunwood</u>, 2015 WL 1958917, at *6 (discussing typical rates of $125-150 per hour for recent law school graduates and law clerks).

### 2. Reasonable Number of Hours

"[T]o determine whether time for which reimbursement is sought was reasonably spent, the court must evaluate the tasks and the time documented in counsel's contemporaneous time records in light of its general experience and its experience with the case." <u>Liberty Mut. Ins. Co. v. Conmas, Inc.</u>, No. 10-CV-717, 2012 WL 913312, at *3 (N.D.N.Y. Mar. 16, 2012) (quoting <u>DLJ Mortg. Capital, Inc. v. Act Lending Corp.</u>, No. 07 Civ. 10318, 2008 WL 5517589, at *7 (S.D.N.Y. Dec. 1, 2008)). The Court should reduce the time for which compensation is awarded for hours that were not "reasonably expended," for example, if they are excessive or redundant. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) ("The district court should also exclude from this initial fee

20

calculation hours that were not 'reasonably expended.' Cases may be overstaffed, and the skill and experience of lawyers vary widely." (internal citation omitted)). "In excluding hours that were not reasonably expended, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" Osterweil v. Bartlett, No. 09-CV-825, 2015 WL 1066404, at *8 (N.D.N.Y. Mar. 11, 2015) (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998)).

The party seeking an award for attorneys' fees must support such application with sufficiently detailed records of the nature of the work performed. See Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986). Plaintiff's counsel has submitted contemporaneous time records asserting that a total of 14,561.98 hours was spent on this case (1623.18 hours of Gibson Dunn partner time, 959.75 hours of D&D partner time, 11,025.55 hours of Gibson Dunn associate time, 669.75 hours of D&D associate time, 239.75 hours of D&D law student and paralegal time, and 44 hours of D&D secretarial time). See Karlan Decl. ¶ 58; DerOhannesian Decl. ¶ 63.

### a. Block Billing

Block billing is a method of recording time that "group[s] together both compensable and non-compensable time, making it impossible to distinguish between them and determine the number of hours for which the applicant is entitled to recovery . . . ." Luessenhop v. Clinton Cty., 558 F. Supp. 2d 247, 268 (N.D.N.Y. 2008) (alteration in original) (quoting Lake v. Schoharie Cty., No. 01-CV-1284, 2006 WL 1891141, at *7 (N.D.N.Y. May 16, 2006)). A commonly recognized form of block billing is when "each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Sea Spray Holdings v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003); see also Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,

82 F.3d 1533, 1554 n.15 (10th Cir. 1996). This particular method of block billing is not prohibited in the Second Circuit. <u>Tottey v. Life Ins. Co. of N. Am.</u>, No. 05-CV-877, 2009 WL 3764222, at *3 (N.D.N.Y. Nov. 10, 2009). If it is used sparingly, the descriptions of the work block billed "are not vague[,] and the tasks included in those entries are either related to a single process or to related processes," then billing a day's time in a batch is acceptable. <u>Id.</u> However, if there is a substantial amount of block billing that renders it "difficult to determine whether, and/or the extent to which, the work done by [plaintiffs'] attorneys is duplicative or unnecessary," a reduction in the fee award is warranted. <u>Sea Spray</u>, 277 F. Supp. 2d at 326.

In the instant case, while all billing entries made by Gibson Dunn have been aggregated for each day, <u>see generally</u> Gibson Timesheets, many of the entries are detailed enough that this is not a problem. However, the majority of the entries broadly contemplate time billed to tasks unrelated to each other, and the lack of any further specification substantially frustrates the Court's ability to review these entries for reasonableness. As a result, Gibson Dunn's request shall be reduced by ten percent. <u>See Zhou v. State Univ. of N.Y. Inst. of Tech.</u>, No. 08-cv-0444, 2014 WL 7346035, at *4 (N.D.N.Y. Dec. 23, 2014) (reducing fee award by ten percent as a result of "the majority of billing entries" being in block format); <u>see also Green v. City of New York</u>, 403 F. App'x 626, 630 (2d Cir. 2010) (upholding a district court's reduction of a fee by 15% when roughly one-third of the submitted hours by two attorneys was block-billed, and roughly one-half of those hours raised "concerns" about reasonableness).

D&D's billing entries are often separated by day as well. However, entries are typically shorter and provide significantly more detail about the tasks performed. The only timekeeper whose block-billed entries are insufficiently specific is Ms. Smith, whose billed hours shall also be reduced

by ten percent, resulting in a decrease of 66.225 hours.

<u>b.</u>  <u>Excessive Hours and Overstaffing</u>

District courts "must be accorded ample discretion" in assessing whether the extent of staffing was appropriate in a given case in light of the complexity of the litigation.  <u>N.Y. State Ass'n</u> <u>for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983).  Defendants contend that Plaintiffs used an excessive number of attorneys to prosecute the trial and that much of the time spent by Plaintiffs' counsel was redundant.

In the 2005 Fees Order, the court states that "[g]iven the complexity of the factual and legal issues confronting plaintiffs in this case . . . it was not unreasonable for plaintiffs to utilize more than one attorney to prepare and present their case."  <u>Arbor Hill</u>, 2005 WL 670307 at *9.  However, the Court then determined that it was unreasonable for more than four attorneys to work on the case. <u>Id.</u>  While disallowing the fee awards of all but four attorneys in this litigation would be a drastic step, as this case proceeded to trial, Gibson Dunn and D&D had between eight and fourteen attorneys working on this case at any given time.  Karlan Decl. ¶ 58.  A review of billing records shows that an excessive number of attorneys were present at trial.  For example, for November 18 and 19, the first two days of trial, in addition to Mr. DerOhannesian and Mr. Karlan, a third partner and five associates from the two firms billed full or nearly full days for "attend[ing] trial."  Gibson Timesheets at 309-14; Dkt. No. 441-3 ("DerOhannesian Timesheet") at 98-99; Dkt. No. 441-4 ("Smith Timesheet") at 29.

Likewise, drafting and amending the complaint, for which Defendants calculated that 238.99 hours were billed, included the work of not only Mr. Karlan but five additional associates for research, drafting, and review.  <u>See, e.g.</u>, Gibson Timesheets at 2-7, 77.  These are individual

23

examples of a larger pattern of consistent overstaffing, which merits a reduction in the fees awarded. The proliferation of intra-office conferences is a symptom of this problem. In December 2012, for example, a total of 34.6 hours out of 95.81, or more than one-third of all hours billed, were billed by Gibson Dunn to either "correspondence," "calls," or "conferences." Gibson Timesheets at 170-72. While some of this total is attributable to block billing, this proportion of time devoted to conferences, even if reasonable, could have been avoided by staffing this case with fewer associates.

Defendants also note nine entries billed by Gibson Dunn, totaling roughly $7,000 in requested fees, that appear to be attributed to the wrong case or to non-litigation matters. See, e.g., id. at 194, 220, 222, 231, 249; see also Resp. at 14-15. While eight of these entries are related and can be attributed to a single mistake, it is unclear whether there may be other entries that are also erroneously billed.

Although exclusion of individual entries that demonstrate overstaffing would be the fairest way to solve this problem, the prevalence of block billing compounds the problem by combining reasonable work with overstaffed work and thus making it impossible to determine, for individual entries, the amount of work not considered reasonably necessary due to redundancy in staffing. As it is within the Court's power to use percentage cuts "as a practical means of trimming fat from a fee application," Carey, 711 F.2d at 1146, the Court imposes an additional reduction of forty percent to the billing of Gibson Dunn associates as a result of overstaffing and excessive hours billed. See, e.g., Arbor Hill, 2005 WL 670307, at *8-11 (reducing number of hours requested from 1376.05 to 822.45, a reduction of over forty percent, simply for overstaffing); Carey, 711 F.2d at (affirming a reduction in the number of hours requested from 16,410 to 10,344, a reduction of over thirty percent, simply for excessive and duplicative billing). This results in a reduction of 1128.02 senior

24

associate hours and 3282.2 junior associate hours for Gibson Dunn.

<u>c.</u> <u>Impermissibly Vague Time Entries</u>

"If the time records submitted in support of a fee application lack sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed, the Court is justified in reducing the hours claimed for those entries." <u>Osterweil</u>, 2015 WL 1066404, at *9 (quoting <u>Williamsburg Fair Hous. Comm. v. N.Y.C. Hous. Auth.</u>, No. 76 Civ. 2125, 2005 WL 736146, at *9 (S.D.N.Y. Mar. 31, 2005)). To be sufficiently specific, the records "must adequately 'identify the general subject matter' of the work that the attorney did during each time slot." <u>Tucker v. City of New York</u>, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 n.12 (1983)). "This requirement is generally not satisfied by vague entries such as 'conference with' or 'call to' a specified person," even if the court may be able to deduce the nature of the entry through context clues. <u>Id.</u>

With respect to Gibson Dunn's billing entries, Defendants focus on Mr. Karlan's entries, which include numerous entries that simply state "Appeal work" or "Settlement efforts." The Court agrees that Mr. Karlan's entries are particularly vague; even the most detailed entries do not surpass a dozen words. <u>See, e.g.</u>, Gibson Timesheets at 231, 234, 242, 253. Although in most cases, the contemporaneous billing of associates lends context clues as to the substance of Mr. Karlan's work, the Court finds that it is impossible to determine the reasonableness of the amount charged due to the vagueness of his entries. As a result, the Court imposes an additional reduction of thirty percent to the billing of Mr. Karlan, resulting in a reduction of 222.6 hours. <u>See</u> <u>Tucker</u>, 704 F. Supp. 2d at 357 (reducing award by fifty percent due to vagueness and the prevalence of billing for administrative tasks); <u>Osterweil</u>, 2015 WL 1066404, at *11 (excluding time entries entirely due to

vagueness).

With respect to D&D's billing entries, Defendants focus on Mr. DerOhannesian, who has submitted numerous billing entries that mention phone calls or conferences without any explanation of the subject of these conversations. Resp. at 21-22 (citing DerOhannesian Timesheet at 15, 18, 19). Upon reviewing D&D's billing entries as a whole, the Court finds that Mr. DerOhannesian and Ms. Smith have submitted impermissibly vague entries. As a result, their awards are reduced by ten percent, or 93.15 and 66.225 hours respectively. Even though Mr. DerOhannesian has logged sufficient detail *in time* to avoid a penalty for block billing, he has not provided sufficient detail *in substance* for his charges.

### d. Administrative and Secretarial Tasks

Defendants note numerous occasions where counsel has billed at their standard rates for clerical or administrative tasks. As a preliminary matter, this Court notes that these terms have been used to describe two different types of activities for billing purposes and draws an important distinction between the two. This court deems "secretarial tasks" those that do not require a substantial understanding of the case, and do not require any legal expertise to carry out. Examples of these tasks include delivery and service of papers and faxing, photocopying, and mailing documents. Bridges v. Eastman Kodak Co., No. 91 Civ. 7985, 1996 WL 47304, at *7 (S.D.N.Y. Feb. 6, 1996). These tasks are generally considered part of overhead and are not generally charged to clients. Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psych. Ctr., No. 06-CV-1476, 2010 WL 610694, at *3 (N.D.N.Y. Feb. 16, 2010), rev'd on other grounds, 652 F.3d 277 (2d Cir. 2011); cf. Sulkowska v. City of New York, 170 F. Supp. 2d 359, 368-69 (S.D.N.Y. 2010) (holding that while time billed for clerical tasks would not be recoverable as attorneys' fees, fees

would be granted for secretaries' "preparation of trial exhibits . . . given the amount of organization required and the fact that such assembly required a substantial understanding of the case"). "Administrative tasks," on the other hand, are tasks that require some legal expertise but are not reasonably necessary to be carried out by lawyers themselves. Examples of such tasks may include the preparation and review of administrative forms or appendices, coordination of filing, or checking with the court regarding filings. <u>Osterweil</u>, 2015 WL 1066404, at *15. Fees may be awarded for these tasks, but they will be awarded at the reasonable paralegal rate. <u>Id.</u>

Defendants argue that both of these types of tasks have been billed by Plaintiffs. Resp. at 14, 19-20. After reviewing the timesheets for the two D&D secretaries, Dkt. Nos. 441-7 ("Civello Timesheet"); 441-9 ("Segura Timesheet"), the Court finds that the tasks performed by these secretaries were merely clerical in nature, and thus excludes them entirely from the fee request as secretarial tasks. After reviewing the timesheets for D&D's paralegal Kristin Bruno, Dkt. Nos. 441-5 ("Bruno Timesheet 1"); 441-6 ("Bruno Timesheet 2"), the Court finds that 54.25 hours of time billed by Ms. Bruno qualifies as secretarial work and is also excluded.

After a review of Gibson Dunn and D&D's billing records, the Court finds that while both firms' attorneys billed a nonzero amount of administrative tasks, the extent to which they did so over the course of thousands of billed hours was minimal, and thus no further reduction is warranted. <u>See</u> <u>E.S. v. Katonah-Lewisboro School Dist.</u>, 796 F. Supp. 2d 421, 433 (S.D.N.Y. 2011) (declining to reduce a fee award for an attorney who did not perform "an appreciable amount of administrative work").

e. <u>Travel Time</u>

The Northern District typically reimburses travel time at fifty percent of hourly rates. <u>See,</u>

e.g., <u>Clark v. Phillips</u>, 965 F. Supp. 331, 336 (N.D.N.Y. 1997).  While D&D has isolated and reduced billing for travel time to the "traditional" one-half rate, <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany</u>, 419 F. Supp. 2d 206, 211 (N.D.N.Y. 2005), Gibson Dunn has made no effort to do so.  Travel expenses have been billed at the standard rate, often block-billed with other work.  <u>See, e.g.</u>, Gibson Timesheets at 127 (billing, in a single block at full requested rate, numerous activities including "Travel to Albany, N.Y." but also "electronic correspondence" and "attend deposition").  As a result, entries that include travel time will be reduced by fifty percent across the board.  <u>Manti's Transp. v. Kenner</u>, No. 13-CV-6546, 2015 WL 1915004, at *12 (E.D.N.Y. Apr. 27, 2015); <u>LV v. N.Y.C. Dep't of Educ.</u>, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010).  This results in a reduction of 55.5 hours for Mr. Karlan, 15.6 hours for Mr. Wu, 10 hours for Ms. Champion, 16.4 hours for senior associates, and 129.875 hours for junior associates, amounts representing fifty percent of the time billed or block-billed to traveling.

<u>f.  Conclusion</u>

|  | Awarded Rate | Requested Hours | Awarded Hours | Total |
|---|---|---|---|---|
| Karlan | $350 | 742 | 389.7 | $136,395.00 |
| Wu | $300 | 502.25 | 436.425 | $130,927.50 |
| Champion | $250 | 378.93 | 331.037 | $82,759.25 |
| Senior Associates | $200 | 2820.05 | 1393.625 | $278,725.00 |
| Junior Associates | $140 | 8205.5 | 3972.875 | $556,202.50 |
| **Gibson Dunn** |  |  |  | **$1,185,009.25** |
| DerOhannesian | $350 | 931.5 | 838.35 | $293,422.50 |
| Smith | $200 | 662.25 | 529.8 | $105,960.00 |
| Paralegal/Student | $90 | 259.75 | 205.5 | $18,495.00 |
| **D&D** |  |  |  | **$417,877.50** |

In sum, Gibson Dunn, after reductions, is entitled to fees totaling $1,185,009.25, and D&D,

after reductions, is entitled to fees totaling $417,877.50.

**C. Costs and Expenses**

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). These include "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs," but not "routine office overhead, which must normally be absorbed within the attorney's hourly rate." Id. (quoting Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987)); see also Westport Ins. Corp. v. Hamilton Wharton Grp. Inc., 483 F. App'x 599, 605 (2d Cir. 2012) (finding that district court had not erred in awarding costs for, "among other things, in-house duplication costs, telephone charges, meals, overtime, local transportation, postage, electronic legal research, and messenger service"). Plaintiffs seek a total of $144,919.49 in costs.

*1. Expert Fees*

52 U.S.C. § 10310(e) provides that a prevailing party may recover "reasonable expert fees." Plaintiffs seek expert fees for the services of Dr. Baodong Liu and Mr. William Cooper. Karlan Decl. ¶ 62. For the reasons discussed below, the Court approves the fees for both experts with modifications.

Dr. Baodong Liu is a university professor who specializes in the participation of minority voters in election systems. Dkt. No. 24 ("Liu Report") at 3. In this case, Dr. Liu was retained to assess the existence of racial polarization in the County's elections. Id.; Karlan Decl. ¶ 62. Dr. Liu provided an initial expert report in connection with Plaintiffs' Motion for a preliminary injunction, PI Mot., as well as multiple subsequent expert reports, including one rebutting the conclusions of a

defense expert.  Karlan Decl. ¶ 64.  Gibson Dunn seeks a total of $49,950 for 499.5 hours of Dr. Liu's time at a rate of $100 per hour, $14,000 of which has already been disbursed and is thus considered below (leaving $35,950 requested as an expert fee).  Id. ¶ 65.  Defendants have voiced no objections to Dr. Liu's rate, which appears to the Court to be reasonable.  See Favors v. Cuomo, 39 F. Supp. 3d 276, 310 (E.D.N.Y. 2014) (approving a rate for a demographic analysis expert, without objection, of $200 per hour); see also Resp.  Dr. Liu's tasks and time records also do not appear unreasonable, except to the extent that he has billed 54.5 hours of travel time at the same $100 rate.  "[N]o precedent . . . supports the forced payment for travel time of nearly twenty hours without any showing that equally skilled local experts are unavailable."  Mark Andrew of the Palm Beaches v. GMAC, No. 01 Civ. 1812, 2003 WL 21767633, at *2 n.3 (S.D.N.Y. July 31, 2003).  In this case, no such showing has been made by Plaintiffs.  Thus, the Court reduces Plaintiffs' requested expert fee award of $35,950 by $5,450 and awards $30,500 in connection with Mr. Liu's work.

Mr. William Cooper is a redistricting and mapping expert with decades of experience. Karlan Decl. ¶ 62.  In this case, Mr. Cooper was engaged to provide expert opinions regarding the ability to create additional MMDs in the County as well as to analyze the results of the American Community Survey.  Id.  Mr. Cooper also provided a report in connection with Plaintiffs' Motion for a preliminary injunction, PI Mot., as well as several subsequent reports.  Id. ¶ 64.  Gibson Dunn seeks a total of $20,776.45 for 196.35 hours of Mr. Cooper's time at a rate of $100 per hour as well as $1,141.45 in costs for travel related to the preliminary injunction hearing and trial.  Id. ¶ 66. Defendants have voiced no objections to Mr. Cooper's rate, which appears to the Court to be reasonable.  See Resp.  Mr. Cooper's tasks and time records also do not appear unreasonable.

However, absent a showing that no local experts were available to Plaintiffs, travel expenses to and from the Northern District cannot be recovered from Defendants. <u>Lent v. Fashion Mall Partners</u>, 223 F.R.D. 317, 318 (S.D.N.Y. 2004) (allowing plaintiff to recover reasonable travel time and expenses within the Southern District but denying any expenses required to transport expert *to* the Southern District). Since the itemized list of travel expenses does not include any expenses associated solely with the Northern District, Dkt. No. 440-7 ("Cooper Timesheet") at 2, the Court awards Plaintiffs $19,635 for Mr. Cooper's fee, with travel expenses excluded.

### 2. *Other Costs*

Additionally, D&D seeks $29,858.75 in costs and Gibson Dunn seeks $58,334.29 in non-expert costs. Defendants do not challenge any aspect of the costs. After reviewing the records submitted, the Court finds all of the costs to be reasonable except those associated with Gibson Dunn's and Mr. Liu's travel to Albany. With the presence of local counsel, the Court has already found that no more than two Gibson Dunn attorneys would ever be reasonably necessary to be present at any depositions or court proceedings. <u>Cf.</u> <u>Arbor Hill</u>, 2005 WL 670307, at *9, *13 (finding only two Gibson Dunn attorneys, a partner and an associate, reasonably necessary to be present at district court proceedings, and reducing costs for lodging, meals, and travel accordingly). As a result, all transportation, meals, and lodging fees in excess of two people should be excluded from the costs award. The expenses associated with the August 2011 preliminary injunction hearing in Albany, attended by three Gibson Dunn attorneys, totaling $2,683.66 should thus be reduced by one-third, and Brandon Fleming's associated *pro hac vice* admission fee of $400.00 should be excluded. <u>See</u> <u>Goser v. Allied Interstate, LLC</u>, No. 12 Civ. 9374, 2013 WL 2181760, at *2 (S.D.N.Y. May 17, 2013) (refusing to award costs of *pro hac vice* admission when such admission

was not reasonably necessary to provide adequate representation). Similarly, the expenses associated with trial dates in late 2014 and early 2015, totaling $11712.87 and attended at all times by six Gibson Dunn attorneys, should be reduced by two-thirds.

Mr. Liu's travel to Albany, like Mr. Cooper's travel, is not recoverable as a reasonable expert fee, although reasonable expenses within the Northern District are recoverable. Lent, 223 F.R.D. at 318. Therefore, the two round-trip plane tickets purchased for Mr. Liu totaling $1198.30 will be excluded from costs.

The total cost reductions are thus: $6591.45 of unrecoverable travel expenses for Plaintiffs' experts, $1198.30 of unrecoverable travel expenses for Mr. Liu calculated instead with other costs, and $9597.69 of unreasonable travel, lodging, and meals charges. As a result, Gibson Dunn is awarded $97,673.30 in expert fees and other costs. D&D is awarded its entire request of $29,858.75 in costs.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 438) for attorneys' fees is **GRANTED in part**; and it is further

**ORDERED**, that Plaintiffs are awarded $1,602,886.75 in attorneys' fees and $127,532.05 in costs; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 453) to strike Plaintiffs' Letter Brief is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      September 16, 2015
              Albany, New York

Lawrence E. Kahn
U.S. District Judge